# EXHIBIT 3

EX 3

9

No. 23-\_\_\_\_

IN THE

# Supreme Court of the United States

NVIDIA CORP. and JENSEN HUANG,
*Petitioners,*

v.

E. OHMAN J:OR FONDER AB and STICHTING
PENSIOENFONDS PGB,
*Respondents.*

**On Petition for Writ of Certiorari to the United
States Court of Appeals for the Ninth Circuit**

**PETITION FOR A WRIT OF CERTIORARI**

| | |
|---|---|
| JOHN C. DWYER | NEAL KUMAR KATYAL |
| PATRICK E. GIBBS | *Counsel of Record* |
| SAMANTHA A. KIRBY | KATHERINE B. WELLINGTON |
| COOLEY LLP | WILLIAM E. HAVEMANN |
| 3175 Hanover Street | REEDY C. SWANSON |
| Palo Alto, CA 94304 | KEENAN ROARTY |
| Tel.: (650) 843-5000 | HOGAN LOVELLS US LLP |
| | 555 Thirteenth Street, N.W. |
| | Washington, D.C. 20004 |
| | Tel.: (202) 637-5600 |
| | neal.katyal@hoganlovells.com |

*Counsel for Petitioners*

*(Additional counsel listed on next page)*

**EX 3**

10

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000

SARAH M. LIGHTDALE
PATRICK J. HAYDEN
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 473-6000

*Counsel for Petitioners*

**EX 3**

## QUESTIONS PRESENTED

The Private Securities Litigation Reform Act (PSLRA) imposes "[e]xacting pleading requirements" on plaintiffs who file securities fraud class actions. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 311, 313 (2007). To state a claim, plaintiffs must "state with particularity all facts" supporting their allegations of falsity and must also allege "facts giving rise to a strong inference" of the required mental state. 15 U.S.C § 78u-4(b)(1), (2)(A); *see also* Fed. R. Civ. P. 9(b). Plaintiffs frequently try to meet these requirements by claiming that internal company documents contradicted the company's public statements. This petition presents two questions that have divided the circuits about how the PSLRA's requirements apply in this common and recurring context:

1. Whether plaintiffs seeking to allege scienter under the PSLRA based on allegations about internal company documents must plead with particularity the contents of those documents.

2. Whether plaintiffs can satisfy the PSLRA's falsity requirement by relying on an expert opinion to substitute for particularized allegations of fact.

(i)

EX 3

12

ii

## PARTIES TO THE PROCEEDING

Petitioners in this Court are NVIDIA Corporation and Jensen Huang. Respondents are E. Ohman J:Or Fonder AB and Stichting Pensioenfonds PGB.

EX 3

13

iii

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Supreme Court Rule 29.6, Petitioner NVIDIA Corporation (NVIDIA) hereby states that NVIDIA has no parent corporations, and no publicly held company owns ten percent or more of NVIDIA. Petitioner Jensen Huang is an individual.

EX 3

iv

## STATEMENT OF RELATED PROCEEDINGS

U.S. Court of Appeals for the Ninth Circuit:

*E. Ohman J:or Fonder AB* v. *NVIDIA Corp.*, No. 21-15604 (Aug. 25, 2023) (reported at 81 F.4th 918).

U.S. District Court for the Northern District of California:

*Iron Workers Loc. 580 Joint Funds* v. *NVIDIA Corp.*, No. 18-cv-07669-HSG (Mar. 2, 2021) (reported at 522 F. Supp. 3d 660).

**EX 3**

15

v

## TABLE OF CONTENTS

Page(s)

QUESTIONS PRESENTED ....................................... i

PARTIES TO THE PROCEEDING .......................... ii

CORPORATE DISCLOSURE STATEMENT ........... iii

STATEMENT OF RELATED
    PROCEEDINGS .................................................... iv

TABLE OF AUTHORITIES ..................................... vii

OPINIONS BELOW .................................................1

JURISDICTION .......................................................2

STATUTE AND RULE INVOLVED .........................2

INTRODUCTION .....................................................2

STATEMENT OF THE CASE ..................................6

    A.   Legal Framework .....................................6

    B.   Factual Background ................................8

    C.   Procedural Background ...........................9

REASONS FOR GRANTING THE
    PETITION .........................................................13

  I.   THE CIRCUITS ARE SPLIT ON
      THE REQUIREMENTS FOR
      PLEADING SCIENTER UNDER
      THE PSLRA BASED ON INTERNAL
      COMPANY DOCUMENTS ...........................14

    A.   The Ninth Circuit's Scienter
        Analysis Deepens An Existing
        Circuit Conflict ......................................15

    B.   The Ninth Circuit's Scienter
        Analysis Is Wrong ..................................23

**EX 3**

vi

**TABLE OF CONTENTS—Continued**

<u>Page</u>

II.   THE CIRCUITS ARE SPLIT ON WHETHER A PLAINTIFF CAN PLEAD FALSITY UNDER THE PSLRA BASED ON AN EXPERT OPINION ........................................................26

A.   The Ninth Circuit's Falsity Analysis Split From Two Other Circuits ......................................................27

B.   The Ninth Circuit's Falsity Analysis Is Wrong..........................................28

III.  THIS CASE PRESENTS AN EXCELLENT VEHICLE TO RESOLVE THESE EXCEPTIONALLY IMPORTANT ISSUES ...............32

CONCLUSION ........................................................36

EX 3

17

vii

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*ABC Arbitrage Plaintiffs Grp.* v. *Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) ......................18, 19, 24

*Abrams* v. *Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) .............................4, 19

*Anderson* v. *Spirit Aerosystems Holdings, Inc.*,
    827 F.3d 1229 (10th Cir. 2016) ........4, 16, 17, 22, 34

*Arazie* v. *Mullane*,
    2 F.3d 1456 (7th Cir. 1993) .........................4, 19, 20

*Arkansas Pub. Emps.' Ret. Sys.* v. *Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) .........................5, 27-29

*California Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)...............................4, 18

*Daubert* v. *Merrill Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .............................................24

*Financial Acquisition Partners, LP* v. *Blackwell*,
    440 F.3d 278 (5th Cir. 2006) .......................5, 27, 28

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
    791 F.3d 90 (D.C. Cir. 2015)..................................20

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)...............4, 17, 18, 20, 22

**EX 3**

18

viii

## TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

*In re Stone & Webster, Inc., Sec. Litig.*,
  414 F.3d 187 (1st Cir. 2005).........................4, 22, 23

*Meitav Dash Provident Funds & Pension Ltd.*
  v. *Spirit AeroSystems Holdings, Inc.*,
  79 F.4th 1209 (10th Cir. 2023).........................17, 22

*Merrill Lynch, Pierce, Fenner & Smith Inc.*
  v. *Dabit*,
  547 U.S. 71 (2006) ......................................3, 6, 7, 32

*Public Emps.' Ret. Ass'n of Colo.* v. *Deloitte &
  Touche LLP*,
  551 F.3d 305 (4th Cir. 2009) ..............................7, 33

*San Leandro Emergency Med. Grp. Profit
  Sharing Plan* v. *Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996).........................17, 20, 22

*Securities & Exch. Comm'n* v. *Capital Gains
  Rsch. Bureau, Inc.*,
  375 U.S. 180 (1963) .................................................6

