# EXHIBIT 7

EX 7

133

No. 23-970

IN THE

# Supreme Court of the United States

NVIDIA CORP. and JENSEN HUANG,

*Petitioners,*

*v.*

E. OHMAN J:OR FONDER AB, ET AL.,

*Respondents.*

ON PETITION FOR WRIT OF CERTIORARI TO
THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**BRIEF OF WASHINGTON LEGAL
FOUNDATION AND THE NATIONAL
ASSOCIATION OF MANUFACTURERS AS
AMICI CURIAE IN SUPPORT OF
PETITIONERS**

Daniel A. Rubens
Jodie C. Liu
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

James N. Kramer
  *Counsel of Record*
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
(415) 773-5923
jkramer@orrick.com

*Counsel for Amici Curiae*

EX 7

134

i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................ ii

INTEREST OF AMICI CURIAE ................................. 1

INTRODUCTION AND SUMMARY OF
    ARGUMENT ......................................................... 2

ARGUMENT ................................................................ 5

I.   The Ninth Circuit's Decision Creates A
Roadmap For Securities-Fraud Plaintiffs
To Evade The PSLRA's Pleading Standard
Though    Litigation-Driven    Expert
Opinions. ............................................................. 5

    A.  The    PSLRA    imposes    exacting
requirements on the use of experts to
plead fraud. ....................................................... 6

    B.  The   Ninth   Circuit's   decision   will
encourage    further    expert-based
circumvention of the PSLRA ........................... 9

II.  The Use Of Experts To Plead Securities
Fraud Presents A Recurring Issue Worthy
Of This Court's Review ...................................... 13

CONCLUSION ........................................................ 17

**EX 7**

135

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Pub. Emps. Ret. Sys. v. Bristol-*
*Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) .......................... 4, 8, 11

*City of Atlanta Police Officers' Pension*
*Plan v. Celsius Holdings, Inc.*,
No. 22-80418-CV-DMM, 2023 WL
1998174 (S.D. Fla. Feb. 13, 2023)........................ 16

*City of Royal Oak Ret. Sys. v. Juniper*
*Networks, Inc.*,
No. 5:11-CV-04003-LHK, 2013 WL
2156358 (N.D. Cal. May 17, 2013) ...................... 16

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................. 6, 8, 9, 12

*In re Egalet Corp. Sec. Litig.*,
340 F. Supp. 3d 479 (E.D. Pa. 2018) ............. 13, 15

*Elam v. Neidorff*,
544 F.3d 921 (8th Cir. 2008) .................................. 7

*Fin. Acquisition Partners LP v.*
*Blackwell*,
440 F.3d 278 (5th Cir. 2006) ...................... 8, 11, 15

*Goldman Sachs Grp., Inc. v. Ark.*
*Teacher Ret. Sys.*,
594 U.S. 113 (2021) .................................................. 1

**EX 7**

iii

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
547 U.S. 71 (2006) .......................................... 6, 7, 8

*Roth v. OfficeMax, Inc.,*
527 F. Supp. 2d 791 (N.D. Ill. 2007).............. 13, 15

*In re Silicon Storage Tech., Inc. Sec. Litig.,*
No. C-05-0295, 2007 WL 760535
(N.D. Cal. Mar. 9, 2007)................................. 13, 14

*Slack Techs., LLC v. Pirani,*
598 U.S. 759 (2023) ..................................................1

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,*
365 F.3d 353 (5th Cir. 2004) ...................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ...................................6, 7, 8, 16

*In re Under Armour Sec. Litig.,*
409 F. Supp. 3d 446 (D. Md. 2019)...................... 16

*Wong v. Accretive Health, Inc.,*
773 F.3d 859 (7th Cir. 2014) ...................................7

**Statutes**

15 U.S.C. § 78u-4(b)(1) ........................................... 8, 9

15 U.S.C. § 78u-4(b)(1)(B) ...................................... 2, 7

**EX 7**

iv

## Other Authorities

H.R. Rep. No. 104-369 (1995) (Conf. Rep.).......2, 6, 12

Thomas Lee Hazen, Law of Securities
    Regulation § 12.15[1] (6th ed. 2009) ......................7

**EX 7**

1

## INTEREST OF AMICI CURIAE[1]

Washington Legal Foundation (WLF) is a non-profit, public-interest law firm and policy center with supporters nationwide. Founded in 1977, WLF promotes free enterprise, individual rights, limited government, and the rule of law. To that end, WLF often appears as an amicus curiae in key cases presenting questions about the proper scope of the federal securities laws. *See, e.g.*, *Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023); *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113 (2021). And WLF's Legal Studies Division routinely publishes papers by outside experts on federal securities law. *See, e.g.*, Zachary Taylor et al., Pirani v. Slack Techs., Inc., et al.*: Ninth Circuit Cuts Securities Plaintiffs Slack on Standing*, WLF Legal Backgrounder (Mar. 25, 2022).

