# EXHIBIT 9

No. 23-970

In The
# Supreme Court of the United States
_____

NVIDIA CORP. and JENSEN HUANG,
*Petitioners,*

v.

E. OHMAN J:OR FONDER AB and STICHTING
PENSIOENFONDS PGB,
*Respondents.*
_____

**On Petition for Writ of Certiorari to the United States Court of Appeals for the Ninth Circuit**
_____

**REPLY IN SUPPORT OF PETITION FOR A WRIT OF CERTIORARI**
_____

JOHN C. DWYER
PATRICK E. GIBBS
SAMANTHA A. KIRBY
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Tel.: (650) 843-5000

NEAL KUMAR KATYAL
  *Counsel of Record*
KATHERINE B. WELLINGTON
WILLIAM E. HAVEMANN
REEDY C. SWANSON
KEENAN ROARTY
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel.: (202) 637-5600
neal.katyal@hoganlovells.com

*Counsel for Petitioners*
_____
*(Additional counsel listed on next page)*

**EX 9**

208

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000

SARAH M. LIGHTDALE
PATRICK J. HAYDEN
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 473-6000

*Counsel for Petitioners*

**EX 9**

209

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ..................................... ii

INTRODUCTION ...................................................1

ARGUMENT...........................................................2

I.   THE COURT SHOULD GRANT CERTIORARI TO RESOLVE A CLEAR SPLIT ON ALLEGING SCIENTER UNDER THE PSLRA...................2

    A.   There Is A Genuine, Recurring Conflict .......................................................2

    B.   The Legal Standard For Allegations Regarding Internal Documents Is Dispositive Here .........................6

II.   THE COURT SHOULD GRANT CERTIORARI TO RESOLVE A SPLIT REGARDING THE USE OF EXPERT OPINION TO PLEAD FALSITY .........................................................8

    A.   The Ninth Circuit's Falsity Analysis Conflicts With Two Circuits..............8

    B.   The Ninth Circuit's Erroneous Falsity Analysis Was Outcome Determinative ........................................10

III.  THIS CASE IS AN EXCELLENT VEHICLE TO RESOLVE THESE EXCEPTIONALLY IMPORTANT ISSUES .........................................................12

CONCLUSION .......................................................14

(i)

EX 9

ii

## TABLE OF AUTHORITIES

Page(s)

**CASES:**

*ABC Arbitrage Plaintiffs Grp.* v. *Tchuruk*,
291 F.3d 336 (5th Cir. 2002).................................. 5

*Abrams* v. *Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002)........................... 2, 3, 5

*Adams* v. *Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003)............................. 4

*Altimeo Asset Mgmt.* v. *Qihoo 360 Tech. Co.*,
19 F.4th 145 (2d Cir. 2021).................................... 9

*Anderson* v. *Spirit Aerosystems Holdings, Inc.*,
827 F.3d 1229 (10th Cir. 2016)........................ 2, 3, 7

*Arazie* v. *Mullane*,
2 F.3d 1456 (7th Cir. 1993)................................... 5

*Arkansas Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022)................................. 8, 9

*Barrie* v. *Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005).................................. 9

*Blanchard-Daigle* v. *Geers*,
802 F. App'x 113 (5th Cir. 2020) .......................... 10

*California Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) .................................. 3

*Fin. Acquisition Partners LP* v. *Blackwell*,
440 F.3d 278 (5th Cir. 2006)............................... 8, 9

**EX 9**

iii

## TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) .............................. 3, 4, 5

*In re Scholastic Corp. Sec. Litig.*,
  No. 99-cv-2447, 2000 WL 91939 (S.D.N.Y.
  Jan. 27, 2000)....................................................... 4

*Institutional Investors Group* v. *Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ..................................... 5

*Meitav Dash Provident Funds & Pension Ltd.*
  v. *Spirit AeroSystems Holdings, Inc.*,
  79 F.4th 1209 (10th Cir. 2023) ........................... 3, 7

*Omnicare, Inc.* v. *Laborers Dist. Council Con-
  str. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................... 11

*Pub. Emps.' Ret. Sys. of Mississippi* v.
  *Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014)................................. 10

