1
2
3
4
5
6

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282890)
Justin D. D'Aloia (*pro hac vice*) (NY Bar # 4935979)
600 Third Avenue, 20th Floor
New York, New York   10016
Telephone:   (212) 661-1100
jpafiti@pomlaw.com
jdaloia@pomlaw.com

7
8

*Counsel for Lead Plaintiff Dipak Patel and
Lead Counsel for the Proposed Settlement Class*

9

— additional counsel on signature page —

10
11

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SECURITIES LITIGATION | No. 3:23-cv-01216-GPC-VET <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge:  Hon. Gonzalo P. Curiel <br> Date: February 28, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 2D |

24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION ........................................................................................0

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I.    INTRODUCTION ...................................................................................1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ..................1

    A.    Relevant Procedural History ........................................................1

    B.    Settlement Discussions and Negotiations ....................................3

    C.    Key Terms of the Settlement ........................................................5

    D.    Settlement Administration ............................................................6

III.  LEGAL STANDARD ............................................................................6

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT .......................7

    A.    Preliminary Approval Standard ....................................................7

    B.    The Settlement is Fair, Reasonable and Adequate .......................8

        1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class ....................................................................................8

        2.    The Settlement Resulted from Arm's-Length Negotiations ......8

        3.    The Relief Afforded by the Settlement Is Substantial..............10

        4.    The Settlement Treats All Class Members Equitably .............14

V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS .....15

    A.    The Settlement Class Satisfies The Requirements of Rule 23 ..........15

        1.    Numerosity ..............................................................................16

        2.    Commonality ............................................................................17

        3.    Typicality .................................................................................17

        4.    Adequacy .................................................................................18

        5.    Predominance and Superiority..................................................19

    B.    The Court Should Appoint Co-Lead Counsel as Class Counsel ........21

VI.   THE METHOD AND CONTENT OF THE NOTICE PROGRAM ...........22

    A.    The Proposed Method of Notice Is Reasonable Under the Circumstances ..............................................................................22

    B.    The Form of Notice Adequately Informs Class Members of Their Rights ...........................................................................................24

VII.  PROPOSED SCHEDULE........................................................................25

VIII. CONCLUSION.........................................................................................25

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assoc., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ...................................................................17

*Ali v. Franklin Wireless Corp.*,
  2023 WL 25718 (S.D. Cal. Jan. 3, 2023) ...................................................20

*Baker v. SeaWorld Ent., Inc.*,
  2020 WL 4260712 (S.D. Cal. Jul. 24, 2020) .........................................11, 12

*Baron v. HyreCar Inc.*,
  2024 WL 3504234 (C.D. Cal. July 19, 2024)..................................... *passim*

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)...................................................................................20

*In re BofI Holdings, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) .....................................................................18

*In re BofI Holding, Inc. Sec. Litig.*,
  2021 WL 3742924 (S.D. Cal. Aug. 24, 2021)......................... 16, 17, 18, 20

*In re BofI Holding, Inc. Sec. Litig.*,
  2021 WL 6051671 (S.D. Cal. Dec. 21, 2021)............................................24

*In re BofI Holding, Inc. Sec. Litig.*,
  2022 WL 2068424 (S.D. Cal. June 8, 2022) .................................11, 12, 14

*In re En Pointe Techs., Inc. Sec. Litig.*,
  2005 WL 8173600 (S.D. Cal. May 31, 2005) ............................................16

*Enriquez v. Nabriva Therapeutics, plc*, No. 19-cv-4183 (S.D.N.Y. May 14,
  2021) ........................................................................................................21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...................................................................................20

*Farrar v. Workhorse Grp., Inc.*,
  2023 WL 5505981 (C.D. Cal. July 24, 2023).......................................10, 14

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Fleming v. Impax Labs. Inc.*,
   2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ........................................15, 23

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y 2019) ...........................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................7, 16, 18

*Hardy v. Embark Tech., Inc.*,
   2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) ............................................12

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ........................................................................16

*Hatamian v. Adv. Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) .............................................17

*Hernandez v. Arthur J. Gallagher Serv. Co.*,
   2024 WL 1521422 (S.D. Cal. Apr. 8, 2024) ................................................13

*Hester v. Vision Airlines, Inc.*,
   2014 WL 3547643 (D. Nev. July 17, 2014) .................................................11

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2019 WL 718807 (S.D. Cal. Feb. 5, 2019) ..................................................23

*Hunt v. Bloom Energy Corp.*,
   2023 WL 7167118 (N.D. Cal. Oct. 31, 2023) ..............................................12

*In re Illumina, Inc. Sec. Litig.*,
   2019 WL 6894075 (S.D. Cal. Dec. 18, 2019) ....................................9, 13, 14

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................................21

*Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..............................................22

*In re KaloBios Pharms., Inc. Sec. Litig.*,
   2017 WL 574444 (N.D. Cal. Jan. 20, 2017) ................................................24

*Kendall v. Odonate Therapeutics, Inc.*,
   2022 WL 188364 (S.D. Cal. Jan. 18, 2022) ...................................... *passim*

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Khoja v. Orexigen Terapeutics, Inc.*,
2021 WL 1579251 (S.D. Cal. Apr. 22, 2021) ...............................................23

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ..........................................................10

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ........................................................20

*Linney v. Cellular Alaska P'ship*,
1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir.
1998) ...............................................................................................................9

*Low v. Trump Univ., LLC*,
881 F.3d 1111 (9th Cir. 2018) ......................................................................22

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022)............................................12

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ...............................................11

*Mandalevy v. BofI Holding, Inc.*,
2022 WL 4474263 (S.D. Cal. Sept. 26, 2022)........................................15, 22

*Mandalevy v. BofI Holdings, Inc.*,
2022 WL 1556160 (S.D. Cal. May 17, 2022) ..................................... *passim*

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017) .................................................................23

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019)...............................................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)..................................................................10

*In re NetSol Techs., Inc. Sec. Litig.*,
2016 WL 7496724 (C.D. Cal. July 1, 2016)..................................................16

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................................22

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ..................................................................17, 18

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Pearson v. P.F. Chang's China Bistro, Inc.*,
  2018 WL 2316885 (S.D. Cal. May 21, 2018) ...........................................................14

*Raffin v. Medicredit, Inc.*,
  2018 WL 8621204 (C.D. Cal. Nov. 30, 2018) ..........................................................15

*Ramirez v. DeCoster*,
  203 F.R.D. 30 (D. Me. 2001)...................................................................................21

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................................................8, 15

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ...................................................................................20

*Scott v. ZST Digital Networks, Inc.*,
  2013 WL 12123989 (C.D. Cal. Mar. 27, 2013)..........................................................9

*In re Silver Wheaton Corp. Sec. Litig.*,
  2017 WL 2039171 (C.D. Cal. May 11, 2017) ...........................................................20

*Sudunagunta v. NantKwest, Inc.*,
  2018 WL 3917865 (C.D. Cal. Aug. 13, 2018) ..........................................................16

*In re Surebeam Corp. Sec. Litig.*,
  2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ..............................................................18

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................................................6

*Todd v. STAAR Surgical Co.*,
  2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ...............................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)..................................................................................................19

