UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SECURITIES LITIGATION. | Case No.:  3:23-CV-01216-GPC-VET |
| | **ORDER:** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **(1) PROVISIONALLY APPROVING CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS;** |
| | **(2) APPOINTING CLASS COUNSEL;** |
| | **(3) CONDITIONALLY APPROVING THE PROPOSED NOTICE FORM AND PROOF OF CLAIM FORM;** |
| | **(4) APPROVING LEAD PLAINTIFF'S PLAN OF ALLOCATION;** |
| | **(5) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | **[ECF No. 80]** |

/ /

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 80 ("Motion for Preliminary Approval" or "Mot."). The Motion is unopposed.  *See* ECF No. 80 at 1. On March 7, 2025, the Court held a hearing on this matter. ECF No. 87. For the reasons set forth below, the Court provisionally approves certification of the proposed Settlement Class for the limited purposes of settlement; conditionally approves the Proposed Notice Form and the Proof of Claim Form; approves the Plan of Allocation detailed by Co-Lead Counsel in their moving papers; and **GRANTS** preliminary approval of Parties' settlement of this class action.

## I.    BACKGROUND

### A. Procedural History

On June 30, 2023, Zachary Salzman initiated this Action by filing a securities class action complaint against Defendants in this Court. ECF. No. 1. On August 29, 2023, Patel filed a motion for appointment as Lead Plaintiff. ECF No. 18. On September 27, 2023, the Court appointed Patel as Lead Plaintiff and appointed Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer") as Co-Lead Counsel pursuant to the PSLRA. ECF No. 31.

On November 17, 2023, Lead Plaintiff filed the operative First Amended Complaint ("FAC") asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), and claims against

Defendants Richard Adcock, David C. Sachs, and Patrick Soon-Shiong under Section 20(a) of the Exchange Act. ECF No. 37 at 1.  The FAC alleged that Defendants unlawfully inflated ImmunityBio's stock price during March 10, 2021 and May 10, 2023, both dates inclusive (the "Settlement Class Period"), by misleading investors about ImmunityBio's manufacturing capabilities, compliance with required current good manufacturing practices, and the approval prospects of ImmunityBio's lead product candidate, Anktiva. *Id* at 1-2. The FAC alleged that the misleading nature of Defendants' statements was revealed on May 11, 2023, when the U.S. Food and Drug Administration (the "FDA") rejected ImmunityBio's license application for Anktiva because of deficient manufacturing practices, which precipitated a drop in the company's stock price and in turn caused injury to investors. *See id.* at 57-58.

On January 8, 2024, Defendants filed a motion to dismiss ("MTD") the FAC for failure to state a claim under the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. ECF No. 50. On June 20, 2024, the Court entered an Order granting in part and denying in part Defendants' MTD, ECF No. 63. In the Order, the Court rejected Defendants' challenge as to 51 of the 62 misstatements pled in the FAC and granted Lead Plaintiff leave to amend. ECF No. 63. On July 16, 2024, Lead Plaintiff filed a notice of his decision to proceed on the FAC. ECF No. 64. On August 29, 2024, Defendants answered the FAC, in which they denied, in whole or part, a significant amount of the FAC's allegations and raised a variety of affirmative defenses. ECF No. 68.

**B. Discovery Process**

3:17-CV-667-GPC-MSB

To facilitate discovery, the Parties negotiated and filed a Joint Motion for entry of a stipulated protective order to govern the exchange of confidential information, ECF No. 71, and a Joint Motion for the entry of a stipulated order to govern the collection, processing, and production of electronically stored information (ESI), ECF No. 78. The Court entered both. ECF Nos. 73 ("Protective Order"), 79.

Since the entry of the Protective Order, the Parties have engaged in extensive discovery. Motion for Preliminary Approval at 3. Lead Plaintiff interposed requests for production covering a number of areas, including the manufacturing process for Anktiva, compliance with good manufacturing practices, and interactions with the FDA during the Settlement Class Period. *Id.* Lead Plaintiff also served several subpoenas on third-parties. *Id.* Meanwhile, Defendants served requests for production and written interrogatories on Lead Plaintiff. *Id.* Given the wide array of discovery topics sought by the Parties, as well as the potentially voluminous documentation responsive to the requests, the Parties held numerous meet-and-confers by letter and phone to resolve disagreements. *Id.* Lead Plaintiff ultimately obtained over 10,000 pages of documents from Defendants and third-parties, and produced various records and several written responses to the discovery requests served on him. *Id.*

The Parties attended an Early Neutral Evaluation ("ENE") conference with the oversight of Magistrate Judge Valerie E. Torres on October 28, 2024, but were unable to reach an agreement. ECF No. 76. Following the ENE, the Parties continued with discovery but expressed interest in the possibility of a mediation. Mot. at 4.

3:17-CV-667-GPC-MSB

### C. Negotiation

On December 4, 2024, Co-Lead Counsel and counsel for Defendants participated in a full-day mediation before Jed Melnick, Esq. of JAMS. According to the Motion for Preliminary Approval, the Parties engaged in "intensive negotiations, which included multiple counter-offers, narrowing the difference in the Parties' respective settlement positions, but ultimately did not end the mediation with an agreement in place." Mot. at 4.

In the days following the meditation, negotiations continued with the aid of Mr. Melnick. On December 13, 2024, Mr. Melnick made a mediator's proposal to fully and finally resolve the Action for $10.5 million, which each Party accepted that same day. After subsequent negotiations, the Parties memorialized the agreement in a Confidential Term Sheet ("Term Sheet") the following week. Co-Lead Counsel and defense counsel continued to correspond and exchange edits until the finalization of the Stipulation and its accompanying Exhibits on January 28, 2025.

These negotiations were therefore conducted "at arm's-length over the course of several months through multiple channels, including emails, the ENE, phone calls, and an in-person mediation with an experienced and disinterested neutral, during which each side pressed for the most favorable outcome possible." Mot. at 4-5.

### D. Settlement Terms

3:17-CV-667-GPC-MSB

Defendants and Lead Plaintiff, individually and on behalf of all Settlement Class Members, agreed to settle and release the asserted claims.  ECF No. 80, Ex. 1 ("Stipulation of Settlement" or "Stipulation") at 1.

The Settlement Agreement requires $10.5 million in cash to be paid into an escrow account for the benefit of the Settlement Class. Stipulation ¶ 1.34, 2.0. This amount, plus accrued interest, constitute the Settlement Fund. After Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses, any awards to the Lead Plaintiff, and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount (the Net Settlement Fund) shall be distributed pursuant to the Plan of Allocation to claimants who are entitled to a distribution. *Id.* ¶ 6.2. Co-Lead Counsel estimate a gross recovery of $0.09 per damaged share for each Settlement Class Member (accounting for the deduction of fees, expenses, and costs). ECF No. 80, Exhibit B-1 (long-form Notice), at 2.