*Southland Sec. Corp.* v. *INSpire Ins. Sols.,
  Inc.*,
  365 F.3d 353 (5th Cir. 2004) .................................19

*Stoneridge Inv. Partners, LLC* v. *Scientific-
  Atlanta*,
  552 U.S. 148 (2008) .................................................7

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 311 (2007) ...................................2-4, 7, 13,
                                              24, 26, 31, 33

**EX 3**

19

ix

## TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

**Statutes:**

15 U.S.C. § 78j(b)......................................................6

15 U.S.C. § 78u-4(b)..................................................2

15 U.S.C. § 78u-4(b)(1) ...........................................24

15 U.S.C. § 78u-4(b)(2) .............................3, 7, 16, 29

15 U.S.C. § 78u-4(b)(2)(A) ...............................15, 24

28 U.S.C. § 1254(1)....................................................2

**Legislative Material:**

141 Cong. Reg. 34754 (Nov. 28, 1995) ......................32

**Rule:**

Fed. R. Civ. P. 9(b)..........................................7, 28, 29

**Regulations:**

17 C.F.R. § 240.10b-5 .................................................6

17 C.F.R. § 240.10b-5(b) .............................................6

**Other Authorities:**

Edward Flores & Svetlana Starykh, *Recent
   Trends in Securities Class Action Litigation:
   2023 Full-Year Review* (Jan. 23, 2024), *avail-
   able at* https://perma.cc/EVT8-T7FP...............14, 33

Wright & Miller, 5A Fed. Prac. & Proc. Civ.
   § 1297 (4th ed. Apr. 2023 update)..........................23

**EX 3**

IN THE

# Supreme Court of the United States

———————

No. 23-_____

———————

NVIDIA CORP. and JENSEN HUANG,
*Petitioners,*

v.

E. OHMAN J:OR FONDER AB and STICHTING
PENSIOENFONDS PGB,
*Respondents.*

———————

**On Petition for a Writ of Certiorari to the
United States Court of Appeals for the Ninth
Circuit**

———————

**PETITION FOR A WRIT OF CERTIORARI**

———————

NVIDIA Corporation (NVIDIA) and Jensen Huang respectfully petition for a writ of certiorari to review the judgment of the United States Court of Appeals for the Ninth Circuit in this case.

## OPINIONS BELOW

The Ninth Circuit's decision (Pet. App. 1a-88a) is reported at 81 F.4th 918. The Ninth Circuit's order denying NVIDIA's petition for rehearing en banc (Pet. App. 167a-168a) is not reported but is available at 2023 WL 7984780. The Ninth Circuit's order granting NVIDIA's motion to stay the mandate (Pet. App. 165a-166a) is not reported.

(1)

**EX 3**

2

The District Court's opinion dismissing Plaintiffs' amended complaint with prejudice (Pet. App. 89a-122a) is reported at 522 F. Supp. 3d 660. The District Court's opinion dismissing Plaintiffs' original complaint without prejudice (Pet. App. 123a-164a) is not reported but is available at 2020 WL 1244936.

## JURISDICTION

The Ninth Circuit entered judgment on August 25, 2023. Pet. App. 1a-88a. The court denied Petitioners' rehearing petition on November 15, 2023. Pet. App. 167a-168a. On December 22, 2023, this Court extended Petitioners' deadline to petition for a writ of certiorari to and including March 4, 2024. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTE AND RULE INVOLVED

The relevant provision of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b), is reproduced at Pet. App. 169a-172a.

Federal Rule of Civil Procedure 9(b) is reproduced at Pet. App. 173a.

## INTRODUCTION

This petition asks the Court to resolve two circuit splits about the "[e]xacting pleading requirements" of the Private Securities Litigation Reform Act of 1995 (PSLRA). *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 311, 313 (2007).

Congress enacted the PSLRA to prevent securities fraud complaints from proceeding past the pleading stage—and imposing burdensome discovery and litigation costs—in service of "suits whose nuisance value outweighs their merits," injuring "the entire U.S.

EX 3

22

3

economy." *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 81-82 (2006). The PSLRA thus imposes heightened pleading standards on securities fraud complaints, requiring plaintiffs to "state with particularity * * * the facts constituting the alleged violation" as well as " 'facts giving rise to a strong inference that the defendant acted with the required state of mind.' " *Tellabs*, 551 U.S. at 313-314 (quoting 15 U.S.C. § 78u-4(b)(2)).

Plaintiffs routinely seek to meet the PSLRA's requirements by alleging that a company's internal documents contradict its public statements to investors. Plaintiffs in this case sought to follow that same playbook. They claimed that the CEO of NVIDIA—a leading manufacturer of graphics processing units (GPUs), which are devices that use parallel processing to accelerate computation—made public statements that were contrary to internal company reports. But Plaintiffs had no information about the actual contents of internal company reports reviewed by NVIDIA's CEO. So Plaintiffs hired an expert witness to manufacture data, simply assumed that NVIDIA's internal reports would have matched that made-up data, and then filed a class action alleging that NVIDIA and its CEO committed securities fraud by *failing to disclose that made-up data*.

The District Court dismissed Plaintiffs' complaint (twice), concluding that Plaintiffs had failed to allege with particularity that NVIDIA's CEO "knowingly or recklessly spoke falsely." Pet. App. 112a. A divided panel of the Ninth Circuit reversed—and in doing so deepened one longstanding circuit split and created a second.

EX 3

23

4

Before this case, five circuits had ruled as a matter of law that plaintiffs seeking to plead scienter based on internal company documents must plead with particularity the *actual contents* of those documents. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72-73 (2d Cir. 2001); *California Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*, 394 F.3d 126, 147-148 (3d Cir. 2004); *Abrams* v. *Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002); *Arazie* v. *Mullane*, 2 F.3d 1456, 1467 (7th Cir. 1993); *Anderson* v. *Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1241 (10th Cir. 2016). Absent such details, allegations about internal reports cannot support a strong inference of scienter that is "at least as compelling as any opposing inference"—and thus cannot meet the PSLRA's pleading standard. *Tellabs*, 551 U.S. at 314.

Until the decision below, the First Circuit was the sole outlier, allowing plaintiffs to proceed past a motion to dismiss in a securities fraud action based on allegations that internal company reports existed, combined with speculative allegations about what those reports might have said. *See In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 210-211 (1st Cir. 2005). In the decision below, the Ninth Circuit joined the First Circuit, concluding that Plaintiffs here could proceed to discovery, not based on allegations about what NVIDIA's internal reports actually showed, but based on the complaint's speculation about what such reports *might have said. See* Pet. App. 42a-43a. Following the Ninth Circuit's decision, there is now a 5-2 circuit split on this crucial legal question, which affects nearly every securities fraud case across the country.