The National Association of Manufacturers (NAM) is the largest manufacturing association in the United States, representing small and large manufacturers in all 50 states and in every industrial sector. Manufacturing employs 13 million men and women, contributes $2.85 trillion to the U.S. economy annually, has the largest economic impact of any major sector, and accounts for over half of all private-sector research and development in the nation. The NAM is the voice of the manufacturing community and the

---

[1] No counsel for a party authored the brief in whole or in part. No party, counsel for a party, or any person other than amici and their counsel made a monetary contribution intended to fund the preparation or submission of the brief. Counsel for all parties received timely notice of amici's intention to file this brief.

**EX 7**

2

leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Ninth Circuit's decision below permits securities-fraud plaintiffs to circumvent the Private Securities Litigation Reform Act (PSLRA) by substituting *post hoc* expert speculation for particularized factual allegations. That decision exacerbates the disparate approaches circuits take in applying the PSLRA's heightened pleading standard to securities-fraud theories based on purported expert opinions and speculation about the contents of internal company documents. Pet. 15-23, 27-28. By deepening circuit splits on each of those questions, the decision will invite plaintiffs to flock to favorable jurisdictions armed with hired-gun experts offering little more than after-the-fact guesswork about what defendants' data "would have shown." Pet. App. 42a.

Congress enacted the PSLRA's heightened pleading standard in response to "significant evidence of abuse in private securities lawsuits." H.R. Rep. No. 104-369, at 31 (1995) (Conf. Rep.). That pleading standard requires plaintiffs to "specify," among other things, "each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). As the Petition explains, the Ninth Circuit's holdings on falsity and scienter each contribute to circuit splits warranting this Court's review. This brief elaborates on how allowing those splits to stand would create a ready

**EX 7**

140

3

playbook for securities-fraud plaintiffs in the Ninth Circuit to circumvent the PSLRA's stringent requirements and thereby thwart Congress's abuse-preventing aims.

*First*, in holding that Plaintiffs met their burden of pleading falsity, the Ninth Circuit relied largely on an "expert analysis" conducted by a third-party firm that Plaintiffs retained for this litigation. Although the firm purported to offer expert conclusions about NVIDIA's cryptocurrency-related sales, its *post hoc* "estimates" were not based on any sales information that NVIDIA itself generated or possessed. *E.g.*, Pet. App. 20a. Instead, the firm examined generic market data about worldwide cryptocurrency activities, which it claimed to tie to NVIDIA's sales only through a series of unexplained and unreliable assumptions, to then conjecture what it believed NVIDIA's sales data "would have shown." Pet. App. 42a; *see also* Pet. App. 68a-71a (Sanchez, J., dissenting). But none of that so-called expert analysis was remotely grounded in any sales data from the company. As Judge Sanchez explained, the majority "allowed an outside expert to serve as the primary source of falsity allegations under the PSLRA," even though "the expert relie[d] almost exclusively on generic market research and without any personal knowledge of the facts on which [its] opinion is based." Pet. App. 69a (Sanchez, J., dissenting).

*Second*, in holding that Plaintiffs met their burden of pleading scienter for NVIDIA's CEO, the Ninth Circuit relied on statements by anonymous former employees alleging that NVIDIA maintained internal reports that the CEO could access and monitor. Pet.

**EX 7**

141

4

App. 35a-43a. But because the former employees never described anything particularized about the *contents* of those reports, the Ninth Circuit simply assumed that the reports "would have shown" what Plaintiffs' third-party firm surmised. Pet. App. 42a. So on scienter, as with falsity, the Ninth Circuit's holding hinged on the expert's opinion.

In these ways, the Ninth Circuit's decision will provide a roadmap for future securities-fraud plaintiffs to survive motions to dismiss even when they lack particularized facts suggesting that the defendants made any false statement or that the company's internal documents were at odds with what they told the market. An expert specially hired for litigation can almost always manipulate inputs and assumptions to manufacture findings that reinforce plaintiffs' desired theories of fraud. And because courts may not delve into a rigorous assessment of an expert's methods at the pleading stage, plaintiffs will routinely evade the PSLRA's exacting pleading standards by relying on an expert to "substitute for facts." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) (quotation marks omitted).