*Teamsters Loc. 237 Welfare Fund* v. *Service-
  Master Glob. Holdings, Inc.*,
  83 F.4th 514 (6th Cir. 2023) ................................... 5

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................... 13

*United States* v. *Williams*,
  504 U.S. 36 (1992)................................................. 12

**STATUTE:**

15 U.S.C. § 77q(a)(2)-(3) .......................................... 12

EX 9

## INTRODUCTION

This case squarely presents two important circuit splits about the threshold legal requirements for pleading securities fraud under the Private Securities Litigation Reform Act (PSLRA). On both questions, the two circuits accounting for a large majority of securities fraud litigation are diametrically opposed. A host of amici—including ten former SEC officials representing Democratic and Republican administrations—agree that this Court must act now to clear up the confusion.

First, the Ninth Circuit joined the First Circuit in allowing plaintiffs to plead a "strong inference" of scienter based on the existence of internal company documents *without* alleging the contents of those documents. Five circuits correctly disagree with this approach, *see* Pet. 15-23, and there can be little doubt this issue recurs frequently—the parties and amici cite over three dozen cases involving allegations based on internal company documents. Plaintiffs' efforts to deny the split rest on incomplete, inaccurate descriptions of the cases taking the majority approach. If this Court does not step in, the decision below will become a "roadmap" for securities plaintiffs to sidestep the PSLRA's guardrails merely by hiring a pre-litigation expert to speculate about the contents of internal company documents. Former SEC Officials Br. 6. Given the Ninth Circuit's outsize role in securities litigation, *see* Grundfest Br. 8-10, the decision below will expose

(1)

**EX 9**

213

2

companies to precisely the abusive and costly litigation that prompted the PSLRA in the first place.

Second, the Ninth Circuit broke from the Second and Fifth Circuits by allowing Plaintiffs to substitute an expert opinion regarding falsity for particularized allegations of fact. *See* Pet. 27-31; Grundfest Br. 10-13. Rather than engage with this important issue, Plaintiffs mischaracterize the question presented and then hide behind a lengthy recitation of their factual allegations—none of which pose an obstacle to this Court's review.

The Court should grant certiorari to restore uniform application of the PSLRA's critical protections.

## ARGUMENT

### I. THE COURT SHOULD GRANT CERTIORARI TO RESOLVE A CLEAR SPLIT ON ALLEGING SCIENTER UNDER THE PSLRA.

This Court should intervene to resolve a clear split among seven circuits over the legal standard for alleging scienter under the PSLRA.

#### A. There Is A Genuine, Recurring Conflict.

Plaintiffs' efforts to dispute the split are unpersuasive. Opp. 22. The majority approach holds that when plaintiffs allege scienter based on internal company reports, they *must* allege the contents of those reports. *See, e.g.*, *Anderson* v. *Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1241 (10th Cir. 2016) ("plaintiffs *must* adequately describe the content of the reports" "[t]o create an inference of scienter" (emphasis added)); *Abrams* v. *Baker Hughes Inc.*, 292 F.3d 424,

EX 9

214

3

432 (5th Cir. 2002) ("allegations *must* have corroborating details regarding the contents of allegedly contrary reports" (emphasis added)); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) ("a plaintiff *needs* to specify the internal reports" (emphasis added)).  Indeed, the Third Circuit refers to this approach as a "sensible *standard*"—directly contradicting Plaintiffs' position that no legal rule governs. *California Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004) (emphasis added).

Importantly, Plaintiffs *admit* that the Ninth and First Circuits do not follow this rule, and instead permit allegations about what internal reports "would have shown" based on *post hoc* expert opinion and other circumstantial allegations.  Pet. App. 42a; *see* Opp. 19; Pet. 20-23.  Plaintiffs thus stake their entire argument against the split on the claim that *all* circuits follow this minority approach.