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021).....................................................10, 23

*Vathana v. EverBank*,
  2010 WL 934219 (N.D. Cal. Mar. 15, 2010) ............................................................19

*In re VeriSign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005).............................................................16

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................17

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
   2019 WL 13020734 (N.D. Cal. May 14, 2019)......................................10

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) .................................................9

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..................................................19

**Statutes**

15 U.S.C. § 78u-4..............................................................15, 22

Private Securities Litigation Reform Act of 1995 ................................ *passim*

**Rules**

Fed. R. Civ. P. 9 ................................................................2

Fed. R. Civ. P. 23 ............................................................ *passim*

Fed. R. Civ. P. 26 .............................................................2, 3

**Other Authorities**

Treas. Reg. §1.468B-1 ............................................................5

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

**TABLE OF DEFINED TERMS**

| Defined Term | Definition | Cross Reference |
|---|---|---|
| Action | *In re ImmunityBio, Inc. Securities Litigation*, Case No. 23-cv-01216. | Ex. 1 § II.B.(1.0) |
| Authorized Claimants | Settlement Class members who submit timely and valid Proof of Claims. | Ex. 1 § II.B.(1.1) |
| Claimant | A Person who or which submits a Proof of Claim. | Ex. 1 § II.B.(1.3) |
| Claims Administrator | The firm that will be hired by Co-Lead Counsel to administer the Settlement. | Ex. 1 § II.B.(1.4) |
| Confidential Term Sheet | The memorialized agreement of settlement terms dated December 19, 2024. | Ex. 1 at 3 |
| Co-Lead Counsel | Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer"). | Ex. 1 at 2 |
| Exchange Act | The Securities Exchange Act of 1934, as amended. | Ex. 1 § II.B.(1.10) |
| FAC | The First Amended Complaint | Ex. 1 at 2 |
| Fee and Expense Application | Any application or applications for payments to Co-Lead Counsel from the Settlement Fund for: (a) an award of attorneys' fees; and (b) reimbursement of actual expenses. | Ex. 1 § II.B.(1.11) |
| Fee and Expense Award | The award of fees and expenses defined in Section II.H. of the Stipulation. | Ex. 1 § II.H. |
| Final | The conditions under which the Settlement are final. | Ex. 1 § II.B.(1.13) |
| Net Settlement Fund | The Settlement Fund less any Taxes and Tax Expenses, any Fee and Expense Award to Co-Lead Counsel, any compensatory award to Lead Plaintiff approved by the Court, and Notice and Claims Administration Expenses. | Ex. 1. § II.B.(1.16) |
| Notice | The Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing. | Ex. 1. § II.B.(1.17) |
| Notice and Administration Expenses | An interestbearing escrow account that may be used only to pay Notice and Claim Administration Expenses. | Ex. 1 § II.B.(1.19) |

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

| Parties | Collectively: (1) Lead Plaintiff; and (2) Defendants. | Ex. 1 § II.B.(1.20) |
|---|---|---|
| Plan of Allocation | The plan or formula for allocating the Net Settlement Fund to Authorized Claimants. | Ex. 1 § II.B.(1.22) |
| Preliminary Approval Order | The order by the Court, as set forth as Exhibit 1-A hereto, provisionally certifying the Settlement Class for settlement purposes only. | Ex. 1 § II.B.(1.23) |
| Proof of Claim | The Proof of Claim and Release Form to be submitted by Claimants. | Ex. 1 § II.B.(1.24) |
| Publication Notice | The Notice of Pendency and Proposed Settlement of Class Action to be published on a national business newswire. | Ex. 1 § II.B.(1.25) |
| PSLRA | The Private Securities Litigation Reform Act of 1995. | |
| Released Defendant Parties | (i) each Defendant, (ii) each of their respective immediate family members (for individuals) and any trust of which any individual defendant is the settler or which is for the benefit of any defendant and/or any member(s) of his family, and (iii) enumerated related persons. | Ex. 1 § II.B.(1.27) |
| Settlement | The settlement of the Action on the terms set forth in the Stipulation. | Ex. 1 § II.B.(1.32) |
| Settlement Amount | Ten million five hundred thousand dollars ($10,500,000.00) in cash to be paid pursuant to ¶ 2.0 of the Stipulation. | Ex. 1 § II.B.(1.34) |
| Settlement Class | All persons who purchased or acquired ImmunityBio, Inc. securities from March 10, 2021, to May 10, 2023, inclusive (the "Class Period"), and were damaged thereby. | Ex. 1 § II.B.(1.35) |
| Settlement Class member | A person or entity that is a member of the Settlement Class that does not exclude himself, herself, or itself by filing a timely request for exclusion in accordance with the requirements set forth in the Notice. | Ex. 1 § II.B.(1.36) |

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

| Settlement Fund | The Settlement Amount before any authorized expenditures. | Ex. 1 § II.B.(1.40) |
| Supplemental Agreement | The supplemental agreement between the Parties described in the Stipulation at ¶ 2.13. | Ex. 1 § II.B.(1.41) |
| Taxes and Tax Expenses | (a) All taxes of any kind on any income earned by the Settlement Fund, together with any interest, penalties, or additions to tax imposed with respect to them; and (b) the reasonable and necessary costs and expenses incurred in connection with the implementation of ¶ 2.10 of the Stipulation | Ex. 1 § II.B.(1.42) |

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

# NOTICE OF MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:  PLEASE TAKE NOTICE that, on February 28, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Dipak Patel ("**Lead Plaintiff**") will, and hereby does, move this Court, before the Honorable Gonzalo P. Curiel, United States District Judge of the United States District Court for the Southern District of California, in Courtroom 2D of the Edward J. Schwartz United States Courthouse, located at 221 West Broadway, San Diego, California 92101, for entry of an order: (1) granting preliminary approval of the proposed Settlement of the above-captioned class action, as set forth in the accompanying Stipulation of Settlement, dated January 28, 2025 (the "**Stipulation**"); (2) preliminarily certifying the Settlement Class, as defined in the Stipulation, appointing Lead Plaintiff as representative of the Settlement Class, and appointing Co-Lead Counsel as lead counsel for the Settlement Class; (3) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (4) setting a hearing date for final approval thereof (the "**Settlement Hearing**") and a schedule for various deadlines relevant thereto.  In support of this Motion for Preliminary Approval of Class Action Settlement (the "**Motion**"), which is filed with Defendants' consent, Lead Plaintiff submits the following Memorandum of Points and Authorities and supporting papers, including the proposed Preliminary Approval Order that is attached as Exhibit A to the Stipulation, a word copy of which is being furnished to the Court by email in accordance with the Civil Chambers Rules of the Honorable Gonzalo P. Curiel and Rule 2(h) of the Court's Electronic Case Filing Administrative Policies and Procedures Manual. [1]