The Settlement Agreement provides that, following the Court's entry of Judgment in this Action and the effective date of the Settlement, a Settlement Class Member must submit a Proof of Claim and Release Form in order to receive payment. ECF No. 80, Exhibit B-1, at 3. Payment pursuant to the Settlement shall be deemed final and conclusive against all Claimants. Stipulation ¶ 6.6.  Settlement Class Members can exclude themselves by submitting a request for exclusion. ECF No. 80, Exhibit B-1, at 3. Settlement Class Members who do not take action will not receive payment and will permanently forfeit their right to recover on any claim they might have. *Id.*

The Settlement Agreement releases and settles Class Members'

> "claims, demands, rights, liabilities, and causes of action of every nature and description, whether known or unknown, contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, whether direct, representative, class, or individual in nature, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law, that were asserted in the Action or could have been asserted by Lead Plaintiff or any other member of the Settlement Class (and their related parties as to be defined) in the Action or any other court or forum, that arise out of, are based upon, and relate to: (a) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action, or (b) the purchase or other acquisition of ImmunityBio stock during the Class Period."

Stipulation ¶ 1.15. With respect to the released claims, Settlement Class Members also waive rights under California Civil Code § 1542. This release does not include claims to enforce the settlement, claims of any Settlement Class Member who has requested and received exclusion from the Class, or derivative claims asserted by shareholders on behalf of ImmunityBio in a related shareholder derivative lawsuit, captioned *Van Luven v. Soon-Shiong, et al.*, No. 24-cv-2014 (S.D. Cal.). *Id.*

Settlement Class Members would be given Notice of the Settlement Agreement within 21 days of entry of a Preliminary Approval Order. Lead Plaintiff proposes to mail either a long-form Notice (Exhibit B-1) or a short-form Notice (Exhibit B-2) to Settlement Class Members who would be identified through reasonable effort, including from ImmunityBio's stock transfer records. A Publication Notice in the form of Exhibit C would also be published on a national newswire. The Publication Notice, and if approved by the Court the short-form Notice, would direct Settlement Class Members to a website

where they can download copies of all Settlement documents, including the Stipulation and the long-form Notice, and submit claims online. ECF No. 80, Exhibit B-2, C. As noted, any Settlement Class Member who wishes to receive a payment from the Net Settlement Fund must establish that they are entitled to such a distribution by submitting a Proof of Claim and Release Form substantially in the form of Exhibit D, along with supporting documents described therein. *Id.*, Exhibit D.

After a competitive bidding process, Co-Lead Counsel selected Epiq Class Action & Claims Solutions, Inc. to serve as Claims Administrator for the Settlement. Epiq will mail and publish Notice in the form approved by the Court, maintain a Settlement website with documents and information, and oversee the submission and processing of Claims. Mot. at 6.

The Parties have the right to terminate the Settlement in the event that it does not become final. Stipulation ¶ 2.11-2.12. ImmunityBio also has the right to terminate the Settlement if requests for exclusion exceed an agreed-upon threshold set forth in a confidential Supplemental Agreement between the Parties. *Id.* ¶ 2.13. If the Settlement is terminated, Parties will revert to their respective positions in the litigation before the agreement to enter into a Settlement. *Id.* ¶ 2.14.

## II.    DISCUSSION

### A. Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However,

when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  To that end, a reviewing court must engage in two-step process. First, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Second, after providing the class with notice of the proposed settlement, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate." Fed. R. Civ. 23(e)(2).

At the preliminary approval stage, the reviewing court is engaged in the first inquiry and considers whether it is likely to approve of the proposal and certify the class. Fed. R. Civ. P. 23(e)(1)(B).

### B. Provisional Class Certification under Rule 23

Federal Rule of Civil Procedure ("Rule") 23 establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), common questions must predominate over individual questions, Fed. R. Civ. P. 23(b)(3), and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* The Court does not finally certify a class when granting preliminary approval of a settlement for the purpose of directing notice to class members, but rather

9

determines whether "the court will *likely* be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).

In the context of securities litigation, class actions are "particularly well-suited" because "geographically dispersed shareholders with relatively small holdings" may not otherwise pursue their claims. *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005). As such, it is "well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) (citation omitted).

Lead Plaintiff seeks certification of a Settlement Class consisting of all persons who purchased or acquired ImmunityBio securities from March 10, 2021, to May 10, 2023, inclusive, and were damaged thereby, except those specifically excluded in ¶ 1.35 of the Stipulation. Mot. at 15.

For the following reasons, the Court agrees with the Plaintiff that the Court will likely be able to certify the class for purposes of settlement under the requirements of Rule 23.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190

F.R.D. 649, 654 (C.D. Cal. 2000).  The exact size of the class does not need to be known as long as general knowledge and common sense support that the class is sufficiently large.  *See Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 56, 569 (C.D. Cal 2012).  Indeed, "[w]here several million shares of stock were purchased during the class period, courts regularly find that class members are sufficiently numerous to render joinder impracticable." *In re Silver Wheaton Corp. Sec. Litig*., 2017 WL 20139171, at *6 (C.D. Cal. May 11, 2017).  Here, there were over 400 million shares of ImmunityBio common stock outstanding during the Class Period, and those shares actively traded on the NASDAQ, with average daily trading volume of 1.9 million shares. Mot. at 16. Because of this, the Court can infer that the number of shareholders and other potential class members would be far too numerous to join. The numerosity requirement is therefore satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Not every question of law or fact must be common to the class. *Abdullah v. U.S. Sec. Assoc., Inc*., 731 F.3d 952, 957 (Ninth Cir. 2013).

3:17-CV-667-GPC-MSB

Here, Settlement Class Members are those individuals who purchased or otherwise acquired ImmunityBio securities during the relevant period of time. There are clear questions that are common to all class members, including: (1) whether statements Defendants made to the investing public during the Class Period were false or misleading; (2) whether Defendants made such statements with scienter; (3) whether such statements artificially inflated the price of ImmunityBio securities during the Class Period; (4) whether the price of ImmunityBio securities declined in response to disclosures that revealed the truth; and (5) the extent of damages suffered by the Settlement Class and the appropriate measure. Mot. at 17. It is plain that the proposed class meets Rule 23(a)(2)'s commonality requirement. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation, no matter their number.") (internal quotation marks and citation omitted). The Court therefore finds that the proposed class meets the commonality requirement.