EX 3

5

The decision below also created another circuit split. Before this case, both the Second Circuit and the Fifth Circuit agreed that a plaintiff's expert opinion could *not* substitute for particularized factual allegations of falsity, a necessary element of a securities fraud action. As these courts held, "[a]lthough it is permissible for a plaintiff to *bolster* a complaint by including a nonconclusory opinion to which an expert may potentially testify," such "'opinions cannot substitute for facts under the PSLRA.'" *Arkansas Pub. Emps.' Ret. Sys.* v. *Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) (emphasis added) (quoting *Financial Acquisition Partners, LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)). In the decision below, the Ninth Circuit disagreed, relying on an expert opinion to answer the critical question of whether the defendant's statements were false. *See* Pet. App. 18a-25a. In doing so, the Ninth Circuit opened the door to securities fraud suits based on the opinions of retained experts—rather than particularized facts—circumventing the PSLRA's rigorous pleading standards.

This Court should grant certiorari to address both circuit splits. This Court's intervention is particularly warranted given the divergence between the Second and Ninth Circuits on both questions presented. Those Circuits account for a significant majority of securities litigation nationwide, and the disagreement between them threatens to turn the Nation's largest circuit into a haven for abusive securities litigation. The petition should be granted.

EX 3

25

6

## STATEMENT OF THE CASE

### A. Legal Framework

A "fundamental purpose" of the Securities Exchange Act of 1934 is to promote the disclosure of material information so that the public can make informed investment decisions. *Securities & Exch. Comm'n* v. *Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 (1963). By the 1990s, however, Congress recognized that the statute was resulting in wasteful class-action litigation. *Merrill Lynch*, 547 U.S. at 82. Practices such as "nuisance filings," "targeting of deep-pocket defendants," "vexatious discovery requests," and "extortionate settlements" "injure[d] 'the entire U.S. economy' " while chilling the very disclosures the Exchange Act sought to promote. *Id.* at 81-82 (citation omitted).

Congress enacted the PSLRA to curb these "abuses of the class-action vehicle" in securities litigation. *Id.* To prevent extensive discovery fishing expeditions whenever a company's stock dropped, one of the PSLRA's central reforms was to ratchet up the pleading standards for securities fraud complaints alleging false or misleading statements under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5(b), 17 C.F.R. § 240.10b-5.[1] These heightened pleading requirements are "designed to discourage

---

[1] Rule 10b-5 implements Section 10(b), making it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading * * * in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b).

**EX 3**

26

7

private securities actions lacking merit" and to ensure plaintiffs have legitimate grounds to bring suit before engaging in "fishing expeditions brought in the dim hope of discovering a fraud." *Public Emps.' Ret. Ass'n of Colo.* v. *Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009) (Wilkinson, J.).

This Court has interpreted Section 10(b) to provide a private right of action with six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

This petition concerns the legal standards for pleading the first two elements—a false statement or misleading omission (commonly referred to as "falsity"), and scienter. The PSLRA made it harder to plead those elements by placing "special burdens on plaintiffs seeking to bring federal securities fraud class actions." *Merrill Lynch*, 547 U.S. at 82. Specifically, to survive a motion to dismiss in such a case, the PSLRA works in tandem with Federal Rule of Civil Procedure 9(b) to "require[] plaintiffs to state with particularity * * * the facts constituting the alleged violation," including falsity, as well as " 'facts giving rise to a strong inference that the defendant acted with the requisite state of mind.' " *Tellabs*, 551 U.S. at 313-314 (quoting 15 U.S.C. § 78u-4(b)(2)). "The 'strong inference' standard unequivocally raised the bar for pleading scienter." *Id.* at 321 (cleaned up).

EX 3

27

8

## B. Factual Background

NVIDIA sells graphics processing units (GPUs), which accelerate computation by using parallel processing. Pet. App. 7a. NVIDIA generally does not sell its GPUs directly to end users. Pet. App. 9a. Instead, NVIDIA typically sells them to device manufacturers, who in turn incorporate NVIDIA's GPUs into their own products. *Id.* The device manufacturers then sell those products weeks or months later to distributors, who in turn sell them to end users. *Id.*

NVIDIA's "GeForce" branded GPUs are designed and marketed for video gaming, where users value high-speed graphics processing. *Id.* But GPUs can be used for other purposes. Pet. App. 7a. In 2017, some purchasers began to use GPUs from NVIDIA and others for cryptocurrency "mining"—which involves using computing power to solve complicated math problems to acquire cryptocurrency. Pet. App. 8a-9a.

In an attempt to preserve GeForce GPU supply for gamers, while addressing demand for cryptocurrency mining, NVIDIA introduced a new GPU designed and marketed specifically for mining, known as the Cryptocurrency Microprocessor CMP (the "Crypto SKU"). Pet. App. 11a. The Crypto SKU could be used for mining, including in large mining farms, but could not be used for gaming, because it lacked video outputs. GeForce GPUs could still be used for both gaming and mining.

NVIDIA reported revenue from sales of its GeForce GPUs in its "gaming" segment, and revenue from sales of its Crypto SKUs in a different segment. Pet. App. 11a. On public calls with investors,

**EX 3**

28

9

NVIDIA's executives made clear that they believed crypto miners were buying *both* GeForce GPUs and Crypto SKUs. Pet. App. 59a-60a, 63a-65a (Sanchez, J., dissenting). Shortly after the Crypto SKU launched, NVIDIA's executives expressed their belief that the majority of the cryptocurrency demand at that time was being served by the Crypto SKU, but they made equally clear that it was "difficult to quantify" how many GeForce GPUs were being purchased by miners from downstream distributors and that NVIDIA could not "visibly count" those purchases. Pet. App. 64a-65a (Sanchez, J., dissenting).

In 2017 and most of 2018, sales of GeForce GPUs reached record levels, even as cryptocurrency prices went up and down, and NVIDIA told investors it was working hard to increase supply. Pet. App. 10a-12a; Pet. App. 65a-66a, 88a (Sanchez, J., dissenting). In late 2018, however, NVIDIA observed and promptly disclosed excess supply of GeForce GPUs in the distribution channel. Pet. App. 13a. NVIDIA's stock price dropped after the announcement. *Id.*

### C. Procedural Background

After NVIDIA's stock price dropped, shareholder plaintiffs filed a putative class action lawsuit under Section 10(b) and Rule 10b-5(b). Plaintiffs' central contention is that NVIDIA's CEO, Jensen Huang, knowingly understated the extent to which NVIDIA's gaming segment revenues were driven by sales of

EX 3

10

GeForce GPUs to cryptocurrency miners, as opposed to gamers.  Pet. App. 17a.[2]

Plaintiffs did not claim to have any direct information about what NVIDIA's CEO knew when he made the challenged statements.  They did not, for instance, cite the contents of internal NVIDIA reports reviewed by the CEO showing the quantity of GeForce GPUs sold to cryptocurrency miners rather than gamers.  Lacking such facts, Plaintiffs sought to manufacture them.  Plaintiffs paid an expert to opine that much of NVIDIA's gaming revenues were attributable to cryptocurrency miners purchasing GeForce GPUs.  Pet. App. 18a-19a.  The expert's estimates relied on "a series of assumptions drawn from generic market research."  Pet. App. 70a (Sanchez, J., dissenting).