Courts across the country have regularly confronted these pleading stratagems. Many courts have rejected attempts by securities-fraud plaintiffs to satisfy the PSLRA's heightened pleading standard by relying principally on bare expert opinions and other speculation in lieu of particularized factual allegations demonstrating falsity and scienter. The Ninth Circuit's decision here, however, will encourage plaintiffs to try their luck in favorable jurisdictions with the same abusive litigation tactics that prompted

**EX 7**

142

5

Congress to enact the PSLRA's heightened pleading standard in the first place.

For these reasons and those stated in the Petition, this Court should grant certiorari and reverse.

## ARGUMENT

### I. The Ninth Circuit's Decision Creates A Roadmap For Securities-Fraud Plaintiffs To Evade The PSLRA's Pleading Standard Though Litigation-Driven Expert Opinions.

For decades, the PSLRA has helped stem baseless securities-fraud lawsuits by imposing a stringent standard for pleading fraud with particularity. The decision below, however, lays out a simple path for securities-fraud plaintiffs to circumvent the PSLRA's heightened pleading standard by relying on a purported expert's made-for-litigation opinions to substitute for particularized factual allegations of fraud. Under the Ninth Circuit's reasoning, plaintiffs can survive motions to dismiss by hiring experts that manipulate generic market analysis to bolster hindsight-driven fraud theories, all without grounding their opinions in facts or data about the company. Expert "analysis" of this sort is not an adequate replacement for the particularized factual allegations of fraud the PSLRA demands.

**EX 7**

6

### A. The PSLRA imposes exacting requirements on the use of experts to plead fraud.

Congress enacted the PSLRA "[a]s a check against abusive litigation by private parties" that "impos[ed] substantial costs on companies and individuals whose conduct conforms to the law." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *see also, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). Among the "perceived abuses" were "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers." *Dabit*, 547 U.S. at 81 (quoting H.R. Rep. No. 104-369, at 31); *see also Tellabs*, 551 U.S. at 320.

Before the PSLRA, courts often confronted "the routine filing of lawsuits" alleging securities fraud "with only [a] faint hope that the discovery process might lead eventually to some plausible cause of action." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (quoting H.R. Rep. No. 104-369, at 31); *see also, e.g.*, *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (Congress enacted the PSLRA in part to prevent securities plaintiffs from filing "baseless claims and then attempting to discover unknown wrongs" (quotation marks omitted)). Such suits would crop up "whenever there [was] a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer." H.R. Rep. No. 104-369, at 31-32. In such "abusive and manipulative securities litigation, innocent parties [were] often forced to pay exorbitant 'settlements,'" *id.*

EX 7

7

at 32, even when the litigation lacked substantial basis. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (Congress, in enacting the PSLRA, "[r]ecogniz[ed] the 'concern over the use of then-existing class action procedures to bring strike suits in order to exact extortionate settlements'" (quoting Thomas Lee Hazen, Law of Securities Regulation § 12.15[1] (6th ed. 2009))). Congress enacted the PSLRA to "put an end to th[is] practice of pleading fraud by hindsight." *Elam v. Neidorff*, 544 F.3d 921, 927 (8th Cir. 2008) (quotation marks omitted).

As part of the "control measures" to "curb frivolous, lawyer-driven litigation," the PSLRA imposed "[e]xacting pleading requirements." *Tellabs*, 551 U.S. at 313, 322. Under these "heightened pleading instructions," *id.* at 321, securities-fraud plaintiffs must "*state with particularity all facts*" underlying the belief on which they predicate allegations of fraud, 15 U.S.C. § 78u-4(b)(1)(B) (emphasis added); *Tellabs*, 551 U.S. at 313 (heightened pleading standard requires plaintiffs to "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter"); *Dabit*, 547 U.S. at 81. By requiring such particularity, the PSLRA aimed to "prevent[] a plaintiff from using vague or general allegations in order to get by a motion to dismiss for failure to state a claim." *Tellabs*, 551 U.S. at 334 (Alito, J., concurring).