That is not a plausible reading of the cases in the majority.  Take the Tenth Circuit's decisions in *Anderson* and *Meitav*.  The plaintiffs in both cases sought to establish scienter through testimony from former employees who allegedly contributed data to internal reports—exactly as Plaintiffs did here.  *See Anderson*, 827 F.3d at 1240-41; *Meitav Dash Provident Funds & Pension Ltd.* v. *Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1220 (10th Cir. 2023).  The Tenth Circuit held these allegations insufficient because plaintiffs must include "particularized allegations about the *contents* of the final" documents.  *Meitav*, 79 F.4th at 1220 (emphasis added); *accord Anderson*, 827 F.3d at 1240-43.  Both decisions conflict with the Ninth Circuit's conclusion that Plaintiffs here adequately

**EX 9**

215

4

alleged scienter without any particularized allegations about the *actual contents* of final documents NVIDIA's CEO allegedly reviewed.

Plaintiffs claim (at 25) the Tenth Circuit's decisions merely hold that plaintiffs need only allege a generic *contradiction* between internal documents and public statements. But both cases go further, setting a legal standard requiring particularized allegations about the actual contents of internal documents. Plaintiffs point (at 20, 23) to *Adams* v. *Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003), as endorsing an amorphous analysis with no legal guardrails, but that case is fully consistent with NVIDIA's position. In addressing whether plaintiffs must reveal the source of their allegations, *Adams* holds that certain allegations "may be sufficiently ambiguous or indistinct so that disclosure of source information is *required* before they lend measurable support" to scienter allegations. 340 F.3d at 1102 (emphasis added).

Plaintiffs contend (at 23-24) that the Second Circuit in *Scholastic* rejected the district court's application of the majority rule. But the district court and the Second Circuit applied the same legal standard, and disagreed only in its application. *Compare In re Scholastic Corp. Sec. Litig.*, No. 99-cv-2447, 2000 WL 91939, at *12 (S.D.N.Y. Jan. 27, 2000), *with Scholastic*, 252 F.3d at 73. The Second Circuit held that standard was satisfied precisely because plaintiffs alleged the actual contents of "company-generated statistics." 252 F.3d at 72-73.

Plaintiffs claim (at 22-23) that the Third Circuit has adopted no legal standard for evaluating scienter,

EX 9

216

5

citing *Institutional Investors Group* v. *Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009). *Avaya* fully supports the majority approach, requiring plaintiffs to "describe [their] sources of information with particularity, providing the * * * *who, what, when, where and how of the information those sources convey*." 564 F.3d at 253 (emphasis added).

The Fifth Circuit's decisions also do not square with Plaintiffs' characterizations. Tellingly, Plaintiffs altogether ignore the clear holding in *Abrams* that allegations about internal documents "*must* have corroborating details regarding the [reports'] contents." 292 F.3d at 432 (emphasis added). As Plaintiffs begrudgingly concede (at 24), the *ABC Arbitrage* plaintiffs satisfied that test by alleging that reports "compar[ed] actual results to budgeted numbers"—in clear contrast to Plaintiffs here. *ABC Arbitrage Plaintiffs Grp.* v. *Tchuruk*, 291 F.3d 336, 357 (5th Cir. 2002).

Finally, Plaintiffs question (at 24-25) whether the Seventh Circuit's decision in *Arazie* v. *Mullane*, 2 F.3d 1456 (7th Cir. 1993), follows the majority rule. But other circuits read *Arazie* just as NVIDIA does. *See Scholastic*, 252 F.3d at 73; *accord ABC Arbitrage*, 291 F.3d at 356 (describing *Arazie*'s rule, as adopted in *Scholastic*, as "a sensible standard").[1]

---

[1] Plaintiffs claim the Fourth and Sixth Circuits do not apply the majority rule. Opp. 23. But the Sixth Circuit has held that allegations regarding internal conversations are insufficient without "detail about exactly what was discussed." *Teamsters Loc. 237 Welfare Fund* v. *ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 531 (6th Cir. 2023). In any event, additional disagreement would only augment the need for certiorari.

**EX 9**

217

6

### B. The Legal Standard For Allegations Regarding Internal Documents Is Dispositive Here.

Plaintiffs cannot avoid a clear circuit split, so they attempt to make this case appear factbound.  Opp. 7-17.  The dispositive question in this case, however, is the *legal* standard for evaluating Plaintiffs' allegations.