---

1 Unless otherwise defined herein, all capitalized terms have the meaning set forth in the Stipulation, as reproduced in the Table of Defined Terms above.  A true and correct copy of the Stipulation and its exhibits are attached as Exhibit 1 to the accompanying Declaration of Justin D. D'Aloia (the "**D'Aloia Declaration**").  Additional exhibits are attached to the D'Aloia Declaration as well as the accompanying Declaration of Corey D. Holzer (the "**Holzer Declaration**").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Lead Plaintiff has reached a class-wide Settlement with Defendants, the terms of which are set forth in the accompanying Stipulation, which provides an outstanding resolution to this Action at a unique inflection point in the matter.  The proposed Settlement will resolve all claims that were or could have been brought against Defendants in exchange for an aggregate cash recovery of $10,500,000 for the benefit of the Settlement Class.  This Settlement is the product of extensive work by Lead Plaintiff and Co-Lead Counsel, and reflects their comprehensive assessment of the strengths and weaknesses of the claims and continued litigation.  As detailed below, the Settlement represents a superb result for the Settlement Class and eliminates the risk, cost, and uncertainty of continued proceedings, including contested motions for class certification and summary judgment, a battle of expert witnesses, an unfavorable result at trial, and/or appeals, as well as the difficulties associated with the fact that much of the evidence supporting Lead Plaintiff's claims is in the possession of non-parties.  Accordingly, Lead Plaintiff respectfully submits that the proposed Settlement, which was reached with the aid of a highly experienced mediator, is fair, reasonable, and adequate, and warrants the Court's preliminary approval.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Relevant Procedural History

On June 30, 2023, Plaintiff Zachary Salzman initiated this Action by filing a class action complaint for violation of the federal securities laws against Defendants.  (ECF No. 1.)  On September 27, 2023, the Court appointed Dipak Patel as Lead Plaintiff and approved his selection of Co-Lead Counsel pursuant to the PSLRA. (ECF No. 31.)

On November 17, 2023, Lead Plaintiff filed the operative FAC (ECF No. 37) following an extensive investigation by Lead Counsel that involved, among other things, interviews with former employees, expert consultation, and the review of non-public information secured through government information requests.  The FAC asserted claims against Defendants under Sections 10(b) of the Exchange Act and Rule 10b-5 promulgated

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

thereunder by the U.S. Securities & Exchange Commission, and claims against Defendants Adcock, Sachs, and Soon-Shiong under Section 20(a) of the Exchange Act.  The FAC alleged that Defendants unlawfully inflated ImmunityBio's stock price during the Class Period by misleading investors about its manufacturing capabilities, compliance with the FDA's current good manufacturing practices ("**cGMP**") standards, and the approval prospects for ImmunityBio's lead product candidate, Anktiva.  The FAC alleged that the misleading nature of Defendants' statements was revealed on May 11, 2023, when the FDA issued a Complete Response Letter ("**CRL**") rejecting the Company's Biologic License Application ("**BLA**") for Anktiva due to deficient manufacturing practices, which removed the inflation introduced by their previous misstatements, causing injury to investors.

On January 8, 2024, Defendants filed a motion to dismiss ("**MTD**") for failure to state a claim under the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA, along with various supporting papers.  (ECF No. 50.)  Lead Plaintiff filed a comprehensive memorandum in opposition to the MTD on February 19, 2024 (ECF No. 51), and Defendants filed a reply on March 11, 2024 (ECF No. 52).  On May 3, 2024, Defendants filed a request for judicial notice in support of the pending MTD (ECF No. 56), which Lead Plaintiff opposed on May 17, 2024 (ECF No. 60).  On June 5, 2024, the Court took the MTD under submission. (ECF No. 61). On June 18, 2024, Defendants filed a notice of supplemental authority in further support of their MTD. (ECF No. 62).

On June 20, 2024, the Court entered an Order granting in part and denying in part Defendants' MTD (ECF No. 63) (the "**MTD Order**").  In the MTD Order, the Court rejected Defendants' challenge as to 51 of he 62 misstatements pled in the FAC and granted Lead Plaintiff leave to replead if he so desired.  Lead Plaintiff filed a notice of his decision to proceed on the FAC on July 16, 2024. (ECF No. 64).

Between July 24, 2024, and August 23, 2024, counsel for the Parties held a series of conferences to discuss the matters required by Fed. R. Civ. P. 26(f), including a proposed case schedule.  On August 29, 2024, the Parties exchanged their initial disclosures and Defendants filed an answer to the FAC in which they denied, in whole or part, a significant

amount of the FAC's allegations and raised a variety of affirmative defenses (ECF No. 68). On October 31, 2024, the Court entered a Scheduling Order setting case deadlines, including a final pretrial conference date of March 13, 2026. (ECF No. 77).

To facilitate the swift commencement of discovery, ahead of the Court's entry of the Scheduling Order, the Parties negotiated and filed a Joint Motion for entry of a stipulated protective order to govern the exchange of confidential information (ECF No. 71), which the Court entered on September 13, 2024 (ECF No. 73) (the "**Protective Order**"). The Parties also negotiated and filed a Joint Motion for the entry of a stipulated order to govern the collection, processing, and production of electronically stored information (ESI) (ECF No. 78), which the Court entered on November 14, 2024 (ECF No. 79).

Since the entry of the Protective Order, the Parties engaged in targeted and hard-fought discovery. Lead Plaintiff interposed an extensive set of requests for production covering an array of relevant topics, including the manufacturing process for Anktiva, cGMP compliance, and pertinent interactions with the FDA during the Class Period. Lead Plaintiff also served several subpoenas on key third parties including, among others, the contract manufacturing organizations (each, a "**CMO**") primarily responsible for manufacturing Anktiva on behalf of ImmunityBio. Likewise, Defendants served requests for production and written interrogatories on Lead Plaintiff. Given the wide array of discovery topics sought by the Parties, as well as the potentially voluminous documentation responsive to the requests, the Parties held numerous meet and confers by letter and phone to resolve disagreements regarding the discovery served. Lead Plaintiff also engaged with counsel for the third parties served with subpoenas, receiving initial productions for some and engaging in meet and confers in other instances to potentially resolve outstanding disputes without court intervention. Lead Plaintiff ultimately received over 10,000 pages of documents from Defendants and third parties, and produced various records and several written responses to the discovery requests served on him by Defendants.

## B. Settlement Discussions and Negotiations

As required by Fed. R. Civ. P. 26(f), the Parties discussed the potential for an early

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

resolution following the entry of the Court's MTD Order but agreed at that time that it was too early to meaningfully engage and that discovery could potentially facilitate discussions.

On September 4, 2024, the Court entered an Order scheduling an early neutral evaluation conference ("**ENE**") before Magistrate Judge Valerie E. Torres on October 28, 2024. Ahead of the ENE, both sides prepared a confidential ENE statement, which required each Party to thoroughly consider and outline the operative facts, respective positions on liability and damages, and their settlement positions. Both sides were also required to obtain full and complete authority to make settlement decisions at the conference. The Parties engaged in good faith with the oversight of Magistrate Judge Torres but were unable to reach a resolution at that time.

Following the ENE, the Parties pressed forward with discovery but remained in contact and continued to discuss the possibility of a mediation. The Parties recognized that a window opened for settlement discussions before incurring the substantial costs associated completing fact discovery and litigating class certification, and agreed to mediate before Jed Melnick, Esq. of JAMS. In anticipation of the mediation, the Parties exchanged mediation statements and other supporting information.