### 3. Typicality

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members,"

3:17-CV-667-GPC-MSB

though they "need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Dipak Patel was appointed as Lead Plaintiff. ECF No. 31. As described in his motion for appointment as Lead Plaintiff, Mr. Patel alleged he lost more than $280,000 as a result of the alleged fraud during the Class Period. ECF No. 18 at 1. Mr. Patel's claims are typical of the putative class because he, "like other members of the Class, purchased ImmunityBio securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosures of those misrepresentations and/or omissions." *Id.* at 9. Thus, Mr. Patel's claims for damages are based upon the same legal theory, events, and course of conduct as the Class's claims. *See* ECF No. 37, Am. Compl. ¶¶ 198, 212, 215.

### 4. Adequacy

Under Rule 23(a)(4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

It does not appear that Plaintiff has any interests in conflict with the Settlement Class. Dipak Patel was previously appointed as Lead Plaintiff because he had the largest financial losses. ECF No. 31. His interests are aligned with those of the other class members. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019). Lead Plaintiff has demonstrated his commitment to this Action through his active involvement in retention of counsel, discovery, and mediation. Mot. at 19. In addition, Plaintiff's Co-Lead Counsel, attorneys Pomerantz LLP and attorneys Holzer & Holzer, are experienced securities litigators who have litigated numerous securities class actions on behalf of stakeholders in district courts throughout the country. *See* ECF No. 80, Firm Resumes (Exs. 2, 4). There is no indication that Plaintiff or his counsel will not continue to prosecute this lawsuit vigorously. The Court therefore concludes the adequacy requirement is met for the purposes of conditional certification.

### 5. Predominance and superiority

Finally, to certify a class under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Superiority asks if class adjudication is "the most efficient and effective means of

3:17-CV-667-GPC-MSB

1  resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

2  1175 (9th Cir. 2010).

3         Whether the questions addressable with common proof predominate over those

4  that require individual proof depends on "the elements of the underlying cause of action."

5  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As a fraud-on-

6  the-market case, "the elements of falsity, materiality, scienter, and loss causation present

7  questions common to the class because they all depend on Defendants' actions, and not

8  those of any individual class member." *Ali v. Franklin Wireless Corp.*, 2023 WL 25718,

9  at *5 (S.D. Cal. Jan. 3, 2023). Indeed, proof of these elements "can be made on a class-

10 wide basis" as they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679,

11 685, 687 (7th Cir. 2010). Similarly, there are no individualized issues of reliance because

12 Lead Plaintiff relies on the class-wide presumption of reliance established in *Basic Inc. v.*

13 *Levinson*, 485 U.S. 224 (1988), based on the contention that the market for ImmunityBio

14 securities was efficient at all relevant times, *see* FAC ¶¶ 196-97, which Defendants do

15 not oppose for purposes of Settlement. Finally, while damages may differ among class

16 members, the proper amount of class-wide damages has been negotiated for purposes of

17 Settlement.

18        Certification of a settlement class would provide significant efficiencies compared

19 to any alternative method of adjudication. In a class action settlement, the Court need not

20 address whether the case, if tried, would present issues of manageability under Rule

21 23(b)(3)(D). *Amchem*, 521 U.S. at 620.

3:17-CV-667-GPC-MSB

Based on the foregoing reasons, Rule 23 is satisfied, and the Court finds that it will likely be able to certify the Settlement Class for purposes of the Settlement.

### C. Appointment of Class Counsel

When a court certifies as class, it must also appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1). The Rule directs the Court to consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

Since they were appointed Co-Lead Counsel in September 2023, ECF No. 31, Pomerantz and Holzer have devoted substantial time, effort, and resources to identifying, investigating, litigating, and negotiating a settlement. Pomerantz and Holzer have extensive experience prosecuting class actions under the federal securities laws. *See* ECF No. 80, Ex. 2 (Pomerantz firm résumé), Ex. 4 (Holzer firm résumé). Both firms regularly serve as class counsel or co-counsel in like matters. *See, e.g.*, *Kendall v. Odonate Therapeutics, Inc*., 2022 WL 188364, at *5 (S.D. Cal. Jan. 18, 2022) (Pomerantz and Holzer "have significant experience in litigating securities fraud cases, including class actions," and appointing both as class counsel under Rule 23(g)); *Jiangchen v. Rentech, Inc*., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding that Holzer "has significant experience in securities class action lawsuits" and "vigorously pursued

3:17-CV-667-GPC-MSB

Plaintiff's claims"). Accordingly, the Court appoints Pomerantz and Holzer as Class Counsel.

### D. Preliminary Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement. Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). At the preliminary approval stage, the question is whether approval under the "fair, reasonable, and adequate" standard is likely. Fed. R. Civ. P. 23(e)(1)(B). Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule

3:17-CV-667-GPC-MSB

23(e) provides that a court may approve a proposed class action settlement after

considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first and second factors are viewed as "procedural" in

nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ.

P. 23(e)(2), advisory committee notes (2018 amendment).

For the reasons that follow, the Court finds that the Settlement Agreement reached

by the Parties is likely fair, reasonable, and adequate, and GRANTS preliminary approval

of the Class Action Settlement.

### 1. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives

and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g),

respectively." 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed.

2020); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019)

(noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

3:17-CV-667-GPC-MSB

The Court found above that Lead Plaintiff and his counsel adequately represent the class for the purposes of conditional class certification. For the same reasons, the Court finds that the adequacy of representation requirement under Rule 23(e)(2)(A) is likely met.

### 2. Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).

Here, the proposed Settlement arises out of an arm's-length negotiation process that occurred between Lead Plaintiff and the Defendants following initial discovery. These negotiations took place over several months on numerous occasions, including at the ENE in the presence of Magistrate Judge Torres, telephonically, in writing, and in-person at mediation before the presence of an experienced mediator, Jed Melnick, Esq. The Settlement was ultimately reached after mediation as a result of his proposal, evincing that the settlement was reached via non-collusive means. *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-

3:17-CV-667-GPC-MSB

collusive.") (quoting *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)). After accepting the mediator's proposal, the Parties negotiated once more to finalize the Confidential Term Sheet, and thereafter, negotiated for another month to arrive at the terms of the Stipulation and its Exhibits. These lengthy arms-length negotiations support the conclusion that the Settlement was achieved in the absence of collusion. *See Scott v. ZST Digital Networks, Inc.*, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations… were conducted at arm's-length by counsel over the span of several months, were serious, informed and noncollusive" especially when "[t]he parties were represented by experienced counsel who bargained in an adversarial manner").