The expert first used data from two websites to estimate how much processing power was added to major blockchain networks (thereby generating cryptocurrency tokens) during each quarter of the class period, worldwide.  Pet. App. 21a.  The expert assumed that 100% of that new processing power came from new GPUs sold during the same time period by only two companies: NVIDIA and a competitor.  *See* Pet. App. 48a.  Next, the expert estimated the number of new GPUs needed to yield that much processing power.  *See* Pet. App. 21a; Pet. App. 70a (Sanchez, J., dissenting).  The expert then estimated what percentage of those GPUs would have been manufactured by

---

[2] The complaint included allegations about other NVIDIA executives as well, but the Ninth Circuit correctly ruled that Plaintiffs failed to state a claim as to those executives.  Pet. App. 34a, 43a, 56a.

EX 3

11

NVIDIA.    Pet. App. 21a-22a; Pet. App. 70a-71a (Sanchez, J., dissenting).  Finally, the expert provided its "best guess about" how much revenue those GPUs would have generated for NVIDIA during each quarter of the class period.  Pet App. 70a (Sanchez, J., dissenting); *see also* Pet. App. 22a-23a.  Based on this chain of dubious assumptions, Plaintiffs' expert opined that NVIDIA made more revenue from miners purchasing its GeForce GPUs than NVIDIA had disclosed.  Pet. App. 19a.  Plaintiffs relied on this expert opinion as their only particularized allegations about the percentage of NVIDIA's revenue driven by miners.

To plead scienter, Plaintiffs cited statements from a handful of former NVIDIA employees claiming that NVIDIA created internal reports analyzing GPU sales and usage data.  Pet. App. 23a-24a, 36a-40a.  However, none of those former employees described the contents of any reports or data the company's CEO actually viewed before making any challenged statements during the class period.  Pet. App. 35a-43a; Pet. App. 79a-86a (Sanchez, J., dissenting).  Instead, Plaintiffs speculated that the company's internal reports *would have* reflected the same data manufactured by their expert for purposes of this litigation.

Defendants moved to dismiss the complaint, and the District Court granted the motion.  The court explained that Plaintiffs' falsity allegations "rel[ied] entirely on an expert opinion" that lacked the "particularity" the PSLRA requires.  Pet. App. 143a-147a.  As to scienter, the court held that the complaint depended on statements from former employees that were largely unreliable and "fail[ed] to plausibly establish that any particular statement by any

**EX 3**

31

12

Individual Defendant was knowingly or recklessly false or misleading when made." Pet. App. 148a-152a.

Plaintiffs filed an amended complaint, which the District Court again dismissed, this time with prejudice. The court held that Plaintiffs again failed to adequately allege scienter, "largely because [they] [did] not adequately tie the specific contents of any * * * data sources to particular statements," and as such failed to sufficiently allege "that the Defendant who made each specified statement knowingly or recklessly spoke falsely." Pet. App. 112a, 118a. The District Court did not reach falsity.

A divided panel of the Ninth Circuit reversed with respect to NVIDIA's CEO and NVIDIA. The panel majority held that Plaintiffs' expert report was a sufficiently particular allegation of falsity to survive a motion to dismiss. Pet. App. 18a-25a. The court then held that Plaintiffs had established the necessary strong inference of scienter by alleging that NVIDIA's CEO "would have" known about internal documents and that those internal documents "would have" reflected the same data that Plaintiff's expert created through *post hoc* calculations. Pet. App. 41a-42a.

Judge Sanchez dissented, explaining that "[t]he majority's approach significantly erodes the heightened pleading requirements for alleging securities fraud under the PSLRA." Pet. App. 74a. With respect to falsity, he observed that "the majority's reasoning" would allow plaintiffs to clear the PSLRA's heightened pleading bar simply "by producing an expert witness whose *post hoc* calculations diverge from a defendant's prior public statements, even when the

EX 3

32

13

complaint fails to allege any facts to establish that the expert's conclusions correspond to what a company's internal data or documents might have shown." Pet. App. 75a (Sanchez, J., dissenting). And with respect to scienter, the dissent explained that the amended complaint did not allege with particularity the actual "contents" of "*any* internal report or data source that would have put NVIDIA's executives on notice that their public statements were false or misleading when made, much less any internal source that corroborated [the expert's] revenue estimates." Pet. App. 59a.

NVIDIA sought rehearing en banc, which the Ninth Circuit denied. Pet. App. 167a-168a. Judge Sanchez again noted his dissent. *Id.* at 168a. NVIDIA moved for a stay, arguing there was a likelihood certiorari would be granted. Over Plaintiffs' opposition, the Ninth Circuit agreed to stay its mandate pending this petition. Pet. App. 165a-166a.

## REASONS FOR GRANTING THE PETITION

This Court should grant certiorari to resolve two important circuit splits regarding the "[e]xacting pleading requirements" Congress adopted in the PSLRA. *Tellabs*, 551 U.S. at 313.

First, seven circuits are in conflict about the PSLRA's pleading requirements for alleging scienter based on internal company documents that supposedly contradict public statements. Five courts of appeals—the Second, Third, Fifth, Seventh, and Tenth Circuits—hold that the statute requires plaintiffs to allege with particularity the actual contents of such documents. Two courts—the First and Ninth Circuits—hold that the statute allows plaintiffs to

**EX 3**

33

14

proceed on a claim merely by hypothesizing about what those documents "would have" said.

Second, the circuits are in conflict about the standard needed to plead falsity under the PSLRA. Two circuits—the Second and Fifth—have held that plaintiffs cannot satisfy the PSLRA's particularity requirement for alleging falsity by substituting an expert opinion for particularized allegations of fact. But in the decision below, the Ninth Circuit created a circuit split by allowing Plaintiffs to do just that.

The Ninth Circuit's decision is wrong on both issues and "significantly erodes" the important protections that Congress imposed by statute to put an end to abusive securities litigation. Pet. App. 74a (Sanchez, J., dissenting). The Ninth Circuit's divergence from the Second Circuit on both questions presented is especially problematic, as those two courts together account for a significant majority of securities suits filed nationwide. *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* 2, 4-5 (Jan. 23, 2024), *available at* https://perma.cc/EVT8-T7FP. This Court should grant certiorari to resolve these important conflicts and reverse the Ninth Circuit's erroneous approach.

## I. THE CIRCUITS ARE SPLIT ON THE REQUIREMENTS FOR PLEADING SCIENTER UNDER THE PSLRA BASED ON INTERNAL COMPANY DOCUMENTS.

As the Ninth Circuit recognized, the "most direct" way to allege scienter is to claim that executives reviewed internal documents contradicting their public

**EX 3**

34

15

statements. Pet. App. 42a. Allegations about internal company documents thus arise frequently in securities cases, with at least seven circuits confronting the situation and disagreeing about the statute's requirements in this common context. The Ninth Circuit's decision below deepens the split by erroneously allowing Plaintiffs to proceed to discovery based solely on allegations about what internal company documents *might* have said, without any particularized allegations about what the documents *actually* said. This Court should grant certiorari to resolve this conflict.

**A. The Ninth Circuit's Scienter Analysis Deepens An Existing Circuit Conflict.**

To survive a motion to dismiss, PSLRA plaintiffs must "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). Attempting to meet that standard, plaintiffs regularly claim that a company's internal documents contradict the company's public statements to shareholders.

The circuit courts are in conflict about the legal standard for evaluating such allegations on a motion to dismiss—a recurring and important legal question in PSLRA cases. Five circuits hold that the PSLRA requires plaintiffs to describe the *actual contents* of internal company documents allegedly reviewed by the relevant company executives. In stark contrast, two circuits—the First and Ninth—hold that it is enough for plaintiffs to allege what the company's documents *might have shown*—without any allegations about the documents' actual contents. This Court should intervene to resolve the circuit conflict.