The PSLRA's "exacting pleading requirement," *Tellabs*, 551 U.S. at 313, naturally carries implications for the use of expert opinions in alleging the elements of securities fraud, including falsity and

**EX 7**

8

scienter. It creates no special carveout for expert opinions when it obliges private securities-fraud complaints to "set forth the facts 'on which [a] belief' that a statement is misleading was 'formed.'" *Dura*, 544 U.S. at 345 (quoting 15 U.S.C. § 78u-4(b)(1)); *see also, e.g.*, *Dabit*, 547 U.S. at 82 (same); *Tellabs*, 551 U.S. at 313 (requiring PSLRA plaintiffs to "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter"); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) ("PSLRA complaints must allege *specific facts* demonstrating material misstatements made with scienter." (emphasis added)).

That is why multiple courts of appeals have held that securities-fraud complaints relying on expert witnesses must describe how the expert opinions are based on actual facts about the company, rather than exploit expert opinions to cover up the absence of such factual allegations. *See, e.g.*, *Ark. Pub. Emps.*, 28 F.4th at 354 (expert "opinions cannot substitute for facts under the PSLRA" and "cannot rescue" falsity allegations "unless [they were] based on particularized facts sufficient to state a claim for fraud" (quotation marks omitted)); *Blackwell*, 440 F.3d at 286 (expert "opinions cannot substitute for facts under the PSLRA").

Properly understood, the PSLRA mandates that when plaintiffs rely primarily on expert opinion to allege securities fraud, they must provide sufficiently particularized allegations that experts referenced in the complaint are basing their opinions on the company's actual information or otherwise identify specific data about the company that would corroborate

**EX 7**

146

9

its conclusions. In other words, a plaintiff invoking expert opinions to plead securities fraud must explain how that expert possesses, has access to, or has some basis to draw conclusions about, the company's information. Conjecture about what the company's information "would have shown," Pet. App. 42a, is no substitute. Congress insisted through the PSLRA that securities-fraud complaints "set forth the facts 'on which [a] belief' that a statement is misleading was 'formed.'" *Dura*, 544 U.S. at 345 (quoting 15 U.S.C. § 78u-4(b)(1)).

**B. The Ninth Circuit's decision will encourage further expert-based circumvention of the PSLRA.**

Contrary to the PSLRA's clear dictates, the Ninth Circuit crafted a new standard that would allow securities-fraud plaintiffs to satisfy their pleading burden by retaining experts that merely hypothesize information about company data *post hoc*, based on generic market research, instead of alleging any facts about actual company data. The decision weakens the PSLRA's heightened pleading standard in at least two critical ways.

*First*, the Ninth Circuit ignored whether the expert in question had access to the company's data or could otherwise speak to what facts were known by the company and its employees. The majority found it sufficient that the expert report (prepared by a third-party firm Plaintiffs hired for this litigation) was authored by "knowledgeable and competent professionals" who described the report's "methodology." Pet. App. 20a (reciting the "detailed analysis" that Prysm

**EX 7**

147

10

took to approximate NVIDIA's cryptocurrency-driven gaming revenues). But the fact that the expert report included a description of its method does not establish that the method can support allegations of falsity or scienter. As the dissent explained, the report "relies on a series of assumptions drawn from generic market research," rather than "information provided by any current or former NVIDIA employee or any internal report or data source." Pet. App. 70a (Sanchez, J., dissenting); *see also, e.g.*, Pet. 20-21. Making matters worse, the report failed even to establish the *reliability* of critical assumptions, including NVIDIA's cryptocurrency market share. Pet. App. 70a-72a (Sanchez, J., dissenting). As a result, "the amended complaint does not plead with particularity facts establishing that the [expert] report's authors were in a position to know what NVIDIA's own internal revenue reporting showed." Pet. App. 74a (Sanchez, J., dissenting) (quotation marks omitted). When an expert (like the one here) puts forward only hypotheses about what defendants' data "would have shown" using generic market research, Pet. App. 42a, the PSLRA's exacting pleading standard demands genuine analysis of the expert's sources and conclusions, not just a description of the overall method employed.[2]

*Second*, the Ninth Circuit further diluted the PSLRA's exacting pleading standard by crediting vague confidential-witness allegations marked by the same deficiencies as the firm's analysis. Former-em-

---

[2] The other report cited by the Ninth Circuit as supposed corroboration "suffers from the same flaw as Plaintiffs' expert opinion." Pet. 30.