Plaintiffs' scienter allegations hinge on whether NVIDIA's CEO knew, from internal company documents he reviewed, how much of NVIDIA's revenue came from sales of GeForce GPUs to cryptocurrency miners rather than gamers.  Pet. App. 42a.  But nothing Plaintiffs have cited describes the contents of a *single internal communication* involving NVIDIA's CEO that in fact addressed the portion of GPUs sold to cryptocurrency miners.  *See* Pet. App. 76a (Sanchez, J., dissenting) (former employee allegations do not "demonstrate how any challenged statement directly contradicted what Defendants knew at the time").[2]

All the factual allegations Plaintiffs rely on fall into two categories: They either do not involve documents the CEO actually reviewed, or they do not describe the proportion of sales going to cryptocurrency miners.  Plaintiffs largely focus on the first category: documents there is no allegation the CEO ever

---

[2] The other facts listed by the Ninth Circuit—generally describing the CEO's diligence—do not fill in the gaps.  Otherwise plaintiffs could survive a motion to dismiss simply by alleging that a CEO was diligent.

EX 9

7

reviewed. *See, e.g.*, Opp. 12 (data "available to" the CEO); *id.* at 13 (same); *id.* (study commissioned by a different NVIDIA executive); *id.* at 14-15 (expert opinion); *id.* at 16 (RBC report); *id.* at 13, 21 (data submitted to "centralized sales database" in 2017); *id.* ("GeForce Experience data"); *id.* at 21 ("weekly emails" discussed at 3-ER-356-357 (¶¶ 109-112)); *id.* ("presentations" that purported to "quantif[y]" sales in China). Plaintiffs also allege a small number of communications involving the CEO, but *nothing* in this second category describes the overall proportion of GeForce GPU sales going to cryptocurrency miners. Opp. 8 (generic description of monitoring "sellout" two years before class period began); *id.* at 12 (anecdotal discussion of in-person purchases at headquarters before class period began); *id.* (generic description of "quarterly meetings"); *id.* at 13 (sales figures in a single market); *id.* at 21 ("weekly emails" discussed at 3-ER-353 (¶ 96)).

In the majority of circuits, these allegations would be legally insufficient to allege scienter under the PSLRA. *See Meitav*, 79 F.4th at 1217 ("If access [to contradictory information] alone were enough, a strong inference of scienter would exist for high-level executives whenever they make a public statement contradicting something in the company's files."); *Anderson*, 827 F.3d at 1241 (allegations of confidential witness with a "role in contributing data" to quarterly reports insufficient without a description of "the content of the" finished reports). By crediting such allegations here, the Ninth Circuit ran afoul of the clear statutory mandate requiring Plaintiffs to raise a "strong inference" of scienter with "particularized"

**EX 9**

8

facts. *See* Pet. 23-26; Grundfest Br. 14-18. As NVIDIA's amici persuasively explain, this error is doubly problematic: It guts Congress's express limitations on securities suits, while *expanding* an implied private right of action for securities fraud. *See* Former SEC Officials Br. 6, 13-14.

## II. THE COURT SHOULD GRANT CERTIORARI TO RESOLVE A SPLIT REGARDING THE USE OF EXPERT OPINION TO PLEAD FALSITY.

The Ninth Circuit created a second circuit split by allowing Plaintiffs to plead falsity based on expert opinion rather than particularized facts. Pet. 26-31. Plaintiffs' attempts to obscure this split and defend the Ninth Circuit's erroneous reasoning mischaracterize the petition. Opp. 25-34.

### A. The Ninth Circuit's Falsity Analysis Conflicts With Two Circuits.

The Second and Fifth Circuits hold that securities fraud plaintiffs may use nonconclusory expert opinion to "bolster" allegations of falsity, but that such opinion "'*cannot substitute for facts under the PSLRA.*'" *Arkansas Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) (quoting *Fin. Acquisition Partners LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)) (emphasis added). The Ninth Circuit disagrees, allowing expert opinion to substitute for the factual allegations of falsity required by the Second and Fifth Circuits. Pet. 27-28.