On December 4, 2024, the Parties attended all-day, in-person mediation. The Parties engaged in intensive negotiations, which included multiple counter-offers, narrowing the difference in the Parties' respective settlement positions, but ultimately did not end the mediation with an agreement in place. In the days after the mediation, negotiations continued with the assistance of Mr. Melnick, who continued to engage the Parties regarding a prospective settlement. On December 13, 2024, after reviewing the full briefing, spending a mediation session with the Parties, discussing merits and damages, and hard-fought negotiations, Mr. Melnick made a mediator's proposal to fully and finally resolve the Action for $10,500,000, which was accepted by all Parties that same day.

Thus, settlement negotiations were conducted at arm's-length over the course of several months through multiple channels, including emails, the ENE, phone calls, and an in-person mediation with an experienced and disinterested neutral, during which each side

pressed for the most favorable outcome possible. After exchange of drafts and redlines, a Confidential Term Sheet was executed on December 20, 2024.  The Parties then engaged in further negotiations to formalize the Settlement in the Stipulation.  Co-Lead Counsel and Defense counsel engaged in frequent correspondence, exchanging extensive and detailed redlines of documents, to finalize the Stipulation and its accompanying Exhibits on January 28, 2025.

### C.    Key Terms of the Settlement

This Settlement requires $10,500,000 in cash to be paid into an escrow account for the benefit of the Settlement Class.  Stipulation ¶ 2.0.  That amount, plus accrued interest, comprise the Settlement Fund.  Once Notice and Administration Expenses, Taxes and Tax Expenses,[2] and Court-approved attorneys' fees and expenses, any awards to the Plaintiffs, and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Plan of Allocation to Authorized Claimants who are entitled to a distribution.  *Id.* ¶ 6.2.

Within 21 days of entry of a Preliminary Approval Order, a long-form Notice in the form of Exhibit B-1 or a short-form Notice in the form of Exhibit B-2 will be mailed to Settlement Class members who can be identified through reasonable effort, including from ImmunityBio's stock transfer records.  Stipulation Ex. A ¶ 5.  A Publication Notice in the form of Exhibit C will also be published on a national newswire.  *Id.*  The Publication Notice, and if approved by the Court the short-form Notice, will directly Settlement Class members to a Settlement-specific website where they can download copies of all Settlement documents, including the Stipulation and the long-form Notice, and submit claims online.  *Id.* Ex. B-2, C.  As explained in the Notice, any Settlement Class member who wishes to receive a distribution from the Net Settlement Fund must establish that they are entitled to such a distribution by submitting a Proof of Claim substantially in the form

---

[2] Because the Settlement Fund is a "qualified settlement fund," under Treas. Reg. §1.468B-1 (Stipulation ¶ 2.0), the income earned on the Settlement Fund is taxable.  All taxes and tax expenses shall be paid out of the Settlement Fund.  *Id.* ¶ 2.10.

of Exhibit D, along with supporting documents described therein, within 90 days of the entry of a Preliminary Approval Order. *Id.* Ex. A ¶¶ 10-11. In addition, any Settlement Class member who wishes to be excluded from the Settlement Class or object to any aspect of the Settlement, must submit a written request in accordance with the instructions set forth in the Notice no later than 21 days before the Settlement Hearing. *Id.* ¶¶ 13-14.

The Parties have the right to terminate the Settlement in the event it does not become Final. Stipulation ¶¶ 2.11-2.12. As is standard in cases of this type, ImmunityBio also has the right to terminate the Settlement if requests for exclusion exceed an agreed-upon threshold set forth in a confidential Supplemental Agreement between the Parties. *Id.* ¶ 2.13. In the event the Settlement is terminated, the Parties will revert to their respective positions in the litigation before their agreement to enter into a Settlement. *Id.* ¶ 2.14.

### D.    Settlement Administration

After a competitive bidding process, Co-Lead Counsel selected Epiq Class Action & Claims Solutions, Inc. ("**Epiq**"), an experienced class action claims administrator, to serve as Claims Administrator for the Settlement. Co-Lead Counsel asked for bids from four claims administration firms. Co-Lead Counsel selected Epiq after assessing its bid to be the most cost-effective and competitive of those submitted. As Claims Administrator, Epiq will mail and publish Notice in the form approved by the Court, maintain a Settlement website with Settlement documents and information, and oversee the submission and processing of Claims, including follow-up as needed to ensure complete submissions.

## III.   LEGAL STANDARD

In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Mandalevy v. BofI Holdings, Inc.*, 2022 WL 1556160, at *3 (S.D. Cal. May 17, 2022) (Curiel, J.) (*Mandalevy I*) (same). However, Rule 23(e) of the Federal Rules of Civil Procedure (the "Rules") specifies that claims in a class action may be settled only with the Court's approval. To that end, Rule 23(e) outlines a two-step

process for approving a proposed class action settlement.  First, a reviewing court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Second, after providing the class with notice of the proposed settlement, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. 23(e)(2).

This Motion is limited to the first inquiry.  As explained in the sections that follow, there is ample support for finding that the Court will likely be able to approve the Settlement and certify a class for purposes of the Settlement, and that the proposed notice is reasonable under the circumstances.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT

### A.    Preliminary Approval Standard

A class action settlement can be approved only upon a finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Thus, the question at the preliminary approval stage—the stage where the court determines whether to direct notice to the class—is whether it is *likely* that the Court will be able to find that the settlement is "fair, reasonable, and adequate."  *Mandalevy I*, 2022 WL 1556160, at *6.  The decision to approve a proposed class action settlement rests in the sound discretion of the district court, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), and must be "made in the context of the 'strong judicial policy'" that favors the settlement of class actions. *Mandalevy I*, 2022 WL 1556160, at *6 (quoting *Syncor ERISA Litig.*, 516 F.3d at 1101).

Rule 23(e)(2)—which governs final approval—was amended in 2018 to create uniformity among federal courts on the primary considerations they must weigh to determine if a proposed class action settlement is "fair, reasonable, and adequate."  Fed. R.

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

Civ. P. 23(e), advisory committee notes (2018 amendment).  As amended, Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treat class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As explained below, the proposed Settlement is supported by all the considerations specified in Rule 23(e)(2).

## B.    The Settlement is Fair, Reasonable and Adequate

### 1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  As this Court recognized in *Mandalevy I*, 2022 WL 1556160, at *6, this analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively," which govern class certification.  4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020).  Accordingly, these points are addressed more fully in Point V.A.4, which substantiates that Lead Plaintiff and Co-Lead Counsel's representation has been more than adequate.

### 2.    The Settlement Resulted from Arm's-Length Negotiations

Next, Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W.*

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  As a result, settlements that result from non-collusive, procedurally fair negotiations are presumed fair.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).