### 3. Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement.  *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

3:17-CV-667-GPC-MSB

1

**a. Costs, risks, and delay of trial and appeal**

2

3      "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery

4    balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484

5    F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). While a settlement need not compensate class

6    members for the maximum value of their claims, there is no fixed percentage of the

7    potential recovery that renders a settlement amount reasonable. *See In re Baan Co. Sec.*

8    *Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *In re Newbridge Networks Sec. Litig.*,

9    1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998)).  The Court therefore must examine

10    whether the Settlement Agreement will likely adequately compensate the class given the

11
12    costs, risks, and delay of trial and appeal based on the facts of this case.

13

14      Here, the Parties have agreed to settle this case for an amount of $10,500,000.

15    Stipulation ¶ 1.34. Because Lead Plaintiff's expert estimates that maximum recoverable

16    damages would amount to approximately $130.6 million, the Settlement Amount

17    represents over 8% of estimated damages. Mot. at 10. Any deductions for attorney's fees,

18
19    and costs of notice are to be deducted from the Settlement Amount, only by the Court's

20    approval upon motion by Lead Plaintiff. As a percentage of estimated damages, the

21    Settlement Amount is well above the median percentage of the recovery level for investor

22
23    losses in securities class action settlements. *See Farrar v. Workhorse Grp., Inc.*, 2023

24    WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that 3% is

25    within the range of average recovery percentages approved in securities class action

26
27    settlement); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021)

28

(settlement for 2% of damages is "consistent with the typical recovery in securities class action[s]"). Co-Lead Counsel estimate a gross recovery of $0.09 per damaged share for each Settlement Class Member (accounting for the deduction of fees, expenses, and costs). ECF No. 80, Exhibit B-1 (long-form Notice), at 2.

Based on the risks of litigation, Plaintiff contends that the settlement provides adequate relief to the proposed class, especially considering the fact that Lead Plaintiff "would need to secure certification of a liability class and prove – and, thus, defeat Defendants' counterargument as to – falsity, scienter, loss causation, and damages." Mot. at 11. According to Plaintiff, Defendants were prepared to "mount a robust opposition" to class certification, which would lead to a higher risk of maintaining a class. *Id.* Additionally, "a significant amount of key evidence is in the possession of third parties," like ImmunityBio's contract manufacturing organizations, which complicates discovery. *See Hester v. Vision Airlines, Inc.*, 2014 WL 3547643, at *12 (D. Nev. July 17, 2014) (identifying the "difficulty in obtaining documents from third-parties as a "significant challenge[]"). The evidence would then need to be reviewed by "subject-matter experts given the highly technical nature of biopharmaceutical manufacturing." Mot. at 11. Relatedly, the elements of loss causation and damages would certainly invite expert testimony. Since Lead Plaintiff bears the burden of proof, Defendants could win at summary judgment or trial through a Daubert motion and there would be an "unpredictable battle of the experts." *Baker v. Seaworld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. Jul. 24, 2020) (citation omitted).

3:17-CV-667-GPC-MSB

In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays, especially since "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker*, 2020 WL 4260712, at *7 (citation omitted). And Defendants here have made it clear that they will "vigorously contest[]" every stage of litigation, possibly engaging in post-trial motion practice even if Plaintiff prevailed at trial. Mot. at 12.

As such, the Settlement Amount presents a substantial relief to the Settlement Class. Although the Settlement is only a portion of Defendant's maximum potential exposure according to Plaintiff's calculations, the relief appropriately accounts for the not-insubstantial risk that Plaintiff and the class would recover nothing on some or all claims. Courts must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). The Court here concludes that the costs and risks of proceeding with litigation likely renders the agreed-upon settlement amount to be adequate relief for the class as a whole. *See, e.g., Baron*, 2024 WL 3504234, at *8 (settlement for 2% of total damages supports preliminary approval); *Hunt v. Bloom Energy Corp*., 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (same for 5.2% of damages); *Hardy v. Embark Tech., Inc*., 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023) (same for 1.1% of damages); *In re Lyft, Inc. Sec. Litig*.,

2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (same for 3.2% of damages);

*Kendall*, 2022 WL 188364, at *6 (same for 3.49% to 3.84% of damages).

### b. Effectiveness of proposed method of distributing relief

Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." This analysis requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).

Here, the method for processing claims and distributing relief to eligible Claimants is clear, well-established, and effective. As noted, potential Settlement Class Members will be ascertained from transfer records maintained by Defendants. In addition, Lead Plaintiff will publish notice in a national newswire about the Settlement, directing potential claimants to a website with more complete documentation on the Settlement. The Claims Administrator would mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort. Claimants will be required to submit records establishing all relevant transactions in ImmunityBio securities. Mot. at 13. Claim Forms that do not provide adequate documentation may be rejected, ECF No. 80, Exhibit D (E97), but claimants will have an opportunity to cure any deficiencies or request that the Court review a denied claim. Mot. at 13. The Net Settlement Fund will then be distributed to Authorized Claimants on a pro

3:17-CV-667-GPC-MSB

rata basis in accordance with the Plan of Allocation based on the amount of each claimant's Recognized Losses. ECF No. 80, Exhibit B-1, at 12. The Class Administrator will distribute each Authorized Claimant's allocation via check. Stipulation ¶ 6.0.

These procedures are regularly held to be "effective" in securities class actions. *See Baron*, 2024 WL 3504234, at *9 (finding nearly identical procedures effective for preliminary approval in securities class action); *Hefler v. Wells Fargo & Co*., 2018 WL 6619983, at *2, 7 (N.D. Cal. Dec. 18, 2018) (same).

### c. Attorneys' fees and administrator fees

#### i. Terms of proposed award of attorneys' fees

Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

The Notice informs Settlement Class members that, as compensation for services rendered on a contingent basis on their behalf, Lead Counsel intends to seek an attorneys' fee award in an amount not to exceed 33 ⅓% of the Settlement Fund, as well as reimbursement of up to $200,000 in out-of-pocket litigation expenses, plus interest earned on such fees and expenses. *See* ECF No. 80, Exs. B-1 at 9, B-2 at 1. The Notice also informs the Settlement Class members that Lead Counsel intends to ask the Court to

grant Lead Plaintiff an award not to exceed $15,000. *Id.* Thus, the estimated average cost per affected share of ImmunityBio stock, if the Court approves Lead Counsel's fee and expense application, is $0.09 per damaged share. *Id.*

While the Court acknowledges that attorneys' fees awards in the amount of 33 ⅓% of the total settlement value have been approved in the past by district courts in this Circuit, it is in the upper limit of what is considered typical. *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *7 (S.D. Cal. Dec. 18, 2019). "When applying the percentage-of-the-fund method, an attorneys' fee award of twenty-five percent is the 'benchmark' that district courts should award." *Id.* (citations omitted).