EX 3

35

16

1. Five circuits hold that, when plaintiffs rely on allegations about internal company documents to plead scienter, plaintiffs must describe the actual contents of those documents to survive a motion to dismiss. That rule makes sense: Generic references to internal company documents, without allegations about what those documents actually said, do not qualify as "particularized" allegations that give rise to a "strong inference" that the defendant knowingly or recklessly misled investors. 15 U.S.C. § 78u-4(b)(2).

The Tenth Circuit exemplifies the majority rule, holding that "to create an inference of scienter based on" internal company reports, "the plaintiffs must adequately describe the contents of the reports" at issue. *Anderson*, 827 F.3d at 1241. In *Anderson*, the plaintiffs claimed that the defendant's executives must have known about unreported cost overruns and production delays that should have been disclosed to investors. *Id.* at 1238. The plaintiffs relied on statements from a former company employee who testified that he contributed cost data to an internal "cost-study report," as well as statements from another witness who purportedly "contributed to the preparation of [three] quarterly cost reports * * * that were ultimately furnished to" the relevant company executives. *Id.* at 1240-41.

The Tenth Circuit held that these allegations did not create a strong inference of scienter under the PSLRA because the plaintiffs did not allege that executives actually received the cost-study report and also did not "describe the contents of the quarterly reports" that executives did allegedly receive. *Id.* at 1240. At most, the plaintiffs had alleged the contents of "only a

**EX 3**

36

17

part of the cost reports' data," which the Tenth Circuit held was insufficient under the PSLRA. *Id.* at 1242.

The Tenth Circuit reiterated and expanded on that conclusion in *Meitav Dash Provident Funds & Pension Ltd.* v. *Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1220 (10th Cir. 2023). As in *Anderson*, the *Meitav* plaintiffs sought to plead scienter by alleging the existence of internal communications that contradicted the company's public statements. The Tenth Circuit emphasized that "it's not enough for the plaintiffs to allege briefings to a speaker on the underlying data or the speaker's access to internal reports." *Id.* at 1216. Instead, the plaintiffs had to include "particularized allegations about the *contents* of the final" documents provided to executives. *Id.* at 1220 (emphasis added). Applying this rule, the court rejected the plaintiffs' allegations as insufficient to survive a motion to dismiss. "Like the confidential witness in *Anderson*," the Tenth Circuit explained, the former employee had at most "contributed information to larger reports." *Id.* Without allegations of "additional information from other employees" included "in the final version of the projections" provided to the company's executives, these allegations failed to create a strong inference of scienter as a matter of law. *Id.*

The Second Circuit endorsed the majority approach in the widely cited *In re Scholastic Corp. Securities Litigation*, 252 F.3d 63. There, the court held that plaintiffs cannot survive a motion to dismiss under the PSLRA by making "general claim[s]" about the existence of internal company reports that allegedly contradict public statements. *Id.* at 73 (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan* v.

EX 3

37

18

*Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996)). Rather, plaintiffs must make specific allegations about the internal reports, with details about who prepared the reports and the contents of the reports, including "how firm the numbers were." *Id.* at 72-73. The plaintiffs there satisfied that standard, describing the who, where, when, and critically, *what*, because their allegations provided actual "figures from retailers to show sales were declining." *Id.* at 73. The plaintiffs specifically alleged that the company's internal reports detailed "declines in sales as of specific dates, some in terms of percentage and others in terms of quantity" and further alleged how the sales figures were transmitted to the company. *Id.* at 70-71. The plaintiffs also explained that these sales figures "were sent to the head of each Scholastic division on a weekly basis." *Id.* at 71.

The Third Circuit endorsed the Second Circuit's standard in *California Public Employees' Retirement System* v. *Chubb Corp.*, 394 F.3d at 147-148. Applying *Scholastic*'s standard, the court held that allegations that an incriminating internal memorandum existed were "plainly insufficient" where the plaintiffs failed to allege details about the contents of the report beyond a "wholly conclusory" statement that "lack[ed] data to support it." *Id.* (finding plaintiffs' allegations insufficient where they failed to plead "what data [the report's] conclusions were based upon").

The Fifth Circuit followed suit, calling the *Scholastic* rule "a sensible standard." *ABC Arbitrage Plaintiffs Grp.* v. *Tchuruk*, 291 F.3d 336, 356 (5th Cir. 2002). The Fifth Circuit, like the Second and Third Circuits, requires a plaintiff relying on "the existence

**EX 3**

38

19

of confidential corporate reports that reveal information contrary to reported accounts" to include "corroborating details regarding the contents of" such reports. *Abrams*, 292 F.3d at 432. The Fifth Circuit has held that a plaintiff satisfied "the *Scholastic* standard" by alleging the specific contents of monthly management reports that "compar[ed] actual results to budgeted numbers." *ABC Arbitrage*, 291 F.3d at 357-358 (citation omitted). In contrast, a plaintiff cannot satisfy the PSLRA's heightened pleading standard by including in a complaint "a general description" of "regular reports" allegedly sent to specific executives. *Id.* (citation omitted); *accord Southland Sec. Corp.* v. *INSpire Ins. Sols., Inc.*, 365 F.3d 353, 370 (5th Cir. 2004) (citing the Second Circuit's standard and discussing *ABC Arbitrage*).

The Seventh Circuit follows the same rule, which it adopted in *Arazie*, 2 F.3d 1456. In *Arazie*, the plaintiffs claimed that "an internal projection of cash flow predicted" a $3.5 million shortfall, but the Seventh Circuit deemed that allegation insufficiently detailed. *Id.* at 1467. Like the Second Circuit, the court required the plaintiffs to include corroborating details about a document's contents, such as "how firm the numbers were," before crediting the allegation. *Id.* Although *Arazie* pre-dated the PSLRA, the Second Circuit relied on *Arazie* in its pathmarking *Scholastic*

EX 3

39

20

decision interpreting the PSLRA. *Compare Arazie*, 2 F.3d at 1467, *with Scholastic*, 252 F.3d at 71-72.[3]

2. Contrasting sharply with the majority approach, the First and Ninth Circuits hold as a matter of law that plaintiffs can meet the PSLRA's heightened scienter requirement by alleging that internal records exist, without alleging what those documents actually say. Instead, those Circuits permit plaintiffs to proceed to discovery as long as they can allege what an internal report *might have* said.

In this case, Plaintiffs alleged that NVIDIA's CEO knew that sales to cryptocurrency miners, rather than gamers, made up a greater percentage of the company's gaming revenue than he let on to investors. And based on interviews with former employees, Plaintiffs alleged that NVIDIA's CEO *generally* reviewed or was able to access various internal reports. But Plaintiffs did not allege any facts about the contents of those reports, much less detailed facts showing that those reports would have put the CEO on notice that his statements to investors were false. *See* Pet. App. 37a-43a; Pet. App. 82a (Sanchez, J., dissenting). Instead, Plaintiffs hired an expert who—through a string of far-fetched assumptions—manufactured a "guess" about the portion of NVIDIA's gaming segment revenues supposedly driven by sales to

---

[3] The D.C. Circuit has cited Second and Seventh Circuit opinions without taking a firm position about whether the D.C. Circuit applies the same rule. *See In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 104 (D.C. Cir. 2015) (citing *Arazie*, 2 F.3d at 1467, and *San Leandro*, 75 F.3d at 812).