**EX 7**

11

ployee statements that NVIDIA's CEO was a "meticulous manager who closely monitored sales data," Pet. App. 42a, fail to suggest that NVIDIA's sales data matched the firm's speculative conclusions, let alone that the CEO knew of that specific information. And the majority below fares no better in pointing to generic statements by former employees about "crypto miners purchasing GeForce GPUs in high volumes" to corroborate the expert report. Pet. App. 45a; *see also, e.g.*, Pet. App. 24a (former employee "recounted that . . . [crypto-]mining enterprises placed huge orders for GeForce GPUs"). These former employees do not even purport to specify with particularity anything about the volume of sales to miners relative to sales to gamers. Undifferentiated, broad-brush statements about high sales volumes or large orders "cannot substitute for facts under the PSLRA." *Ark. Pub. Emps.*, 28 F.4th at 354; *Blackwell*, 440 F.3d at 286. Much less do the former-employee statements explain how the expert arrived at its conclusion that NVIDIA misrepresented its cryptocurrency-related sales during the relevant time periods, especially when the statements had to do with different timeframes and were made by employees who never interacted with the CEO.

Both separately and together, these aspects of the Ninth Circuit's reasoning contravene the PSLRA's pleading standard and give future plaintiffs a straightforward strategy to replicate unsubstantiated complaints alleging securities fraud. Start with an "expert" analysis produced after the fact for the purpose of litigation, using generic market research and simple estimation techniques, to conclude that a company knowingly misstated financial metrics. Then, for good measure, find some former employees to make

**EX 7**

149

12

vague, indeterminate statements about company information, and label that as supposedly insider proof of the experts' specific conclusions. In short, if plaintiffs' lawyers can procure an expert to produce made-for-litigation opinions based on generic information and with the benefit of hindsight, a PSLRA complaint need not be tethered to company-specific facts giving rise to a claim of fraud.

The Ninth Circuit's standard threatens to scuttle the PSLRA's work, with implications that extend far beyond this case. For one thing, the decision below both creates and deepens divisions among the courts of appeals as to the PSLRA's demands for pleading falsity and scienter. *See* Pet. 15-23, 27-28. Entrepreneurial plaintiffs will exploit that split, and specifically the decision below, to urge courts to loosen the PSLRA's pleading standard through reliance on expert opinions. Whenever there is public disclosure of stock-price declines, in any number of contexts and industries, plaintiffs need only hire an expert to manufacture fraud allegations by generating estimates and hypotheses based on generic market research—just as Plaintiffs did here. The PSLRA "s[ought] to avoid," not encourage, the "routine filing of lawsuits" like this, based on "only [a] faint hope that the discovery process might lead eventually to some plausible cause of action." *Dura*, 544 U.S. at 347 (quoting H.R. Rep. No. 104-369, at 31).

EX 7

13

## II. The Use Of Experts To Plead Securities Fraud Presents A Recurring Issue Worthy Of This Court's Review.

Since the PSLRA's enactment, plaintiffs have frequently invoked expert opinions to bolster their claims of securities fraud—often with questionable other support for their allegations. That is evidenced in the many decisions rejecting such suits as attempts to substitute *post hoc* expert opinion for the particularized factual allegations required by the PSLRA's heightened pleading standard. Specifically, many courts have recognized that securities fraud plaintiffs may not rely on expert opinions in lieu of facts to allege fraud.[3] That is, a complaint must contain sufficiently particularized allegations that an expert opinion is grounded in facts about the defendant—not just hypothesis about what the defendant's data "would have shown." Pet. App. 42a. The Ninth Circuit's decision, if left to stand, would encourage the inappropriate use of expert-generated speculation and tempt other courts to disregard these sound applications of the PSLRA as Congress intended it.

Courts should conduct the same analysis the district judge performed in *In re Silicon Storage Tech., Inc. Sec. Litig.*, No. C-05-0295, 2007 WL 760535 (N.D.

---

[3] *See, e.g.*, *In re Silicon Storage Tech., Inc. Sec. Litig.*, No. C-05-0295, 2007 WL 760535, at *30 (N.D. Cal. Mar. 9, 2007); *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 511 (E.D. Pa. 2018), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020); *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801 (N.D. Ill. 2007).