Rather than engage with this split, Plaintiffs misrepresent it, arguing that neither the Second nor the Fifth Circuit has "a categorical rule prohibiting

EX 9

220

9

reliance on an expert in pleading falsity." Opp. 4. But the split is not about whether plaintiffs may rely on expert opinion *at all*. It is about whether such opinion may "substitute for facts," where the opinion itself is not based on "particularized facts sufficient to state a claim for fraud." *Arkansas Pub. Emps.*, 28 F.4th at 354 (quotation marks omitted). The Second and Fifth Circuits hold that while expert opinion may "bolster a complaint," it may not "rescue" otherwise inadequate allegations. *Id.* The Ninth Circuit held the opposite below, allowing a hired expert's opinion to serve as the primary support for falsity, even though the opinion has no basis in internal company information or other particularized facts.

Plaintiffs make no effort to reconcile the Second Circuit's approach in *Arkansas Public Employees Retirement System* with the Ninth Circuit's here. Opp. 33. With respect to the Fifth Circuit, Plaintiffs note that *Blackwell* considered the "nonconclusory, factual portions" of an expert report. Opp. 32 (quoting 440 F.3d at 285). But here, the Ninth Circuit relied on the expert's conclusions, not any "factual portions" of the expert's report, to decide that Plaintiffs adequately alleged falsity. Pet. App. 25a-34a.

None of Plaintiffs' other authorities (at 33-34) undermine the split. Two of Plaintiffs' cases simply illustrate that a plaintiff can rely on an expert report to supplement—not substitute for—particularized factual allegations. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 148-151 (2d Cir. 2021) (considering expert opinion in addition to witness accounts and news reports); *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 258 (5th Cir. 2005) (considering

EX 9

10

expert opinion in addition to confidential witness testimony providing "reasons why the financial reporting was false"). Plaintiffs' other two cases do not concern the pleading standard for falsity. *See Blanchard-Daigle* v. *Geers*, 802 F. App'x 113, 119 (5th Cir. 2020) (per curiam); *Pub. Emps.' Ret. Sys. of Mississippi* v. *Amedisys, Inc.*, 769 F.3d 313, 323 n.3 (5th Cir. 2014).

## B. The Ninth Circuit's Erroneous Falsity Analysis Was Outcome Determinative.

The PSLRA does not allow an outside expert to "serve as the *primary* source of falsity allegations," Pet. App. 58a (Sanchez, J., dissenting) (emphasis added). Yet here, the Ninth Circuit allowed Plaintiffs' expert opinion to do just that: serve as the core of Plaintiffs' falsity allegations, despite being based on "generic market research" and "questionable assumptions," rather than particularized facts or internal company information. Pet. App. 69a, 73a (Sanchez, J., dissenting) (quotation marks omitted).

Plaintiffs now try to downplay their expert's opinion, claiming that it merely "corroborated" other allegations of falsity. Opp. 1, 4. This argument mischaracterizes the Ninth Circuit's analysis. The key falsity question is whether NVIDIA misstated the proportion of its products being sold to cryptocurrency miners. And the *only* allegations purporting to calculate the proportion of quarterly sales to cryptocurrency miners came from the expert opinion. Pet. App. 17a-25a.

Plaintiffs cite the Ninth Circuit's description of the complaint as providing "detailed information about [the expert's] methodology" and "a particularized recitation of facts upon which [the expert] relied,"

**EX 9**

222

11

Opp. 31 (quoting Pet. App. 20a-21a), but, as the dissent explained, these allegations are no more than a string of "questionable assumptions." Pet. App. 73a (Sanchez, J., dissenting) (quotation marks omitted). An expert's assumptions cannot stand in for particularized facts. Plaintiffs point to the RBC report and former employee accounts as supposed corroboration. But the RBC report fails for the same reasons as Plaintiffs' expert report: It is post-hoc material relied on for its opinions, not underlying facts, and the complaint lacks any meaningful description of its methodology. The former employee testimony also fails as corroboration, because it does not purport to give *particularized* allegations about worldwide sales figures. *Compare* Opp. 31-32, *with* Pet. 29-30.