Here, the proposed Settlement is the product of intense arm's length negotiations between Lead Plaintiff and the Settling Defendants, through their respective counsel, over several months following initial discovery.  In an effort to reach a just resolution for the putative class, Co-Lead Counsel negotiated with counsel for the Settling Defendants over the course of several months on numerous occasions, including via Zoom at the ENE in the presence of Magistrate Judge Torres, telephonically, in writing, and in person at mediation before the presence of the experienced and qualified mediator, Jed Melnick, Esq. The Settlement was ultimately reached after mediation as a result of a mediator's proposal, providing further evidence that the settlement was reached via non-collusive or improper means.  *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive") (quoting *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)); *see also, e.g.*, *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *6 (C.D. Cal. July 19, 2024) (finding securities settlement reached as a result of mediation before Mr. Melnick supports preliminary approval).  After accepting the mediator's proposal, the Parties negotiated directly to finalize the Confidential Term Sheet, and thereafter, negotiated for another month to arrive at the terms of the Stipulation and its Exhibits.  These extensive negotiations support the conclusion that the Settlement is fair and was achieved in the absence of collusion. *See Scott v. ZST Digital Networks, Inc.*, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations . . . were conducted at arm's-length by counsel over the span of several months, were serious, informed and noncollusive" especially when "[t]he parties were represented by experienced counsel who bargained in an adversarial manner"); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached

in arm's length negotiations, after relevant discovery had taken place, create a presumption that the agreement is fair."), *aff'd* 151 F.3d 1234 (9th Cir. 1998).

### 3. The Relief Afforded by the Settlement Is Substantial

Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate," taking into account four factors enumerated therein. Fed. R. Civ. P. 23(e)(2)(C). As discussed below, each of these factors supports a finding that this recovery provides an excellent outcome for the Settlement Class under the circumstances.

**Cost, Risks, and Delay of Continued Litigation**. Rule 23(e)(2)(C)(i) requires the Court to weigh the recovery provided by the Settlement against "the costs, risks, and delay of trial and appeal." In doing so, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *see also In re Wells Fargo & Co. S'holder Deriv. Litig.*, 2019 WL 13020734, at *5 (N.D. Cal. May 14, 2019) (court must weigh immediate relief against "strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation"). As a general matter, an immediate cash recovery is "preferable to lengthy and expensive litigation with uncertain results," unless the settlement amount is "clearly inadequate." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).

The Settlement here provides the Settlement Class with the certainty of $10.5 million in cash. Lead Plaintiff's expert estimates that maximum recoverable damages, assuming Lead Plaintiff prevailed on the merits, total approximately $130.6 million. This Settlement Amount therefore represents ***over 8%*** of estimated damages and, thus, is well above the median recovery level in securities class action settlements. *See Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that average recovery in securities class action settlement is between 2% to 3% of maximum damages; *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement for 2% of damages is "consistent with the typical recovery in securities class action[s]").

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

While the case has real strengths, Lead Plaintiff faced significant risks litigating the claims to fruition. To ultimately prevail, Lead Plaintiff would need to secure certification of a liability class and prove—and, thus, defeat Defendants' counterarguments as to—falsity, scienter, loss causation, and damages. Defendants previously urged Magistrate Judge Torres adopt a schedule that provided additional time for a response to a class certification motion so they could marshal sufficient evidence to mount a robust opposition. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y 2019) ("Although the risk of maintaining a class through trial is present in every class action" settlement approval is supported when "it is likely that defendants would oppose class certification" if litigation continued). In addition, a significant amount of key evidence is in the possession of third parties, including ImmunityBio's CMOs, which poses its own set of challenges. *See Hester v. Vision Airlines, Inc.*, 2014 WL 3547643, at *12 (D. Nev. July 17, 2014) (identifying the "difficulty in obtaining documents from third-parties as a "significant challenge[]"). Beyond that, most if not all merits evidence secured by Lead Plaintiff would need to be reviewed by subject-matter experts given the highly technical nature of biopharmaceutical manufacturing. Similarly, the elements of loss causation and damages almost invariably require expert testimony. Because Lead Plaintiff bears the burden of proof, Defendants could win at summary judgment or trial on any of these issues through a well-placed *Daubert* motion. Even if the case proceeded to trial, these matters could only be resolved through an inherently "unpredictable battle of the experts." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. Jul. 24, 2020) (citation omitted); *see also In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *6 (N.D. Cal. Aug. 7, 2023) ("[I]t is unpredictable who the jury would believe in a 'battle of the experts'").

Moreover, the Settlement spares the Settlement Class of the substantial cost and delay associated with further litigation. It is well-known that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker*, 2020 WL 4260712, at *7 (citation omitted); *see also In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *7 (S.D. Cal. June 8, 2022) (Curiel, J.) (*BofI Holding II*) (similar). Indeed, it is not

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

uncommon for a securities fraud case to take up to a decade to proceed from filing through trial. Here, Defendants vigorously contested nearly every stage of litigation, including discovery practice, and made clear they would continue to do so at every opportunity, such as class certification, summary judgment, and trial. And even if Plaintiff prevailed at trial, Defendants would undoubtedly engage in "vigorous post-trial motion practice . . . and likely appeals to the Ninth Circuit—delaying any recovery for years." *Baker*, 2020 WL 4260712, at *7; *see also Baron*, 2024 WL 3504234, at *8 (difficulties of proof and costs of litigating securities fraud class action through trial "weigh heavily in favor of approving the Proposed Settlement Agreement").

Accordingly, these realities underscore the strength of the relief provided by the Settlement. The immediate and above-average recovery it offers "appropriately accounts for the not insubstantial risk that Plaintiff and the class would recover nothing on some or all claims," and only after costly and protracted litigation. *Mandalevy I*, 2022 WL 1556160, at *8. Indeed, because of the risk, cost, and delay of successfully litigating such cases through trial and appeal, courts regularly approve securities settlements that provide a similar, or even lower, recovery. *See, e.g.*, *Baron*, 2024 WL 3504234, at *8 (settlement for 2% of total damages supports preliminary approval); *Hunt v. Bloom Energy Corp.*, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (same for 5.2% of damages); *Hardy v. Embark Tech., Inc.*, 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023) (same for 1.1% of damages); *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (same for 3.2% of damages); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022) (same for 3.49% to 3.84% of damages); *BofI Holding II*, 2022 WL 2068424, at *6 (8.9% to 10.4% of maximum damages was adequate).

**Effectiveness of Proposed Method for Distributing Relief**. Rule 23(e)(2)(C)(ii) calls for the court to weigh to potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." This analysis requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed.