Ultimately, the Court need not determine at the preliminary approval stage whether it will ultimately approve an award in the range of the 33 ⅓% set out by Lead Plaintiff. The Court will closely scrutinize Class Counsel's request for an award of Class Counsel's attorneys' fees, costs, and expenses more closely upon filing of the application for reasonable attorneys' fees and incentive awards. Further, Class Counsel is directed to provide information about their fees request and their lodestar calculation in the motion for final approval of class action settlement. At this point, it is sufficient for the Court to conclude that the attorneys' fee provision in the Settlement Agreement is not so out of proportion with the relief provided to the class that it "calls into question the fairness of the proposed settlement." *Pokorny v. Quixtar Inc.*, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011). The award provision is also reasonable because of its language that Class Counsel may *apply* for an award *up to* 33 ⅓% of the Settlement Fund. In any event, the

Settlement Agreement is not conditioned on any particular award of attorneys' fees. Stipulation ¶¶ 7.0, 8.3.

Thus, for the purposes of preliminary approval, the attorneys' fees and expenses provision does not present a barrier to finding the Settlement Agreement fair, adequate and reasonable. *See Kendall*, 2022 WL 188364, at *7 (fee "not to exceed 33 ⅓%" supports preliminary approval because it is "within the range of acceptable attorneys' fees").

## ii. <u>Claim administration fees</u>

As detailed above, the proposed Notices provides information material to a class member's decision whether or not to accept, object to, or opt out of the Settlement Agreement between the Parties. However, from the Court's review, the proposed Notices do *not* include any information about any proposed payment to the Claims Administrator. Information on this is only found in the Stipulation, which states that "the Escrow Agent shall establish a Notice and Claims Administration Account and may deposit into it up to three hundred thousand dollars ($300,000.00) from the Settlement Account." Stipulation ¶ 2.6. The Parties have agreed to settle this case for $10.5 million, and the disbursement to class members will depend on the deduction of fees and costs. This provision for Claim Administration fees—which does not appear in the proposed Notices—could reduce the entire settlement amount by almost 3% and could reduce each class member's recovery per share.

Given these circumstances, the Court directs that the proposed Notices, ECF No. 80, Exhibits B-1 and B-2, must inform class members of the potential maximum amount of administrator fees. Further, at this time, the Court is not prepared to approve the proposed language granting the Escrow Agent with the discretion to authorize disbursement, without further approval from the Court, of up to $300,000 for reasonable costs in notice and claims administration expenses. Stipulation ¶ 2.7. This Court will make the determination regarding the reasonableness of such fees at the final approval hearing.

### d.  Agreements made in connection with the proposal

Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties here have entered into a confidential Supplemental Agreement that establishes conditions under which ImmunityBio may terminate the Settlement if those totaling a certain amount ImmunityBio stock "opt out" of the Settlement. Stipulation ¶ 2.13. "[T]his type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *Baron*, 2024 WL 3504234 (citation omitted); *see Illumina*, 2019 WL 6894075, at *9 (similar). Its terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts" for themselves at the expense of other Settlement Class members. *Farrar*, 2023 WL 5505981, at *10 (citation omitted).

### 4. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

### a. Equity among class members

Here, under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Losses divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount of the Net Settlement Fund. Mot. at 14. The proposed Plan of Allocation details how Recognized Losses will be calculated by considering when claimants acquired shares, the amount of time they held the shares, and the relative amounts of

artificial inflation that affected the stock prices. ECF No. 80, Exhibit B-1, at 14-15. Each payment to an Authorized Claimant will therefore "reflect [their] proportionate share of the Net Settlement Fund." *Id.* at 15. If any Authorized Claimant's distribution amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant. *Id.* at 16. Any funds that remain after six months could be redistributed to Authorized Claimants who cashed their checks and who would receive at least $10.00 in re-distribution. *Id.*

The court finds that the proposed distribution method treats Class Members equally by taking into account the amount of shares held by class members, the time class members held these shares, and how price declines based on "corrective information" affected the price of shares. *See Vinh Ngueyn v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (finding a similar distribution method equitable). And while the proposed Plan of Allocation excludes any claimant whose distribution amounts calculates to less than $10.00, courts in this Circuit "regularly approve" of settlement agreements that include such provisions because this is "no significant indication of preferential treatment." *Baron*, 2024 WL 3504234, at *11 (citation omitted). Accordingly, the court finds that the method of distribution treats class members equitably relative to each other.

### b.  Equity between unnamed members and class representative

The Court also considers whether any proposed service payment or incentive award for a named or lead plaintiff is equitable. Additional payments to class

representatives or named plaintiffs, often referred to as incentive awards, generally do not render a settlement inequitable. *See Staton*, 327 F.3d at 977. Incentive awards are "fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Courts have refused to countenance settlements that provide for excessively high incentive awards or that give only *de minimis* relief to the rest of the class. *See id.* at 948, 978 (finding settlement inequitable where class representatives and other "active participants" were to receive up to $50,000 in incentive awards each and collectively receive more than half of the total monetary award despite representing less than 2% of the class).

In the present case, Lead Plaintiff plans to request a service award in an amount not to exceed $15,000—which, at most, represents 0.14% of the Settlement Amount—to compensate him for time spent pursuing the matter on behalf of the Class, including meeting with counsel, overseeing the litigation, and participating in discovery and settlement. Mot. at 15. Courts have approved of a service award of $15,000 or more for similar work done by a lead plaintiff. *See Raffin v. Medicredit, Inc.,* 2018 WL 8621204, at *7 (C.D. Cal. Nov. 30, 2018) (finding reasonable $15,000 award and collecting cases saying the same).

The Court ultimately will determine whether Lead Plaintiff is entitled to such an award and the reasonableness of the amount requested. Plaintiffs must provide sufficient

3:17-CV-667-GPC-MSB

evidence to allow the Court to evaluate their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation....'" *Stanton*, 327 F.3d at 977. The Court will consider the evidence presented at the final settlement fairness hearing and evaluate the reasonableness of the incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court concludes that the current service award provision should not bar preliminary approval of the Settlement Agreement.

### E. Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

The Rule requires that the notice "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B) (paragraph breaks omitted). "In addition, the PSLRA requires that notice include (1) '[t]he amount of the settlement [...] determined in the aggregate and on an average per share basis,' (2) 'the average amount of [the] potential damages per share,' (3) a statement of any fees or costs that counsel intends to seek from the settlement fund, (4) class counsel's contact information, and (5) '[a] brief statement explaining the reasons why the parties are proposing the settlement.'" *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *7 (citing 15 U.S.C. § 78u-4(a)(7)). Furthermore, the Ninth Circuit has held that a class action settlement notice must describe the "terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). The Court finds that the notice program for the Settlement satisfies all these requirements.