EX 3

21

cryptocurrency miners, as opposed to gamers. Pet. App. 70a (Sanchez, J., dissenting). Plaintiffs then assumed that NVIDIA's internal reports allegedly *would have shown* the same guess made-up by their expert. At no point did Plaintiffs allege that any internal NVIDIA document reviewed by the CEO during the class period in fact showed the sales figures that Plaintiffs' expert concocted.

The Ninth Circuit panel majority nevertheless concluded that Plaintiffs had sufficiently alleged scienter and could proceed to discovery. According to the Ninth Circuit, it was enough that Plaintiffs cited testimony from a former employee that NVIDIA's CEO "had detailed sale[s] reports prepared," "had access to detailed data," and "closely monitored sales data." Pet. App. 42a.[4]  Based on the expert's opinion, the court presumed that "sales data at the time *would have shown* that a large portion of GPU sales were being used for crypto mining." *Id.* (emphasis added). But no former employee purported to describe the actual contents of sales reports viewed by NVIDIA's CEO. *See* Pet. App. 37a-43a (summarizing former employee statements); *see also* Pet. App. 82a-83a (Sanchez, J., dissenting).

---

[4] One of the former employees cited in the complaint later executed "a sworn declaration" stating that the former employee had not actually "made a number of specific statements" that Plaintiffs attributed to the former employee in the complaint. Pet. App. 36a n.2. The Ninth Circuit did not rely on the statements of that employee in its decision. *Id.*

EX 3

22

These allegations would fail as a matter of law in the circuits on the majority side of the split. Indeed, the Tenth Circuit has rejected similar attempts to allege scienter through testimony of former employees who "allegedly contributed information" to internal reports shared with executives, because the plaintiffs did not allege "*the content* of the final" documents. *Meitav*, 79 F.4th at 1220 (emphasis added); *see also Anderson*, 827 F.3d at 1241-42. The Ninth Circuit here did exactly what the majority rule prohibits—it permitted an action to survive a motion to dismiss based on allegations about "the existence of confidential company sales reports" without *any* allegations as to the actual contents of those reports. *Scholastic*, 252 F.3d at 72 (quoting *San Leandro*, 75 F.3d at 812).

Like the Ninth Circuit, the First Circuit has also allowed plaintiffs to plead scienter by relying on "circumstantial evidence" and speculating about what internal documents would have shown, rather than making particularized allegations about what the documents actually showed. *Stone & Webster*, 414 F.3d at 210. In *Stone & Webster*, the plaintiffs claimed that a company sought to conceal a "rapidly worsening financial condition" by hiding the company's inability to pay its debts and likely bankruptcy. *Id.* at 192, 206. The plaintiffs alleged that the company's top executives had viewed internal financial reports and then argued that this was sufficient to plead scienter. *Id.* at 210-211. The First Circuit recognized that "the contents of the reports [were] not described," but nonetheless held that it could "fairly infer that [the

**EX 3**

42

23

documents] described what they purported to describe"—namely, they "would have" shown that "the Company's * * * financial condition" was "desperate." *Id.* at 211. Based on this inference—without citing any particularized allegations as to what the internal reports actually showed—the First Circuit held that the PSLRA's pleading requirement had been met. The First Circuit's reasoning, like that of the Ninth Circuit's here, cannot be reconciled with the majority approach.

## B. The Ninth Circuit's Scienter Analysis Is Wrong.

The Ninth Circuit's scienter holding contravenes the PSLRA. It permits plaintiffs to meet the heightened pleading requirement for scienter by speculating that internal company documents *might have* contradicted the company's public statements to investors, without alleging the actual contents of those documents. The majority approach adopted by five circuits, in contrast, requires plaintiffs to plead with particularity the *actual contents* of internal company documents, and also allege facts showing that the defendants actually reviewed those documents before making the challenged statements. The majority approach is correct and follows directly from two aspects of the PSLRA's heightened pleading standards.

*First*, Congress has required issues of scienter to be pled "with particularity" under the PSLRA. The "particularity" requirement requires plaintiffs to allege "the who, what, when, where, and how." Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1297 (4th ed. Apr. 2023 update) (citation omitted) (referring to this

EX 3

43

24

as the "formulation popular among courts"). This requirement fulfills "the PSLRA's goal of flushing out suits * * * which aim to use discovery as a fishing expedition to substantiate frivolous claims." *ABC Arbitrage*, 291 F.3d at 354 n.85 (citation omitted). Because the particularity requirement demands detail, this Court explained in *Tellabs* that "omissions and ambiguities count against inferring scienter." 551 U.S. at 326; *see also* 15 U.S.C. § 78u-4(b)(1) (requiring plaintiffs making allegations without personal knowledge to allege "with particularity *all* facts on which that belief is formed" (emphasis added)). That is so even where the particularity requirement "could have the effect of preventing a plaintiff from getting discovery on a claim that might have gone to a jury, had discovery occurred and yielded substantial evidence." *Tellabs*, 551 U.S. at 327 n.9.

*Second*, in addition to the detail required by the particularity requirement, the PSLRA imposes an additional, even "stricter demand" on scienter. *Id.* at 314. A plaintiff must plead facts "giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). That requires pleading facts making the requisite state of mind "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The court's role in reviewing these allegations is akin to the "gatekeeping" function that a court performs under *Daubert* v. *Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). *See Tellabs*, 551 U.S. at 327 n.8 (drawing this analogy).

EX 3

44

25

Together, these principles refute the Ninth Circuit's reasoning. The Ninth Circuit's approach fails to consider a critical element of the particularity standard—"what" the internal company documents actually contain. And without that detail, allegations about internal reports cannot support the required "strong inference" of scienter. Indeed, here, the Ninth Circuit failed even to consider competing inferences as required by *Tellabs*, including whether the documents that NVIDIA's CEO allegedly reviewed might have contained data *different* from the speculative, *post hoc*, litigation-driven opinion of an expert witness that never reviewed any actual NVIDIA documents.

This case aptly demonstrates the danger of allowing plaintiffs to guess at the pleading stage what internal company reports could have said. Plaintiffs speculate that internal NVIDIA sales reports would have reflected the amount of gaming segment revenue driven by sales to miners rather than to gamers. But there is no basis in Plaintiffs' allegations to assume that this information was available to NVIDIA. Indeed, the vast majority of NVIDIA's sales are to device manufacturers, who incorporate the GPUs into their own products and then sell them to whomever they want. *See* Pet. App. 9a. Only a small fraction of GeForce GPUs are directly sold to end users. *Id.* The complaint provides no basis to conclude that NVIDIA sales reports would have shown which sales went to miners. *See* Pet. App. 82a (Sanchez, J., dissenting) ("Plaintiffs' broad assertion that NVIDIA tracks global GeForce GPU sales to end users with precision is not supported by particularized factual allegations.").