EX 7

151

14

Cal. Mar. 9, 2007). There, the court held that plaintiffs failed to satisfy the PSLRA's pleading standard when they invoked a market-research expert's report to support their claim that the defendant shipping companies fraudulently misstated prices and other financial metrics. *Id.* at *30. The complaint there alleged that the expert had looked to "generic market data" and the company's public filings to calculate financial metrics that purportedly revealed a significant gap between actual metrics and what the defendant reported at the time. *Id.* at *10-12. The complaint did not, however, claim that the expert "had any specific data on [the company's] prices or costs—just that [the firm] based its conclusions on broad categories of data like 'average selling price.'" *Id.* at *14.

In dismissing the complaint, the *Silicon Storage* court considered plaintiffs' reliance on the expert such a "serious problem" that it ruled out even the possibility of amendment. *Id.* at *30. The complaint's incurable defect, the court explained, was "plaintiffs' reliance on generic data from [the expert] as the source of their 'facts' regarding the alleged falsity of defendants' statements regarding . . . prices and inventory valuations." *Id.* That approach plainly failed the PSLRA's pleading standard, *id.* at *30-32, and the court found "no persuasive authority in support of [plaintiffs'] argument that courts have allowed 'expert' opinion in the form of generic market data—without more—as factual support for claims of securities fraud brought under the PSLRA," *id.* at *31.

Other courts have likewise correctly understood that plaintiffs may not rely on experts to allege fraud

**EX 7**

15

when the expert had no foundation to opine about the company's actual information. In *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479 (E.D. Pa. 2018), the court rebuffed plaintiffs' attempt to invoke an expert to plead securities fraud when the expert's opinion purported to demonstrate what the defendants "would have known," yet was "based solely on . . . publicly available information." *Id.* at 511. "To the extent" the expert had even "formed an opinion" about "the central issue" in the case, the court found that "the fact that such an opinion [was] based solely on public information substantially undermine[d] his conclusion." *Id.* Any inference drawn by the expert from that public information, the court reasoned, "could . . . have been obvious to an investor using public information." *Id.* at 510-11.

And in *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791 (N.D. Ill. 2007), the court held that plaintiffs could not "attempt to bolster their allegations of fraud" through an expert's opinion that the defendant company's senior management "should have been aware" of certain "internal control weaknesses" at the company. *Id.* at 801. In reaching that conclusion, the court emphasized (among other things) that the plaintiffs did "not allege that [the expert] ever worked at [the company] or ha[d] personal knowledge of the inner workings of the [c]ompany," and that "opinions cannot substitute for facts under the PSLRA." *Id.* (citing *Blackwell*, 440 F.3d at 286).

In all of these cases, courts considered it dispositive that the plaintiffs failed to "state with particularity" how the experts they relied on to allege fraud

**EX 7**

153

16

could satisfy the PSLRA's exacting pleading requirement. *Tellabs*, 551 U.S. at 313.[4] Yet, under the Ninth Circuit's contrary standard, many of these frequently arising cases involving the use of experts to plead fraud would have come out differently. And they will continue to do so as the Ninth Circuit diverges from other courts of appeals that properly apply the PSLRA to scrutinize allegations of fraud that are premised on experts' speculation. *See* Pet. 15-23, 27-28 (describing circuit splits on this question).

This erosion of the PSLRA's exacting pleading requirements carries significant and adverse public policy consequences. In enacting the PSLRA, Congress sought to curtail the abuses imposed on courts and businesses by meritless fishing expeditions disguised as securities litigation. *Supra* 6-7. Made-for-litigation expert speculation about what defendants' data "would have shown," Pet. App. 42a, is just that. Absent review, the Ninth Circuit's decision will undoubtedly invite the very type of exploitation and abuse that the PSLRA attempted to eradicate.

---

[4] *See also, e.g.*, *City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, No. 22-80418-CV-DMM, 2023 WL 1998174, at *10 (S.D. Fla. Feb. 13, 2023), *report and recommendation adopted*, No. 22-80418-CV, 2023 WL 2601816 (S.D. Fla. Mar. 22, 2023); *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 454-55 (D. Md. 2019); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2013 WL 2156358, at *7 (N.D. Cal. May 17, 2013).

**EX 7**

17

## CONCLUSION

The Petition should be granted.

Respectfully submitted,

Daniel A. Rubens          James N. Kramer
Jodie C. Liu               *Counsel of Record*
ORRICK, HERRINGTON &       ORRICK, HERRINGTON &
  SUTCLIFFE LLP              SUTCLIFFE LLP
51 West 52nd Street        405 Howard Street
New York, NY  10019        San Francisco, CA  94105
                           (415) 773-5923
                           jkramer@orrick.com

April 5, 2024

**EX 7**