Plaintiffs also theorize that "'opinions' and 'facts' are not entirely distinct," such that an expert opinion may be considered a "fact" for purposes of the PSLRA. Opp. 28 n.9. But this Court has rejected attempts to "conflate[] facts and opinions," explaining that "a statement of fact ('the coffee is hot') expresses certainty about a thing, whereas a statement of opinion ('I think the coffee is hot') does not." *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015). Plaintiffs' expert opinion rests on a chain of inferences and speculation, *see* Pet. 26-28, and thus is not a particularized allegation of fact under the PSLRA.

EX 9

223

12

### III. THIS CASE IS AN EXCELLENT VEHICLE TO RESOLVE THESE EXCEPTIONALLY IMPORTANT ISSUES.

This petition is a "paradigmatic case for this Court's review." Grundfest Br. 4-10. Plaintiffs' contrary arguments are meritless.

First, Plaintiffs suggest (at 35) that NVIDIA failed to raise its falsity argument below. But NVIDIA did just that, arguing that an expert report "[c]annot be [c]redited" when it relies on "unidentified and unexplained assumptions and inputs." 9th Cir. Dkt. 35 at 58-59. In any event, this Court may hear any "issue not pressed so long as it has been passed upon." *United States* v. *Williams*, 504 U.S. 36, 41 (1992). There is "no doubt * * * that the [Ninth] Circuit decided the crucial issue." *Id.* at 43; *see supra* p. 10.

Second, Plaintiffs (at 2 n.2, 11) cite an SEC settlement and order. But that order's allegations concern *other* provisions of the securities laws that do not require proving knowledge or recklessness. *See* 15 U.S.C. § 77q(a)(2)-(3); *see also* Former SEC Officials Br. 15. That the SEC—which has broad investigative and enforcement authority—decided *not* to bring claims under Section 10(b)(5) supports NVIDIA, not Plaintiffs. Tellingly, Plaintiffs did not even mention the SEC order below, even though it issued before the case was argued and decided.

Finally, Plaintiffs question (at 35-36) this case's importance. As the groundswell of amici supporting the petition demonstrates, however, the Ninth Circuit's opinion guts the PSLRA's heightened pleading requirements in the second-most-common forum for

EX 9

224

13

securities suits in the country. A bipartisan group of ten former SEC enforcement officials have thus urged this Court to grant certiorari, explaining that "[t]he formula the court below endorsed is simple"—plaintiffs may hire experts to make up the facts they cite to allege falsity, and then "infer scienter from falsity," creating an end-run around the PSLRA. Former SEC Officials Br. 17. The Ninth Circuit's legal standard provides "future plaintiffs a straightforward strategy to replicate unsubstantiated complaints alleging securities fraud," Washington Legal Foundation and National Association of Manufacturers Br. 11, and undermines the PSLRA's "[e]xacting pleading requirements." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). This Court should step in.

EX 9

225

14

## CONCLUSION

For the foregoing reasons, and those in the petition, the petition for a writ of certiorari should be granted.

Respectfully submitted,

| | |
|---|---|
| JOHN C. DWYER | NEAL KUMAR KATYAL |
| PATRICK E. GIBBS | *Counsel of Record* |
| SAMANTHA A. KIRBY | KATHERINE B. WELLINGTON |
| COOLEY LLP | WILLIAM E. HAVEMANN |
| 3175 Hanover Street | REEDY C. SWANSON |
| Palo Alto, CA 94304 | KEENAN ROARTY |
| Tel.: (650) 843-5000 | HOGAN LOVELLS US LLP |
| | 555 Thirteenth Street, N.W. |
| KATHLEEN R. HARTNETT | Washington, D.C. 20004 |
| COOLEY LLP | Tel.: (202) 637-5600 |
| 3 Embarcadero Center | neal.katyal@hoganlovells.com |
| 20th Floor | |
| San Francisco, CA 94111 | SARAH M. LIGHTDALE |
| Tel.: (415) 693-2000 | PATRICK J. HAYDEN |
| | COOLEY LLP |
| | 55 Hudson Yards |
| | New York, NY 10001 |
| | Tel.: (212) 473-6000 |

*Counsel for Petitioners*

May 2024

**EX 9**

226