R. Civ. P. 23(e), advisory committee notes (2018 amendment).

Here, the method for processing claims and distributing relief to eligible Claimants is well-established and effective.  As noted above, potential Settlement Class Members will be ascertained from transfer records maintained by Defendants.  In addition, Lead Plaintiff will publish notice in a national newswire about the Settlement directing potential claimants to a Settlement-specific website with more complete documentation.  Claimants will be required to submit records establishing all relevant transactions in ImmunityBio securities, and have an opportunity to cure any deficiencies or request that the Court to review a denied claim.  The Net Settlement Fund will then be distributed to Authorized Claimants on a *pro rata* basis in accordance with the Plan of Allocation based on the amount of each claimant's Recognized Losses.  These procedures are necessary insofar as neither Lead Plaintiff nor Defendants possess the trading data necessary for a claims-free process and are regularly held to be "effective" in securities class actions.  *Mandalevy I*, 2022 WL 1556160, at *8; *see also Baron*, 2024 WL 3504234, at *9 (finding nearly identical procedures "effective" for preliminary approval in securities class action).[3]

**Proposed Award of Attorneys' Fees**.  Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees."  The Notice informs Settlement Class members that, as compensation for services rendered on a contingent basis on their behalf, Lead Counsel intends to seek an attorneys' fee award in an amount not to exceed 33 ⅓% of the Settlement Fund.  *See* Stipulation Exs. B-1 at 9, B-2 at 1.  The "typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33⅓% of the total settlement value." *Illumina*, 2019 WL 6894075, at *7 (citation omitted).  Because the *maximum* potential fee here is within the "typical" range it does not pose an obstacle to preliminary approval. *See Kendall*, 2022 WL 188364, at *7 (fee "not to exceed 33 ⅓%" of a $12.75 million settlement supports preliminary approval because it is "within the [typical] range"); *see also Hernandez v. Arthur J. Gallagher Serv. Co.*, 2024 WL 1521422, at *8

---

[3] This is not a claims-made settlement, *i.e.*, no portion of the Settlement Fund will revert to Defendants based on the amount of claims submitted.  *See* Stipulation ¶ 2.5.

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

(S.D. Cal. Apr. 8, 2024) (same for 33 ⅓% fee on $4 million settlement); *Pearson v. P.F. Chang's China Bistro, Inc.*, 2018 WL 2316885, at *9 (S.D. Cal. May 21, 2018) (same for 33 ⅓% fee on $6.5 million settlement).  Moreover, the Settlement is not contingent on any ruling with respect to attorneys' fees (Stipulation ¶¶ 7.0, 8.3), which further supports preliminary approval.  *See Mandalevy I*, 2022 WL 1556160, at *10 (noting that the "Settlement Agreement is not conditioned on any particular award of attorney's fees").

**Rule 23(e) Agreements**.  Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).  The Parties here have entered into a confidential Supplemental Agreement that establishes conditions under which ImmunityBio may terminate the Settlement if those totaling a certain amount ImmunityBio stock "opt out" of the Settlement.  "[T]his type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *Baron*, 2024 WL 3504234 (citation omitted); *see also BofI Holding II*, 2022 WL 2068424, at *10 (similar); *Illumina*, 2019 WL 6894075, at *9 (similar).  Its terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts" for themselves at the expense of other Settlement Class members. *Farrar*, 2023 WL 5505981, at *10 (citation omitted).

### 4.    The Settlement Treats All Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  Such is the case here.  Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Losses divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Thus, while each Authorized Claimant will receive a different amount, "it is reasonable to allocate the settlement funds to class members based on the extent of their injuries." *Illumina*, 2019 WL 6894075, at *8 (citation omitted); *see also BofI Holding II*, 2022 WL 2068424, at *8 (approving similar Plan of Allocation).

The Notice advises Settlement Class members that Lead Plaintiff plans to request a service award in an amount not to exceed $15,000—which, at most, represents 0.14% of the Settlement Amount—to compensate him for time spent pursuing the matter on behalf of the Class, including meeting with counsel, overseeing the developments in the matter, and participating in discovery and settlement. Such awards are "fairly typical in class action cases." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The PSLRA also permits the award of "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party." 15 U.S.C. § 78u-4(a)(4). It is not uncommon for courts to approve a service award of $15,000 or more for similar work by a lead plaintiff. *See Fleming v. Impax Labs. Inc.*, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) (award of $15,000 in securities case "not per se unreasonable" for preliminary approval); *Raffin v. Medicredit, Inc.*, 2018 WL 8621204, at *7 (C.D. Cal. Nov. 30, 2018) (granting $15,000 award to representative who produced documents, sat for deposition, and participated in various motion and settlement discussions); *see also Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *11 (S.D. Cal. Sept. 26, 2022) (Curiel, J.) (*Mandalevy II*) (award comprising .27% of settlement amount was reasonable).

## V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS

To effectuate the Settlement, Lead Plaintiff seeks certification of a Settlement Class consisting of all persons who purchased or acquired ImmunityBio securities from March 10, 2021, to May 10, 2023, inclusive, and were damaged thereby, except those specifically excluded in ¶ 1.35 of the Stipulation. At this stage, the Court need not formally certify a class but, rather, need only determine if it "will *likely* be able to" do so. *Mandalevy I*, 2022 WL 1556160, at *3 (quoting Fed. R. Civ. P. 23(e)(1)(B)). That standard is readily satisfied.

### A.    The Settlement Class Satisfies The Requirements of Rule 23

Class certification is governed by Rule 23. Rule 23(a) establishes four prerequisites that must be met to certify a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, Rule 23(b)(3) provides that a class action may be maintained only if questions of law or fact common to the class

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

"predominate" over individual ones and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.  *See, e.g.*, *Hanlon*, 150 F.3d at 1019.  In addition, it is widely accepted that "[c]lass actions are particularly well-suited [for] securities litigation, wherein geographically dispersed shareholders with relatively small holdings" may not otherwise pursue their claims.  *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005).  Because of this, it is "well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."  *In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) (citation omitted); *see also Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *3 (C.D. Cal. Jan. 5, 2017) ("Especially in the case of a class action alleging securities fraud . . . any doubts . . . should be resolved in favor of certification.") (citation omitted).  Thus, many courts have observed that, in practice, "securities fraud cases fit Rule 23 like a glove."  *Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at *3 (C.D. Cal. Aug. 13, 2018) (citation omitted).  Lead Plaintiff respectfully submits that this case is no exception.

### 1.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  Notably, "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  Generally, "numerosity is satisfied when class size exceeds 40 members."  *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *2 (S.D. Cal. Aug. 24, 2021) (Curiel, J.) (*BofI Holding I*).  The exact size of the class need not be known so long as general knowledge and common sense support that the class is sufficiently large.  *See In re En Pointe Techs., Inc. Sec. Litig.*, 2005 WL 8173600, at *4 (S.D. Cal. May 31, 2005).  Here, there were some 435,984,529 shares of ImmunityBio common stock outstanding during the Class Period, and those shares actively traded on the NASDAQ, with average daily trading volume of 1.9 million shares.  FAC ¶¶

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

197, 204. Because there were "millions of shares trading on NASDAQ during the Class Period . . . the Court can infer that the number of shareholders and other potential class members . . . would be far too numerous to join." *BofI Holding I*, 2021 WL 3742924, at *2; *see also Mandalevy I*, 2022 WL 1556160, at *4 (similar).

### 2. Commonality

The commonality requirement of Rule 23(a)(2) is met if there is a "common contention" the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This does not mean "*every* question of law or fact must be common to the class." *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). A "single common question" will do, even if "the circumstances of each particular class member vary." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). As in most securities fraud cases, there are an array of issues that are subject to common proof and legal analysis apt to drive the resolution of the litigation, including: (1) whether statements Defendants made to the investing public during the Class Period were false or misleading; (2) whether Defendants made such statements with scienter; (3) whether such statements artificially inflated the price of ImmunityBio securities during the Class Period; (4) whether the price of ImmunityBio securities declined in response to disclosures that revealed the truth; and (5) the extent of damages suffered by the Settlement Class and the appropriate measure. *See Mandalevy I*, 2022 WL 1556160, at 4 (it is "indisputable that the proposed class meets Rule 23(a)(2)'s commonality requirement" based on near-identical set of questions); *see also, e.g.*, *Hatamian v. Adv. Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016) ("The Ninth Circuit recognizes that public disclosures alleged to contain material misrepresentations and omissions . . . present common questions of law and fact.").