### 1. Proposed method

What constitutes the "best notice that is practicable under the circumstances" is measured by a standard of "reasonableness." *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018). The best type of notice "depends upon the information available to the parties about that person." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807, at *1 (S.D. Cal. Feb. 5, 2019) (citation omitted). "[I]f the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Id.* Recent amendments to Rule 23(c)(2) clarify that the "best notice" practicable under the

circumstances may include "electronic means, or other appropriate means," depending on the type of class and its composition. Fed. R. Civ. P. 23(c)(2), committee note (2018 amendment).

Lead Plaintiff proposes giving notice of the Settlement to potential Settlement Class members by: (1) direct first-class mail to all Settlement Class Members who can reasonably be identified and located; and (2) publication in sources that potential Settlement Class members are reasonably expected to read. Both forms of Notice will direct potential Settlement Class members to a Settlement-specific website, where they can download copies of all case-related Settlement documents, including the Stipulation, and submit claims online. *See* Stipulation Exs. B-1, B-2, C. Courts routinely find that these methods of notice satisfy the requirements of Rule 23, the PSLRA, and due process in securities class actions, where the Parties lack access to a complete list of investors who purchased shares during the Class Period. *See, e.g., In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Fleming*, 2021 WL 5447008 at *12; *Khoja v. Orexigen Terapeutics, Inc.*, 2021 WL 1579251, at *9 (S.D. Cal. Apr. 22, 2021); *Vataj*, 2021 WL 1550478, at *11- 12.

Under recent Rule 23(c) amendments, which permit more cost-efficient notice including "electronic means, or other appropriate means," the Court finds adequate the following notice program: distribution by mail and email[1] of a short-form notice

---

[1] Pursuant to the 2018 Amendment to the Federal Rules of Civil Procedure, Rule 23(c)(2)(B) states that "the court must direct to class members the best notice that is practicable," including through "electronic

3:17-CV-667-GPC-MSB

(Stipulation, Exhibit B-2) that directs Settlement Class members to a designated website that includes the long-form notice (Stipulation, Exhibit B-1), the Stipulation, and other Exhibits. As noted above, Settlement Class Members would be identified through reasonable effort, including from ImmunityBio's stock transfer records and would be given the short-form Notice of the Settlement Agreement within 21 days of entry of a Preliminary Approval Order. A Publication Notice in the form of Exhibit C would also be published on a national newswire and would direct Settlement Class Members to the settlement website. ECF No. 80, Exhibit C. The Court finds this to be a suitable method of notice.

### 2. Proposed form

The proposed long-form Notice is attached to the Stipulation as Exhibit B-1. The Notice describes in plain English the salient terms of the Settlement, the rights of each Settlement Class member, and other material information, including, among other things: the definition of the Settlement Class; the Settlement Amount; the relief to the Settlement Class and the releases to Defendants and the other Released Defendant Parties; the maximum fee and expense award that may be sought; the procedures and deadlines for submitting objections to the Settlement or seeking exclusion from the Settlement Class; and the date and place of the Settlement Hearing. *See* Stipulation, Ex. B-1. The long-form Notice also meets the requirements of the PSLRA by including, among other things: a

---

means." The Court finds that providing notice through email, in addition to mail, would constitute the best notice possible for this class.

cover page summarizing the information in the Notice, including each Settlement Class member's rights; a statement of the potential recovery; a statement on the potential outcome of the case, including those on which the Parties disagree; information on how to contact the Claims Administrator and/or counsel for the Parties; and a discussion of the reasons for the Settlement. *Id*. Thus, the long-form Notice provides all the information required by due process, Rule 23, and the PSLRA. The Court approves of the proposed form of Notice and directs it to be given to the Settlement Class members as proposed by the Parties.

## III.    CONCLUSION

For the reasons discussed in this Order, the Court:

1.      The Court has reviewed the Stipulation and hereby preliminarily approves the Settlement set forth therein, subject to further consideration at the Settlement Fairness Hearing.

2.      Pursuant to Fed. R. Civ. P. 23, the Court provisionally certifies, for purposes of the Settlement only, the following Settlement Class: all Persons, except those expressly excluded below, who purchased or otherwise acquired ImmunityBio securities during the Class Period of March 10, 2021 to May 10, 2023, both dates inclusive.  Excluded from the Class are: (i) all Defendants; (ii) members of the immediate families of the Defendants; (iii) the subsidiaries and affiliates of any Defendants; (iv) any person or entity who is a partner, executive officer, director or controlling person of any of the Defendants; (v) any entity in which any Defendant has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any such excluded party. Also excluded from the Settlement Class are any Settlement Class members who or which submit a valid request for exclusion from the Settlement Class that is accepted by the Court.

3.      Pursuant to Fed. R. Civ. P. 23, the Court provisionally appoints, for purposes

3:17-CV-667-GPC-MSB

of Settlement only, Lead Plaintiff as Class Representative of the Settlement Class and Co-Lead Counsel as Class Counsel for the Settlement Class.

4.    The "Settlement Fairness Hearing" shall be held before this Court on June 13, 2025 at 1:30 pm., at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California 92101, in Courtroom 2D, to determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; to determine whether a Judgment as provided in the Stipulation should be entered; to determine whether the proposed Plan of Allocation should be approved; to determine any amount of fees, costs and expenses that should be awarded to Co-Lead Counsel for their efforts in litigating the Action and any compensatory award that should be awarded to Lead Plaintiff for his service to the Settlement Class; to hear any objections by Settlement Class members to the Stipulation, Plan of Allocation, or any award of fees and expenses to Co-Lead Counsel or compensatory award to Lead Plaintiff; and to consider such other matters as the Court may deem appropriate.