EX 3

45

26

As the dissent below explained, Plaintiffs therefore "fail[] to allege with particularity the contents of any internal data source or report that could corroborate [the hired expert's] revenue estimates." Pet. App. 75a. The Ninth Circuit majority's only response was to claim it was "obvious" that a CEO must know the source of company revenues, as if all of NVIDIA's sales were directly to end users explicitly identified as either gamers or miners. Pet. App. 55a. But that response merely highlights the fundamental error in the panel majority's analysis: It assumes (as "obvious") the very things ("the facts evidencing scienter") that the PSLRA requires plaintiffs to plead "with particularity." *Tellabs*, 551 U.S. at 313.

The PSLRA imposes a "stricter demand" on plaintiffs than the chain of inferences that the panel majority strung together here. *Id.* at 314. It requires particularized factual allegations showing not just what NVIDIA's internal reports actually said at a given point in time, but also that NVIDIA's CEO actually reviewed those reports before he made the challenged statements. Pet. App. 77a-79a (Sanchez, J., dissenting).

## II. THE CIRCUITS ARE SPLIT ON WHETHER A PLAINTIFF CAN PLEAD FALSITY UNDER THE PSLRA BASED ON AN EXPERT OPINION.

In addition to deepening a circuit split on the PSLRA's heightened scienter requirement, the Ninth Circuit's decision created a second circuit split with respect to whether a plaintiff can plead falsity based on allegations about the after-the-fact opinion of an expert. The Ninth Circuit allows plaintiffs to

EX 3

46

27

circumvent the PSLRA's particularity requirements by submitting an expert opinion. In contrast, both the Second and the Fifth Circuits have rejected that practice.

### A. The Ninth Circuit's Falsity Analysis Split From Two Other Circuits.

The Second and Fifth Circuits agree that a plaintiff cannot rely on an expert opinion instead of particularized facts to plead falsity under the PSLRA. In *Blackwell*, 440 F.3d 278 (5th Cir. 2006), the plaintiffs alleged that an auditor made false statements in a Form 10-K securities filing. To support that allegation, the plaintiffs submitted an expert opinion with their complaint. *Id.* at 285. The expert opinion stated that "no reasonable auditor" would have made the same statements in a securities filing under the circumstances. *Id.* at 290. The Fifth Circuit held that the expert opinion did not support the plaintiffs' allegations, because "opinions cannot substitute for facts under the PSLRA." *Id.* at 286.

The Second Circuit agrees. In *Arkansas Public Employees' Retirement System*, the plaintiffs alleged that a pharmaceutical company told investors that a drug trial targeted patients "strongly expressing" a certain protein even though they knew this was untrue. 28 F.4th at 350. To allege falsity, the plaintiffs hired an expert, who opined that within the relevant industry, experts would not have understood the patients to have "strongly express[ed]" the protein at issue. *Id.* at 351. The Second Circuit held that the expert's opinion was insufficient to plead falsity under the PSLRA. As the Second Circuit explained,

EX 3

47

28

"[a]lthough it is permissible for a plaintiff to bolster a complaint by including a nonconclusory opinion to which an expert may potentially testify, 'opinions cannot substitute for facts under the PSLRA.'" *Id.* at 354 (quoting *Blackwell*, 440 F.3d at 290). "Accordingly," the expert opinion could not "rescue" the complaint "unless that opinion was based on particularized facts sufficient to state a claim for fraud." *Id.*

The rule in the Ninth Circuit, in contrast, is now that plaintiffs can plead falsity based on an expert opinion. Here, the hired expert's opinion was the only basis for Plaintiffs' allegation that NVIDIA understated how much of its gaming revenue came from sales of GeForce GPUs to cryptocurrency miners. *See* Pet. App. 17a-25a. The expert's opinion, moreover, was not based on any internal NVIDIA sales or revenue documents, nor was it supported by any particularized factual allegations. Rather, the opinion relied on a chain of inferences and speculation. Pet. App. 20a-23a. By relying on an expert opinion to rescue otherwise speculative allegations—and permit this case to proceed to discovery—the Ninth Circuit's approach conflicts with the majority rule that expert opinions "cannot substitute for facts," or otherwise "rescue" complaints, unless the opinions themselves use "particularized facts sufficient to state a claim for fraud." *Arkansas Pub. Emps.'*, 28 F.4th at 354 (citations omitted); *see also Blackwell*, 440 F.3d at 286.

**B. The Ninth Circuit's Falsity Analysis Is Wrong.**

The Ninth Circuit's falsity holding is wrong. The PSLRA and Rule 9(b) require plaintiffs to allege

**EX 3**

48

29

particularized facts to meet the falsity element of a securities fraud claim. *See* 15 U.S.C. § 78u-4(b)(2); Fed. R. Civ. P. 9(b). By itself, the opinion of an expert retained for litigation purposes is not a "fact" at all, much less a particularized fact. *Arkansas Pub. Emps.'*, 28 F.4th at 350, 352. As Judge Sanchez's dissent explained, there is no support in the PSLRA for "allow[ing] an outside expert to serve as the *primary* source of falsity allegations." Pet. App. 58a. Here, the expert offered an opinion about NVIDIA's quarterly revenues based on "generic market research," "without any personal knowledge of the facts on which their opinion is based." Pet. App. 69a (Sanchez, J., dissenting). That opinion thus could not fulfill Plaintiffs' obligation to plead falsity through particularized facts.

The only allegations the majority cited to quantify the overall percentage of GeForce GPU sales to cryptocurrency miners—as opposed to gamers—was the expert opinion. *See* Pet. App. 17a-25a. Absent that opinion, nothing in the complaint alleges with particularity that the statements made by NVIDIA's CEO concerning the proportion of GeForce sales to miners was false. The Ninth Circuit thus allowed the expert's opinion to "substitute for" the particularized allegations of fact required by the PSLRA and Rule 9. *Arkansas Pub. Emps.'*, 28 F.4th at 354.

Again, this case illustrates the dangers of the Ninth Circuit's approach. Lacking facts regarding sales of NVIDIA GPUs to cryptocurrency miners during the relevant period, Plaintiffs' expert manufactured its opinion by relying on a string of "questionable assumptions." Pet. App. 73a (Sanchez, J., dissenting). The expert, for example, assumed that any

EX 3

49

30

increase in computing power used to mine cryptocurrency during a quarter came from *new GPUs* sold in that same quarter, ignoring the many other ways to increase the computing power used for mining, such as purchasing older GPUs, repurposing existing GPUs, or using other technologies for mining. *See, e.g.,* Pet. App. 70a (Sanchez, J., dissenting). Plaintiffs' expert likewise matched new computing power in a quarter with sales in that *same quarter*—ignoring that it takes weeks or months for NVIDIA's GPUs to reach end users after distribution by resellers, making it implausible to assume that all new computing power in a given quarter corresponds to NVIDIA GPU revenue during the same quarter. These and other unjustifiable assumptions led Plaintiffs' expert to dramatically inflate the volume of NVIDIA's GeForce GPUs purchased for cryptocurrency mining, and thereby opine that NVIDIA's statements must be false. And while the panel majority attempted to buttress the expert's report by citing another third-party report created by the Royal Bank of Canada Capital Markets (RBC), neither the Plaintiffs' complaint nor the panel majority described in any detail "RBC's own assumptions or sources of information to estimate NVIDIA's cryptocurrency market share or overall cryptocurrency revenues." Pet. App. 72a (Sanchez, J., dissenting). The RBC report thus suffers from the same flaw as Plaintiffs' expert opinion—neither is based on particularized facts that show falsity, and neither can substitute for such facts on a motion to dismiss.