### 3. Typicality

Rule 23(a)(3) demands that the claims or defenses of the party representing the class are typical of the claims or defenses of absent class members. The test is if "other members have the same or similar injury," and such injuries arise from "the same course of conduct"

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  In other words, "[t]ypicality refers to the nature of the claim or defense . . . not to the specific facts from which it arose."  *Id.*  Thus, "differences in the amount of damages, the size or manner of stock purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases."  *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5, 2004) (citation omitted).  Lead Plaintiff's claims are premised on the fraud-on-the-market theory (FAC ¶ 196), which posits that any material misstatement about a company artificially inflates the price of its stock until the truth becomes known, at which point the inflation introduced by the misstatements is removed, harming those who purchased at the inflated price.  *See In re BofI Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). As substantiated by his PSLRA certification (ECF No. 18-5), Lead Plaintiff purchased ImmunityBio securities at artificially inflated prices during the Class Period and was damaged when the value of those instruments declined in response to a corrective disclosure.  FAC ¶¶ 19, 191-95.  Thus, Lead Plaintiff suffered precisely the same type of injury from the same course of conduct as all others in the Settlement Class.  Furthermore, Defendants have not claimed that Lead Plaintiff is subject to any unique defenses that could render him atypical.  Therefore, his claims are typical of those of the Settlement Class.  *See Kendall*, 2022 WL 188364, at *4 (claims are typical of class in fraud-on-the-market case when they purchased securities at artificially inflated prices and suffered damages after corrective disclosure removed inflation); *BofI Holdings I*, 2021 WL 3742924, at *3 (same).

### 4.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This inquiry is guided by two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  Dipak Patel was previously appointed by the Court as Lead Plaintiff because he had the largest financial

losses.  ECF No. 31.   As a party with claims that are typical of those of the Settlement Class (Point V.A.3, *supra*), his interests are fully aligned with theirs to maximize the potential recovery.  *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").   As such, he has been actively involved in this Action, most recently providing responses to document demands and interrogatories and participating in the mediation between the Parties.  Lead Plaintiff has also demonstrated his commitment to this Action by retaining counsel with extensive experience litigating securities class actions in this District and elsewhere throughout the country (Point V.B, *infra*).   There is no indication that they would not continue to do anything other than vigorously prosecute the Action for the Settlement Class.

### 5.    Predominance and Superiority

There is also no question that class certification is proper under Rule 23(b)(3), which requires that common questions predominate over individual ones, and that a class action is superior to other methods of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  Predominance focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)), whereas superiority asks if class adjudication is "the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted); *see also Vathana v. EverBank*, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010) (Rule 23(b)(3) "encompasses 'cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'") (quoting Fed. R. Civ. P. 23(b)(3), advisory committee note (1966 amendment)).

Whether the questions that can be addressed with common proof predominate over those that require individual proof depends on "the elements of the underlying cause of

action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As a fraud on the market case, "the elements of falsity, materiality, scienter, and loss causation present questions common to the class because they all depend on Defendants' actions, and not those of any individual class member." *Ali v. Franklin Wireless Corp.*, 2023 WL 25718, at *5 (S.D. Cal. Jan. 3, 2023). Indeed, proof of these elements "can be made on a class-wide basis" as they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 685, 687 (7th Cir. 2010); *see also BofI Holding I*, 2021 WL 3742924, at *4-5 (falsity, materiality, scienter, and causation "require the same proof for any class member," especially in a case "where there is a single corrective disclosure"). Similarly, there are no individualized issues of reliance because Lead Plaintiff relies on the class-wide presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), based on the contention that the market for ImmunityBio securities was efficient at all relevant times (FAC ¶¶ 196-97), which Defendants do not oppose for purposes of Settlement. Finally, while damages may differ among class members, the proper amount of class-wide damages has been negotiated for purposes of Settlement. In any case, damages can be calculated on a class-wide basis using an event study, which is accepted as "the standard method for calculating damages in virtually every Section 10(b) class action." *BofI Holding I*, 2021 WL 3742924, at *7 (citation omitted). This model, therefore, "does not pose a significant obstacle to class certification." *Id.*; *see also In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017) (using an event study "is widely accepted for calculating damages of a class of stockholders" on a class-wide basis); *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *15 (C.D. Cal. May 11, 2017) (similar).

Certification of a settlement class would provide significant efficiencies compared to any alternative method of adjudication. Indeed, it is accepted that, for settlement purposes, "a class settlement is superior to other available methods for a fair resolution of the controversy because the class mechanism will reduce litigation costs and promote

greater efficiency." *Mandalevy I*, 2022 WL 1556160, at *5.[4]

In light of the foregoing, all requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and the Court should find that it will likely be able to certify the Settlement Class for purposes of the Settlement.

### B.    The Court Should Appoint Co-Lead Counsel as Class Counsel

A court that certifies a class "must" also appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1).  The Rule directs the Court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Since they were appointed Co-Lead Counsel in September 2023 (ECF No. 31), Pomerantz and Holzer have devoted substantial time, effort, and resources to identifying, investigating, litigating, and negotiating an outstanding settlement in this matter.   Pomerantz and Holzer were able to achieve such an extraordinary result at this stage of litigation because they both have extensive experience prosecuting class actions under the federal securities laws throughout the country, including in this judicial district.  *See* Ex. 2 (Pomerantz firm résumé), Ex. 4 (Holzer firm résumé).  Indeed, both regularly serve as class counsel or co-counsel in like matters. *See, e.g.*, *Kendall*, 2022 WL 188354, at *5 (Pomerantz and Holzer "have significant experience in litigating securities fraud cases, including class actions," and appointing both as class counsel under Rule 23(g)); *Enriquez v. Nabriva Therapeutics, plc,*, No. 19-cv-4183 (S.D.N.Y. May 14, 2021) (Ex. 3) (granting final approval of settlement and finding Pomerantz and Holzer adequately

---

[4]    Indeed, courts nationwide have certified class actions for settlement purposes even where certification was denied or likely would have been denied for litigation purposes. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of settlement class that included a group of investors who were excluded from the litigation class on grounds of "predominance"); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying settlement class despite having previously ruled that predominance requirement was not met).

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

represented the class); *see also Mandalevy II*, 2022 WL 4474263, at \*5 (finding that Pomerantz has "experienced securities litigators who have litigated numerous securities class actions . . . throughout the country"), *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*5 (C.D. Cal. Oct. 10, 2019) (finding that Holzer "has significant experience in securities class action lawsuits" and "vigorously pursued Plaintiff's claims"). The outcomes they have achieved in the Action to date, and the quality of their submissions, are a testament to their legal prowess in cases of this nature. Therefore, Lead Plaintiff respectfully requests that the Court appoint Pomerantz and Holzer to serve as Class Counsel.