5.    Pursuant to Fed. R. Civ. P. 23(c), the Court appoints for settlement purposes only the firm of Epiq Class Action & Claims Solutions, Inc. (the "Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims as more fully set forth below:

(a)    Within five (5) business days after the entry of this Order, ImmunityBio shall provide records of share ownership sufficient to identify potential Settlement Class members to the extent such lists are reasonably available to ImmunityBio or its transfer agent;

(b)    The Court hereby approves, as to form and content, the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Notice"), and the Proof of Claim and Release Form ("Proof of Claim"), substantially in the forms annexed to the Settlement Stipulation, and directs that no more than twenty-one (21) days after entry of this Order, Co-

Lead Counsel, through the Claims Administrator, shall cause a copy of the Notice substantially in the form set forth in Stipulation as Exhibit B-2 and Proof of Claim substantially in the form set forth in the Stipulation as Exhibit D, to be mailed by First-Class Mail to all Settlement Class members who can be identified with reasonable effort and to be posted substantially in the form of Exhibits B-1, B-2, and D on a website for the Settlement at www.ImmunityBioSecuritiesSettlement.com;

(c)     The Court hereby approves, as to form and content, the proposed form Publication Notice, substantially in the form of Exhibit C to the Stipulation, and directs that no more than twenty-one days (21) after entry of this Order, Co-Lead Counsel, through the Claims Administrator, shall cause the Publication Notice to be published once over a newswire service that distributes nationally in the United States; and

(d)     Co-Lead Counsel shall, at or before the Settlement Fairness Hearing, file with the Court proof that the Publication Notice has been published.

6.     Brokers and other nominees who purchased or acquired ImmunityBio stock for the benefit of another Person during the Settlement Class Period shall mail the Notice and Proof of Claim to such beneficial owners of ImmunityBio stock within ten (10) calendar days after receipt thereof, or send a list of the names and addresses of such beneficial owners to the Claims Administrator within ten (10) calendar days of receipt thereof, in which event the Claims Administrator shall promptly mail the Notice and Proof of Claim to such beneficial owners. Additional copies of the Notice and Proof of Claim shall be made available to any such broker or nominee requesting same for the purpose of mailing to beneficial owners. The Claims Administrator shall, if requested, reimburse nominees solely for their actual, reasonable out-of-pocket expenses for doing so, in an amount not to exceed $0.73 per Notice mailed or $0.15 per name and address provided to Claims Administrator, which expenses would not have been incurred except for the sending of such Notice or identifying such names and addresses, as the case may be, and subject to further order of this Court with respect to any dispute concerning such reimbursement.

7.    The form and content of the notice program described herein, and the methods set forth herein for notifying the Settlement Class of the Settlement and its terms and conditions, the Fee and Expense Application, any compensatory award to Lead Plaintiff, and the Plan of Allocation:

(a)    Constitute the best notice practicable to Settlement Class Members under the circumstances of this Action;

(b)    Are reasonably calculated, under the circumstances, to apprise Settlement Class members of: (i) the proposed Settlement of this Action; (ii) the right to be excluded from the Settlement Class; (iii) the right to object to any aspect of the proposed Settlement; (iv) the right to appear at the Settlement Fairness Hearing, either on their own or through counsel hired at their own expense, if they did not exclude themselves from the Settlement Class; and (v) the binding effect of the proceedings, rulings, orders, and judgments in this Action, whether favorable or unfavorable, on all persons not excluded from the Settlement Class;

(c)    Are reasonable and constitute due, adequate and sufficient notice to all Persons entitled thereto; and

(d)    Satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules.

8.    Other than the costs incurred by Defendants (if any) in providing the record holders of ImmunityBio stock during the Settlement Class Period, all fees, costs, and expenses incurred in identifying and notifying members of the Settlement Class shall be paid from the Settlement Fund as set forth in the Stipulation, and in no event shall any of the Released Parties bear any responsibility for such fees, costs, or expenses.

9.    All Settlement Class members (except Persons who request exclusion pursuant to ¶ 13 below) shall be bound by all determinations and judgments in the Action concerning the Settlement, including, but not limited to, the releases provided for therein,

3:17-CV-667-GPC-MSB

whether favorable or unfavorable, to the Settlement Class, regardless of whether such Persons seek or obtain any distribution from the Settlement Fund or the Net Settlement Fund by any means, including, without limitation, by submitting a Proof of Claim or any similar document.

10.    Settlement Class members who wish to participate in the Settlement shall complete and submit a Proof of Claim in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Proofs of Claim must be received no later than ninety (90) days after the Notice is mailed to Settlement Class members.   Any Settlement Class member who does not submit a Proof of Claim within the time provided shall be barred from sharing in the distribution of the proceeds of the Net Settlement Fund, unless otherwise ordered by the Court, but shall nevertheless be bound by any final judgment entered by the Court.  Notwithstanding the foregoing, Co-Lead Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator but shall not incur any liability for declining to do so.

11.    The Proof of Claim submitted by each Settlement Class member must satisfy the following conditions, unless otherwise ordered by the Court: (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of ¶ 10; (ii) it must be accompanied by adequate supporting documentation for the transactions in ImmunityBio stock reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by Co-Lead Counsel or the Claims Administrator; (iii) if the person executing the Proof of Claim is acting in a representative capacity, a certification of his, her, or its current authority to act on behalf of the Settlement Class member must be included therein; (iv) it must be complete and contain no material deletions or modifications of any of the printed matter contained therein; and (v) it must be signed under penalty of perjury.

12.    Any Settlement Class member may enter an appearance in the Action, at his,

her, or its own expense, individually or through counsel of their own choice. If they do not enter an appearance, they will be represented by Co-Lead Counsel.

13.    Any Settlement Class member may, upon request, be excluded or "opt out" from the Settlement Class. Any such Person must submit to the Claims Administrator a request for exclusion ("Request for Exclusion"), which complies with the requirements set forth in the Notice and is received no later than twenty-one (21) days before the date of the Settlement Fairness Hearing. All Persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph shall have no rights under the Stipulation, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Stipulation or any Judgment. A Settlement Class member may submit a written revocation of a Request for Exclusion up until five (5) business days before the date of the Settlement Fairness Hearing and still be eligible to receive payments pursuant to the Stipulation provided the Settlement Class member also submits a valid Proof of Claim prior to the Settlement Fairness Hearing.

14.    Any Settlement Class member and any other interested Person may appear at the Settlement Fairness Hearing in person or by counsel and be heard, to the extent allowed by the Court, either in support of or in opposition to the matters to be considered at the hearing, provided, however, that no Person shall be heard, and no papers, briefs, or other submissions shall be considered by the Court in connection to such matters, unless no later than twenty-one (21) days before the Settlement Fairness Hearing, such Person files with the Court a statement of objection setting forth: (i) whether the person is a Settlement Class member; (ii) the part(s) of the Settlement to which the Settlement Class member or interested Person objects; and (iii) the specific reason(s), if any, for such objection including any legal support the Settlement Class member or interested Person wishes to bring to the Court's attention and any evidence the Settlement Class member or interested Person wishes to introduce in support of such objection. Such Settlement Class member shall also provide documentation sufficient to establish the amount of publicly traded ImmunityBio stock purchased and sold during the Settlement Class Period, and the prices

and dates of such transactions.  Objection materials must be sent to the following:

<u>CO-LEAD COUNSEL</u>:
Jeremy A. Lieberman
Justin D. D'Aloia
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016

-AND-

Corey D. Holzer
HOLZER & HOLZER, LLC
211 Perimeter Center Parkway, Suite 1010
Atlanta, GA 30346

<u>DEFENDANTS' COUNSEL</u>
Gregory L. Watts
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104-7036

<u>COURT</u>
Clerk of the Court
United States District Court, Southern District of California
James M. Carter and Judith N. Keep United States Courthouse
333 West Broadway
San Diego, CA 92101

Any member of the Settlement Class who does not make his, her, or its objection in the manner provided above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Stipulation, to the Plan of Allocation, to the Fee and Expense Award, and to the compensatory award to Lead Plaintiff, unless otherwise ordered by the Court.

15.    Attendance at the Settlement Fairness Hearing is not necessary. Persons wishing to be heard orally in opposition to approval of the Settlement, the Plan of Allocation, the Fee and Expense Application, or the compensatory award are required to

indicate in their written objection their intention to appear at the Settlement Fairness Hearing.   Settlement Class members do not need to appear at the Settlement Fairness Hearing or take any other action if they do not oppose any aspect of the Settlement.

16.     The Court reserves the right to alter the time or the date of the Settlement Fairness Hearing without further notice to the Settlement Class members, provided that the time or the date of the Settlement Fairness Hearing shall not be set at a time or date earlier than the time and date set forth in ¶ 4 above and any new time and date will be promptly posted on the Settlement website upon being ordered, and the Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Settlement Class.

17.     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.  There shall be no distribution of any part of the Net Settlement Fund to the Settlement Class until the Plan of Allocation is finally approved, the Court issues the Settlement Distribution Order, and the Order and Final Judgment becomes Final.

18.     All papers in support of the Settlement, Plan of Allocation, and any Fee and Expense Application or compensatory award shall be filed and served no later than thirty (30) days before the Settlement Fairness Hearing, and any reply papers shall be filed and served no later than fourteen (14) days before the Settlement Fairness Hearing.

19.     Neither Defendants nor their counsel shall have any responsibility for the Plan of Allocation or any Fee and Expense Application by Co-Lead Counsel or compensatory awards to Lead Plaintiff, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.   At or after the Settlement Fairness Hearing, the Court shall determine whether the Plan of Allocation, any Fee and Expense Application proposed by Co-Lead Counsel, and any compensatory awards sought by Lead Plaintiff should be approved.

20.     Except for the obligation to provide reasonably available records identifying potential Settlement Class members, in no event shall Defendants or any of the other Released Defendant Parties have any responsibility for the administration of the Settlement, and neither the Defendants nor any of the other Released Defendant Parties shall have any obligation or liability to the Lead Plaintiff, Co-Lead Counsel, or the Settlement Class in connection with such administration.  All reasonable expenses incurred in identifying and notifying Settlement Class members and administering the Settlement Fund shall be paid as set forth in the Stipulation.  In the event the Court does not approve the Settlement, or it otherwise fails to become effective, neither Lead Plaintiff nor Co-Lead Counsel shall have any obligation to repay any amounts actually and properly incurred or disbursed pursuant to ¶ 2.7 of the Stipulation.

21.     This Order and the Stipulation, whether the Settlement contemplated by the Stipulation is consummated or not, and any statement made or proceedings taken pursuant to them are not, shall not be deemed to be, and may not be argued to be offered or received:

(a)     Against any of the Defendants or other Released Defendant Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Defendants or other Released Defendant Parties with respect to the truth of any fact alleged by the Lead Plaintiff in this Action or the validity of any claim that has been or could have been asserted against any of the Defendants or the Released Defendant Parties in this Action, or the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing or liability by any of the Defendants or other Released Defendant Parties;

(b)     Against any of the Defendants, the Lead Plaintiff, any Settlement Class members, or the other Released Defendant Parties' and/or Released Lead Plaintiff Parties, as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Defendants, the Lead Plaintiff, any Settlement Class member, or the other released parties, with respect to any liability, negligence, fault, or wrongdoing as against any of the Defendants, the Lead Plaintiff, any Settlement

3:17-CV-667-GPC-MSB

Class member, or the other released parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation, provided, however, that if this Stipulation is approved by the Court, Defendants, Lead Plaintiff, any Settlement Class member, and other Released Parties may refer to the Order or the Stipulation to effectuate the liability protection granted to them thereunder;

(c)     Against any of the Defendants or other Released Defendant Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that the Settlement Amount represents the amount which could or would have been received after trial of the Action against them;

(d)     Against the Lead Plaintiff or the Released Lead Plaintiff Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by the Lead Plaintiff or any Settlement Class member that any of their claims are without merit, or that any defenses asserted by Defendants in the Action have any merit, or that damages recoverable in the Action would not have exceeded the Settlement Fund; and

(e)     Against the Lead Plaintiff or the Released Lead Plaintiff Parties as evidence of, or construed as evidence of, any infirmity of the claims alleged by the Lead Plaintiff in the First Amended Class Action Complaint or the Action, or of any lack of merit to the claims or the Action, or of any bad faith, dilatory motive, or inadequate prosecution of the claims or the Action or any non-compliance with Fed. R. Civ. P. 11 or any similar rule or ethical obligation.

22.     The Defendants, Lead Plaintiff, Settlement Class members, other Released Parties, and each of their counsel may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

3:17-CV-667-GPC-MSB

23.     All proceedings in the Action are stayed, except for those related to and necessary for the Court's consideration of and decisions on the Settlement.  Pending final determination of whether the Settlement should be approved, neither Lead Plaintiff nor any Settlement Class member, either directly, representatively, or in any other capacity, shall commence or prosecute against any of the Released Defendant Parties any action or proceeding in any court or tribunal asserting any of Lead Plaintiff's Claims and, conversely, neither the Defendants nor any of the other Released Defendant Parties shall, either directly, representatively, or in any other capacity, commence or prosecute against the Lead Plaintiff or the Released Lead Plaintiff Parties any action or proceeding in any court or tribunal asserting any of Defendants' Claims.

24.     In the event that the Settlement is terminated or otherwise does not become Final in accordance with the terms of the Stipulation, this Order shall be rendered null and void and be of no further force and effect except to the extent provided in the Stipulation and shall be vacated, and the Parties shall revert to their respective positions in the Action as of December 19, 2024, as provided in the Stipulation.

**IT IS SO ORDERED.**

Dated:  March 17, 2025

Hon. Gonzalo P. Curiel
United States District Judge

3:17-CV-667-GPC-MSB