The PSLRA places the burden on plaintiffs to plead particularized facts to survive a motion to

**EX 3**

50

31

dismiss. Allowing plaintiffs to evade that obligation by retaining an expert—who then turns to generic market data to speculate about what *might have* happened—eviscerates the PSLRA. It allows expert opinions developed specifically for litigation to substitute for factual allegations of falsity, even when the expert has "no personal knowledge of the facts on which their opinion is based." Pet. App. 58a (Sanchez, J., dissenting).

By eviscerating the falsity pleading standard, the Ninth Circuit undermined *all* of the PSLRA's "[e]xacting pleading requirements." *Tellabs*, 551 U.S. at 313. Falsity is the foundation of a securities fraud claim. After allowing the expert's speculations to stand in for particularized allegations of falsity, the Ninth Circuit then used that speculation as the basis for its scienter holding by assuming that the expert's speculation would have been reflected in the company's internal reports. The Ninth Circuit's approach highlights the importance of enforcing the particularity requirement as to both falsity and scienter.

In short, the court below failed to perform the "gatekeeping" role imposed on it by the PSLRA's particularity requirement. *Id.* at 327 n.8. This Court should grant certiorari to confirm that the Second and Fifth Circuits were correct when they held that expert opinions cannot stand in the place of particularized allegations of fact.

EX 3

32

### III. THIS CASE PRESENTS AN EXCELLENT VEHICLE TO RESOLVE THESE EXCEPTIONALLY IMPORTANT ISSUES.

1. The questions presented in this case are exceptionally important. As Judge Sanchez explained in dissent, the Ninth Circuit's approach "significantly erodes the heightened pleading requirements for alleging securities fraud under the PSLRA" by allowing a plaintiff to "simply" produce "an expert witness whose *post hoc* calculations diverge from a defendant's prior public statements, even when the complaint fails to allege any facts to establish that the expert's conclusions correspond to what a company's internal data or documents might have shown." Pet. App. 74a-75a.

The Ninth Circuit's legal framework also is fundamentally at odds with Congress's purpose in enacting the PSLRA. Congress sought to curb "nuisance filings, targeting of deep-pocket defendants, [and] vexatious discovery requests" that had "become rampant in" the years preceding the PSLRA. *Merrill Lynch*, 547 U.S. at 81. These "abuses resulted in extortionate settlements, chilled any discussion of issuers' future prospects, and deterred qualified individuals from serving on boards of directors." *Id.* And they allowed plaintiffs to file suit first, then use discovery to "search through all of the company's documents and take endless depositions" searching for "any shred of evidence that the company knew a downturn was coming." 141 Cong. Reg. 34754 (Nov. 28, 1995) (statement of the PSLRA's managers). The PSLRA's requirements were "designed to discourage" such "fishing expeditions brought in the dim hope of discovering

EX 3

52

33

a fraud." *Public Emps.' Ret. Ass'n of Colo.*, 551 F.3d at 311.

As Judge Sanchez forcefully explained, if a plaintiff need only hire an expert to survive a motion to dismiss, the protections Congress added through the PSLRA will be worth little more than the paper they are printed on. *See* Pet. App. 74a-75a. Securities plaintiffs are often well-funded entities—like the plaintiff funds here—with the resources to commission expert opinions that "diverge from a defendant's prior public statements." Pet. App. 75a. Allowing such opinions to substitute for particularized factual allegations will revive precisely the kind of fishing expeditions Congress intended to foreclose through the PSLRA's "[e]xacting pleading requirements." *Tellabs*, 551 U.S. at 313.

In circuits following the majority approach, Plaintiffs' gambit would have failed. NVIDIA should not be subject to a different rule based solely on geography. This Court should address whether a plaintiff may plead scienter without alleging the contents of internal reports, and whether a plaintiff may plead falsity merely by hiring an expert. The time is ripe for the Court to resolve these important questions. Most circuits have taken a position on the split regarding scienter. *Supra* pp. 15-23. And, with respect to falsity, the split with the Second Circuit warrants immediate review given that the Ninth and Second Circuits together compose a significant majority of securities cases in the entire country. *See* Flores & Starykh, *supra*, at 2, 4-5. Given that the decision below splits with the Second Circuit as to both questions presented, this Court's prompt intervention is warranted

**EX 3**

53

34

to ensure that outcomes in securities cases do not depend on where a plaintiff is able to file suit.

The analytical deficiencies in the expert opinion in this case only highlight the importance of resolving these questions sooner rather than later. Plaintiffs hired an expert firm to create data that did not otherwise exist, and the Ninth Circuit allowed Plaintiffs to proceed to discovery on that basis. Pet. App. 70a (Sanchez, J., dissenting). If *this* expert opinion can survive review under the Ninth Circuit's standards for both falsity and scienter, then it is hard to conceive of an expert opinion that will not.

2. This case presents a clean vehicle to review both questions presented.

As to scienter, this case deepens a clear split that is dispositive here. Plaintiffs do not allege the contents of *any* document that NVIDIA's CEO actually reviewed prior to making any challenged statement. Instead, Plaintiffs rest on speculation that such documents must have reflected the conclusions of their hired expert. In five other circuits, those allegations would be insufficient to meet the PSLRA's heightened pleading requirements for scienter, which require plaintiffs to "adequately describe the contents of the" documents that they purport to rely on. *Anderson*, 827 F.3d at 1241.

As to falsity, this case creates a circuit split that is enormously important to securities fraud actions, and where the resolution of the question presented is dispositive. The Ninth Circuit's falsity holding depends on its decision to accept Plaintiffs' expert opinion in lieu of particularized factual allegations. The Ninth

EX 3

35

Circuit does not cite any particularized allegations other than the expert opinion regarding the critical issue for falsity: what percentage of GeForce GPU sales during the class period were to cryptocurrency miners. By allowing Plaintiffs to proceed to discovery based on "facts" manufactured by an expert—rather than particularized allegations by Plaintiffs—the Ninth Circuit opens the door to the kind of securities fraud actions that the PSLRA was designed to prohibit.

This Court should grant certiorari to resolve these important disagreements among the circuit courts and ensure that the PSLRA continues to serve as a bulwark against abusive and speculative litigation.

EX 3

36

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

JOHN C. DWYER
PATRICK E. GIBBS
SAMANTHA A. KIRBY
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Tel.: (650) 843-5000


KATHLEEN R. HARTNETT
PATRICK J. HAYDEN
COOLEY LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000

NEAL KUMAR KATYAL
   *Counsel of Record*
KATHERINE B. WELLINGTON
WILLIAM E. HAVEMANN
REEDY C. SWANSON
KEENAN ROARTY
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel.: (202) 637-5600
neal.katyal@hoganlovells.com

SARAH M. LIGHTDALE
PATRICK J. HAYDEN
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 473-6000

*Counsel for Petitioners*

March 2024

**EX 3**

56