## VI.    THE METHOD AND CONTENT OF THE NOTICE PROGRAM

For a class certified under Rule 23(b)(3), the court must direct "the best notice that is practicable under the circumstances, including individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must state in plain language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment. *Id.* The PSLRA also requires that the notice contain: (i) a statement of the recovery; (ii) a statement of the potential outcome of the case; (iii) a statement of attorneys' fees and costs; (iv) identification of the lawyers; (v) reasons for settlement; (vi) other information the court requires; and (vii) a cover page summarizing that information. *See* 15 U.S.C. § 78u-4(a)(7). Beyond these requirements, the Ninth Circuit has held that a class action settlement notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). The proposed notice program for the Settlement follows standard for and satisfies all such requirements.

### A.    The Proposed Method of Notice Is Reasonable Under the Circumstances

What constitutes the "best notice that is practicable under the circumstances" is measured by a standard of "reasonableness." *Low v. Trump Univ., LLC*, 881 F.3d 1111,

1117 (9th Cir. 2018). The type of notice that may be best "depends upon the information available to the parties about that person." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807, at *1 (S.D. Cal. Feb. 5, 2019) (Curiel, J.) (citation omitted). "[I]f the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Id.*; *see also Vataj*, 2021 WL 1550478, at *9 (same) (citation omitted). Recent amendments to Rule 23(c)(2) clarify that the "best notice" practicable under the circumstances may include "electronic means, or other appropriate means," depending on the type of class and its composition. Fed. R. Civ. P. 23(c)(2), committee note (2018 amendment).

Lead Plaintiff proposes giving notice of the Settlement to potential Settlement Class members by: (1) direct first-class mail to all Settlement Class Members who can reasonably be identified and located; and (2) publication in sources potential Settlement Class members are reasonably expected to read. Both forms of Notice will direct potential Settlement Class members to a Settlement-specific website, where they can download copies of all case-related Settlement documents, including the Stipulation, and submit claims online. *See* Stipulation Exs. B-1, B-2, C. Courts routinely find that these methods of notice satisfy the requirements of Rule 23, the PSLRA, and due process in securities class actions, where the Parties lack access to a complete list of investors who purchased shares during the Class Period. *See, e.g.*, *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Fleming* 2021 WL 5447008 at *12; *Khoja v. Orexigen Terapeutics, Inc.*, 2021 WL 1579251, at *9 (S.D. Cal. Apr. 22, 2021); *Vataj*, 2021 WL 1550478, at *11-12.

Guided by recent Rule 23(c) amendments, which permit more cost-efficient notice including "electronic means, or other appropriate means," Lead Plaintiff has given the Court the option of approving distribution by mail of either a full, long-form notice (Stipulation Exhibit B-1) (at a far greater cost) or a shorter, more cost-effective version (Stipulation Exhibit B-2) instructing Settlement Class members how to access the long-form notice, the Stipulation, and its other Exhibits electronically on the Settlement website.

In recent years, Co-Lead Counsel has found that federal courts appreciate being offered these two options, and when presented with them, generally choose the short-form version. *See, e.g.*, *Baron*, 2024 WL 3504234, at *16 (authorizing mailing of a "postcard notice" to all known class members that directs them to website for more complete documentation); *Kendall*, 2022 WL 188364, at *7 (authorizing "short-form notice" that refers to settlement website); *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 6051671, at *2 (S.D. Cal. Dec. 21, 2021) (Curiel, J.) (authorizing use of "short-form" notice to class members); *In re KaloBios Pharms., Inc. Sec. Litig.*, 2017 WL 574444, at *3 (N.D. Cal. Jan. 20, 2017) (similar).

### B.    The Form of Notice Adequately Informs Class Members of Their Rights

The proposed long-form Notice is attached to the Stipulation as Exhibit B-1. The Notice describes in plain English the salient terms of the Settlement, the rights of each Settlement Class member, and other material information, including, among other things: the definition of the Settlement Class; the Settlement Amount; the relief to the Settlement Class and the releases to Defendants and the other Released Defendant Parties; the maximum fee and expense award that may be sought; the procedures and deadlines for submitting objections to the Settlement or seeking exclusion from the Settlement Class; and the date and place of the Settlement Hearing. *See* Stipulation Ex. B-1. The long-form Notice also meets the requirements of the PSLRA by including, among other things: a cover page summarizing the information in the Notice, including each Settlement Class member's rights; a statement of the potential recovery; a statement on the potential outcome of the case, including those on which the Parties disagree; information on how to contact the Claims Administrator and/or counsel for the Parties; and a discussion of the reasons for the Settlement. *Id.*

Thus, the long-form Notice provides all the information required by due process, Rule 23, and the PSLRA. The Court should approve the proposed form of Notice and direct that it be given the Settlement Class members as proposed by the Parties.

## VII.   PROPOSED SCHEDULE

Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Mailing of long-form Notice (Ex. B-2) and or short-form Notice (Ex. B-1) | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order (Preliminary Approval Order ¶ 5(b)) |
| Publication of Publication Notice | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order (*Id.* ¶ 5(c)) |
| Deadline to submit a Proof of Claim | No later than ninety (90) days after the entry of the Preliminary Approval Order (*Id.* at ¶ 10) |
| Settlement Hearing | At least ninety (90) days after the entry of the Preliminary Approval Order |
| Deadline to file papers for final approval of the Settlement, the Plan of Allocation and the Fee and Expense Application | Thirty (30) calendar days before the Settlement Hearing (*Id.* ¶ 18) |
| Deadline to submit a request for exclusion | No later than twenty-one (21) calendar days before the Settlement Hearing (*Id.* ¶ 13) |
| Deadline to file objections | No later than twenty-one (21) calendar days before the Settlement Hearing (*Id.* ¶ 14) |
| Deadline to file reply papers in support of the Settlement, the Plan of Allocation and the Fee and Expense Application | Fourteen (14) calendar days prior to the Final Settlement Hearing (*Id.* ¶ 18) |

## VIII.   CONCLUSION

In light of the foregoing, Lead Plaintiff respectfully requests that the Court enter an Order, in substantially the form of the proposed Preliminary Approval Order that is submitted herewith as Stipulation Exhibit A:  (1) preliminarily approving the Settlement; (2) provisionally certifying the Settlement Class and appointing Lead Plaintiff as Class Representative and Co-Lead Counsel as Class Counsel for the Settlement Class; (3) directing that notice be given to the Settlement Class members; and (4) setting a date for the Settlement Hearing and related deadlines.

Dated: January 28, 2025

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Justin D. D'Aloia*
Jeremy A. Lieberman (*pro hac vice*) (NY Bar # 4161352)
Justin D. D'Aloia (*pro hac vice*) (NY Bar # 4935979)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
jdaloia@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California  90024
Telephone:  (310) 405-7190
Facsimile:  (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff and Co-Lead Counsel for the Proposed Settlement Class*

**HOLZER & HOLZER, LLC**
Corey D. Holzer (*pro hac vice*)
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone:  (770) 392-0090
Facsimile:  (770) 392-0029
cholzer@holzerlaw.com

*Counsel for Lead Plaintiff and Co-Lead Counsel for the Proposed Settlement Class*

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT