**POMERANTZ LLP**
Jennifer Pafiti (SBN 282890)
Justin D. D'Aloia (*pro hac vice*) (NY Bar # 4935979)
600 Third Avenue, 20th Floor
New York, New York   10016
Telephone:   (212) 661-1100
jpafiti@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Lead Plaintiff Dipak Patel and*
*Lead Counsel for the Proposed Settlement Class*

— additional counsel on signature page —

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SECURITIES LITIGATION | No. 3:23-cv-01216-GPC-VET <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge:  Hon. Gonzalo P. Curiel <br> Date: June 13, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 2D |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND .............................................................................................2

     A.      Procedural History.............................................................................2

          1.     Presuit Investigation and Pleadings .....................................2

          2.     Merits Discovery....................................................................3

          3.     Settlement Negotiations and Finalization .............................4

          4.     Preliminary Approval of the Settlement ...............................6

     B.      The Settlement..................................................................................6

          1.     Key Terms of the Settlement .................................................6

          2.     Notice and Response of the Settlement Class to Date .........6

III.    LEGAL STANDARD .....................................................................................7

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED AS A CLASS..............8

     A.      The Requirements of Rule 23 Are Satisfied .....................................8

     B.      The Court Should Appoint Co-Lead Counsel as Class Counsel....................9

V.      THE SETTLEMENT WARRANTS FINAL APPROVAL ...................................10

     A.      The Settlement Satisfies The Standard For Judicial Approval ....................11

          1.     Lead Plaintiff and Lead Counsel Adequately Represented the Class 11

          2.     The Settlement Is the Product of Arm's-Length Negotiations ..........13

          3.     The Relief Afforded by the Settlement Is Substantial ......................14

          4.     Application of the Remaining *Hanlon* Factors Supports Approval.................................................21

     B.      The Plan of Allocation Should Be Approved .............................................24

VI.     CONCLUSION................................................................................................25

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ali v. Franklin Wireless Corp.*,
2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) ................................................. 14, 22, 25

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) .................................................. 13, 17, 18

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024) ........................................................ *passim*

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
2024 WL 5112227 (N.D. Cal. Dec. 13, 2024) ........................................................... 25

*Brown v. Brewer*,
2012 WL 12882380 (C.D. Cal. Jan. 18, 2012) .......................................................... 24

*Davis v. Yelp, Inc.*,
2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) .......................................................... 12

*Delacruz v. CytoSport, Inc.*,
2014 WL 12648451 (N.D. Cal. Jul. 1, 2014) ........................................................... 22

*Derr v. Ra Medical Sys., Inc.*,
2022 WL 21306534 (S.D. Cal. Sept. 23, 2022) ........................................................ 22

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................ 15

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ................................................................................. 12

*Espinosa v. Cal. College of San Diego, Inc.*,
2018 WL 1705955 (S.D. Cal. Apr. 9, 2018) ............................................................ 16

*Farrar v. Workhorse Grp., Inc.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023) .................................................. 15, 18, 20

*Ferreira v. Funko, Inc.*,
2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) ........................................................ 23

*Fitzgerald v. Pollard*,
2024 WL 4596401 (S.D. Cal. Oct. 28, 2024) .......................................................... 11

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Fleming v. Impax Labs. Inc.*,
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ........................................ 21

*Gittin v. KCI USA, Inc.*,
    2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ........................................... 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................... *passim*

*Hardy v. Embark Tech., Inc.*,
    2024 WL 1354416 (N.D. Cal. Sept. 26, 2023) ................................. 19, 22

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2023), *aff'd sub nom. Hefler v.*
    *Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ............................................ 25

*Hessefort v. Super Micro Computer, Inc.*,
    2023 WL 7185778 (N.D. Cal. May 5, 2023) ......................................... 20

*Hester v. Vision Airlines, Inc.*,
    2014 WL 3547643 (D. Nev. July 17, 2014) ......................................... 17

*Hunt v. Bloom Energy Corp.*,
    2024 WL 1995840 (N.D. Cal. May 6, 2024) ......................................... 19

*Illumina, Inc. Sec. Litig.*,
    2019 WL 6894075 (S.D. Cal. Dec. 18, 2019) ................................. 20, 21

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ..................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................... 13

*In re BofI Holdings, Inc. Sec. Litig.*,
    2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ................................. 10, 14

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ..................................... 20

*In re Critical Path, Inc. Sec. Litig.*,
    2002 WL 32627559 (N.D. Cal. June 18, 2002) ................................... 18

*In re Illumina, Inc. Sec. Litig.*,
    2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ..................................... 13

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)........................................................... 17

*In re Lyft Inc. Sec. Litig.*,
    2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ..................................... 17, 19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................... 11, 15

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017) ................................................................ 25

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................... 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................. 10, 16, 22, 24

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................... 14

*In re Splunk Inc. Sec. Litig.*,
    2024 WL 923777 (N.D. Cal. Mar. 4, 2024) .............................................. 23

*In re Stable Road Acquisition Corp. Sec. Litig.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .................................... 16, 23

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..................................................................... 7

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007).................................................... 15

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ................................................... 12, 13, 16

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 1997530 (S.D. Cal. June 6, 2022) .................................. 15, 19, 22

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ........................................... 24

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017)...................................................... 16

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................ 22

*Mandalevy v. BofI Holding, Inc.*,
   2022 WL 4474263 (S.D. Cal. Sept. 26, 2022)......................... 9, 11, 14, 21

*Mandalevy v. BofI Holdings, Inc.*,
   2022 WL 1556160 (S.D. Cal. May 17, 2022) ............................................ 7

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ..................................... 24, 25

*Moreno v. Beacon Roofing Supply, Inc.*,
   2020 WL 3960481 (S.D. Cal. July 13, 2020) .......................................... 14

*Morgan v. Rohr, Inc.*,
   2025 WL 1285830 (S.D. Cal. May 1, 2025) ............................................ 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)...................................................... 16, 22

*Officers for Justice v. Civ. Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .................................................................. 14

*Raffin v. Medicredit, Inc.*,
   2018 WL 8621204 (C.D. Cal. Nov. 30, 2018) ........................................ 21

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................ 13, 21

*Schneider v. Champignon Brands Inc.*,
   2023 WL 11944374 (C.D. Cal. Feb. 28, 2023) ....................................... 20

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   2022 WL 409702 (N.D. Cal. Feb. 10, 2022) ........................................... 20

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................... 8

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................... 11

**Statutes**

15 U.S.C. §78j(b) .......................................................................................... 2

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

1

15 U.S.C. §78t(a) ................................................................................ 2

2

15 U.S.C. § 78u-4............................................................................... 21

3

Private Securities Litigation Reform Act of 1995 .................................. 3, 7, 21

4

**Rules**

5

Fed. R. Civ. P. 9 ................................................................................. 3

6

Fed. R. Civ. P. 23 ........................................................................ *passim*

7

Fed. R. Civ. P. 26 ............................................................................ 3, 4

8

**Other Authorities**

9

17 C.F.R. §240.10b-5....................................................................... 2, 3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

## TABLE OF DEFINED TERMS

| Defined Term | Definition | Cross Reference |
|---|---|---|
| Action | *In re ImmunityBio, Inc. Securities Litigation*, Case No. 23-cv-01216 | Stip. ¶ 1.0 |
| Authorized Claimants | Settlement Class members who submit timely and valid Proof of Claims | Stip. ¶ 1.1 |
| Claimant | A Person who or which submits a Proof of Claim | Stip. ¶ 1.3 |
| Claims Administrator | Epiq Class Action & Claims Solutions, Inc. | Prelim. Approval Order ¶ 5 |
| Confidential Term Sheet | The memorialized agreement of settlement terms, dated December 19, 2024 | Stip. § 1.A |
| Co-Lead Counsel | Pomerantz LLP and Holzer & Holzer, LLC | Stip. § 1.A |
| Defendants | ImmunityBio, Inc., Richard Adcock, David C. Sachs, and Patrick Soon-Shiong | Stip. at 1 |
| Exchange Act | The Securities Exchange Act of 1934, as amended. | Stip. ¶ 1.10 |
| FAC | The First Amended Complaint | Stip. § 1.A |
| Fee and Expense Application | Any application or applications for payments to Co-Lead Counsel from the Settlement Fund for: (a) an award of attorneys' fees; and (b) reimbursement of actual expenses. | Stip. ¶ 1.11 |
| Fee and Expense Award | The award of fees and expenses defined in Section II.H. of the Stipulation. | Stip. ¶ 1.12 |
| Final | The conditions under which the Settlement are final. | Stip. ¶ 1.13 |
| Holzer | Holzer & Holzer LLC | Stip. at 2 |
| ImmunityBio | ImmuntiyBio, Inc. | Stip. at 1 |
| Lead Plaintiff | Dipak Patel | Stip. at 1 |
| Net Settlement Fund | The Settlement Fund less any Taxes and Tax Expenses, any Fee and Expense Award to Co-Lead Counsel, any compensatory award to Lead Plaintiff approved by the Court, and Notice and Claims Administration Expenses. | Stip. ¶ 1.16 |
| Notice | The Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing. | Stip. ¶ 1.17 |
| Notice and Claims Administration Expenses | An interest bearing escrow account that may be used only to pay Notice and Claim Administration Expenses. | Stip. ¶ 1.19 |

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

| | | |
|---|---|---|
| Parties | Collectively: (1) Lead Plaintiff; and (2) Defendants. | Stip. ¶ 1.20 |
| Plan of Allocation | The plan or formula for allocating the Net Settlement Fund to Authorized Claimants. | Stip. ¶ 1.22 |
| Pomerantz | Pomerantz LLP | Stip. at 2 |
| Preliminary Approval Order | The order by the Court provisionally certifying the Settlement Class for settlement purposes only. | Stip. ¶ 1.23 |
| Proof of Claim | The Proof of Claim and Release Form to be submitted by Claimants. | Stip. ¶ 1.24 |
| Publication Notice | The Notice of Pendency and Proposed Settlement of Class Action to be published on a national business newswire. | Stip. ¶ 1.25 |
| PSLRA | The Private Securities Litigation Reform Act of 1995 | Stip. Ex. B-1 at 13 |
| Recognized Loss | Losses based on number of ImmuntyBio shares purchased, purchase price, and sale price if sold. | Stip. Ex. B-1 at 7 |
| Released Defendant Parties | (i) each Defendant, (ii) each of their respective immediate family members (for individuals) and any trust of which any individual defendant is the settler or which is for the benefit of any defendant and/or any member(s) of his family, and (iii) enumerated related persons | Stip. ¶ 1.27 |
| SEC | Securities and Exchange Commission | Stip. at 2 |
| Settlement | The settlement of the Action on the terms set forth in the Stipulation | Stip. ¶ 1.32 |
| Settlement Amount | Ten million five hundred thousand dollars ($10,500,000.00) in cash to be paid pursuant to ¶ 2.0 of the Stipulation | Stip. ¶ 1.34 |
| Settlement Class | All persons who purchased or acquired ImmunityBio, Inc. securities during the Settlement Class Period and were damaged thereby | Stip. ¶ 1.35 |
| Settlement Class Member | Any person or entity that is a member of the Settlement Class that does not exclude himself, herself, or itself by filing a timely request for exclusion in accordance with the requirements set forth in the Notice | Stip. ¶ 1.36 |
| Settlement Class Period | March 10, 2021, to May 10, 2023, inclusive | Stip. ¶ 1.35 |
| Settlement Fund | The Settlement Amount before any authorized expenditures | Stip. ¶ 1.40 |

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

| Supplemental Agreement | The supplemental agreement between the Parties described in the Stipulation at ¶ 2.13 | Stip. ¶ 1.41 |
|---|---|---|
| Taxes and Tax Expenses | (a) All taxes of any kind on any income earned by the Settlement Fund, together with any interest, penalties, or additions to tax imposed with respect to them; and (b) the reasonable and necessary costs and expenses incurred in connection with the implementation of ¶ 2.10 of the Stipulation | Stip. ¶ 1.42 |

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

# NOTICE OF MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:  PLEASE TAKE NOTICE that, on June 13, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Dipak Patel ("**Lead Plaintiff**") will, and hereby does, move this Court, before the Honorable Gonzalo P. Curiel, United States District Judge of the United States District Court for the Southern District of California, in Courtroom 2D of the Edward J. Schwartz United States Courthouse, located at 221 West Broadway, San Diego, California 92101, upon the enclosed Memorandum of Points and Authorities, the accompanying Declarations of Declarations of Justin D. D'Aloia (the "**D'Aloia Declaration**"), Corey D. Holzer (the "**Holzer Declaration**"), and Joseph Mahan (the "**Mahan Declaration**"),  and all prior pleadings and proceedings herein, for the entry of an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) granting final approval of the proposed Settlement of the above-captioned class action, as set forth in the Stipulation of Settlement, dated January 28, 2025, attached to the Declaration of Justin D. D'Aloia filed on January 8, 2025 (ECF No.80-2) (the "**Stipulation**"), which the Court preliminarily approved in the Order entered on March 17, 2025 [ECF No. 89] (the "**Preliminary Approval Order**"); and (2) granting final certification of the Settlement Class, as defined in the Stipulation, appointing Lead Plaintiff as representative of the Settlement Class, and appointing Co-Lead Counsel as lead counsel for the Settlement Class, which the Court provisionally did in the Preliminary Approval Order.[1]  A proposed judgment and order will be submitted with the reply papers on or before May 30, 2025, after the deadline for requesting exclusion or objecting to the Settlement has passed.

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set forth in the Stipulation, as reproduced in the Table of Defined Terms provided above.  Citations to Exhibits refer to the exhibits attached to the D'Aloia Declaration, Holzer Declaration, and Mahan Declaration.  Unless otherwise noted, all internal citations and quotations are omitted in the Memorandum of Points and Authorities included herein.

23cv01216

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Lead Plaintiff, individually and on behalf of all others similarly situated,

3

respectfully submits this memorandum in support of his Unopposed Motion for Final

4

Approval of Class Action Settlement (the "**Motion**").

5

## I.    INTRODUCTION

6

On January 28, 2025, the Parties agreed to settle this complex and hard-fought class

7

action for $10.5 million in cash, on the terms set forth in the Stipulation, following

8

extensive, arm's-length negotiations before experienced mediator Jed Melnick, Esq.  On

9

March 17, 2025, the Court entered an Order granting preliminary approval of the

10

Settlement, provisionally certifying a Settlement Class for purposes of the Settlement,

11

directing notice of the Settlement to potential Settlement Class members, and setting

12

various deadlines for the filing of any papers in support of, or opposition to, final approval

13

of the proposal in advance of a Settlement Hearing scheduled for June 13, 2025.  Through

14

this Motion, Lead Plaintiff now seeks final approval of the proposed Settlement and Plan

15

of Allocation following the completion of the notice program approved by the Court.

16

The Settlement represents an outstanding result for the Settlement Class and easily

17

satisfies the factors set forth in Rule 23(e)(2) and *Hanlon v. Chrysler Corp.*, 150 F.3d

18

1011, 1025 (9th Cir. 1998), for approving class action settlements.  The Settlement

19

provides an immediate and substantial recovery for the Settlement Class well within the

20

range of settlements in comparable class actions and eliminates the risks and uncertainties

21

of continued litigation, including the risk that Defendants could prevail at class

22

certification, and the Settlement Class could receive nothing, or far less, after summary

23

judgment or trial.  Lead Plaintiff and Co-Lead Counsel were fully informed about these

24

strengths and weaknesses at the time they entered the Stipulation and respectfully submit

25

that the Settlement is fair and reasonable in all respects.

26

In addition, the Plan of Allocation that will be used to distribute the net proceeds of

27

the Settlement to Settlement Class members is fair and reasonable.  The Plan, which was

28

developed with input from Lead Plaintiff's damages expert, treats Settlement Class

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

members equitably and ensures that each receives a *pro rata* share of the proceeds.

Lead Plaintiff followed the Court-approved notice plan to solicit claims, requests for exclusion, and any objections to the proposed Settlement, and sent Notice of the proposed Settlement to nearly 40,000 potential Settlement Class members. As of this Motion, there have not been ***any*** objections to the Settlement or ***any*** requests for exclusion received from potential Settlement Class members. As such, the Settlement and the Plan of Allocation appear to enjoy unanimous support from the Settlement Class.

Accordingly, Lead Plaintiff respectfully requests that the Court fully and finally approve the proposed Settlement and Plan of Allocation, certify the Settlement Class for purposes of the Settlement, and enter the Judgment attached as Exhibit E to the Stipulation.

## II. BACKGROUND

### A. Procedural History

#### 1. Pre-suit Investigation and Pleadings

On June 30, 2023, Plaintiff Zachary Salzman filed a class action complaint against Defendants alleging violations of Sections 10(b) and 20(a) of the Exchange Act, codified at 15 U.S.C. §§78j(b) & 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, codified at 17 C.F.R. §240.10b-5. (ECF No. 1.) On September 27, 2023, the Court appointed Dipak Patel as Lead Plaintiff and approved his selection of Pomerantz and Holzer as Co-Lead Counsel. (ECF No. 31.)

On November 17, 2023, Lead Plaintiff filed the operative FAC following an extensive investigation by Lead Counsel that involved, among other things, interviews with former employees, expert consultation, and the review of non-public information secured through government information requests. (ECF No. 37.) The FAC brought claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 for making material misstatements and omissions during the Settlement Class Period concerning ImmunityBio's manufacturing capabilities, compliance with current good manufacturing practices ("**cGMP**"), and the approval prospects of Anktiva. (*Id.*) As alleged therein, the fraud was revealed on May 11, 2023, when the U.S. Food and Drug

Administration (**"FDA"**) issued a Complete Response Letter ("**CRL**") rejecting the Company's Biologic License Application ("**BLA**") for Anktiva due to deficient manufacturing practices. (*Id.*)

On January 8, 2024, Defendants filed a motion to dismiss the FAC ("**MTD**") for failure to state a claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure (the "**Rules**") and the PSLRA. (ECF No. 50.) Lead Plaintiff filed a comprehensive opposing memorandum on February 19, 2024 (ECF No. 51), and Defendants filed a reply on March 11, 2024 (ECF No. 52). On May 3, 2024, Defendants filed a request for judicial notice in support of the MTD (ECF No. 56), which Lead Plaintiff opposed on May 17, 2024 (ECF No. 60). On June 18, 2024, Defendants filed a notice of supplemental authority in further support of the MTD. (ECF No. 62).

On June 20, 2024, the Court entered an Order granting in part and denying in part Defendants' MTD ("**MTD Order**"). (ECF No. 63.) Specifically, the Court rejected Defendants' challenge as to 51 of the 62 misstatements pled in the FAC and granted Lead Plaintiff leave to replead. (*Id.*) On July 16, 2024, Lead Plaintiff filed a notice of his decision to proceed on the FAC. (ECF No. 64.)

On August 29, 2024, the Parties exchanged their initial disclosures and Defendants filed an answer to the FAC in which they denied, in whole or part, a significant amount of the FAC's allegations and raised a variety of affirmative defenses. (ECF No. 68.)

### 2. Merits Discovery

Between July 24, 2024, and August 23, 2024, counsel for the Parties held a series of conferences to discuss the matters required by Fed. R. Civ. P. 26(f), including a proposed case schedule. D'Aloia Decl. ¶ 16. On August 29, 2024, the Parties exchanged their initial disclosures. *Id.* ¶ 17. On October 31, 2024, the Court entered a Scheduling Order setting case deadlines through trial. (ECF No. 77.)

To facilitate the swift commencement of discovery, ahead of the Court's entry of the Scheduling Order, the Parties negotiated and filed a Joint Motion for entry of a stipulated protective order to govern the exchange of confidential information (ECF No. 71), which

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

the Court entered on September 13, 2024 (ECF No. 73) (the "**Protective Order**").  The Parties also negotiated and filed a Joint Motion for the entry of a stipulated order to govern the collection, processing, and production of electronically stored information (ESI) (ECF No. 78), which the Court entered on November 14, 2024 (ECF No. 79).

Since the entry of the Protective Order, the Parties engaged in targeted and hard-fought discovery.  Lead Plaintiff interposed an extensive set of requests for production covering an array of relevant topics, including the manufacturing process for Anktiva, cGMP compliance, and pertinent interactions with the FDA during the Class Period.  D'Aloia Decl. ¶ 20.  Lead Plaintiff also served several subpoenas on key third parties, including, among others, the contract manufacturing organizations (each, a "**CMO**") primarily responsible for manufacturing Anktiva on behalf of ImmunityBio.  *Id.*  Likewise, Defendants served requests for production and written interrogatories on Lead Plaintiff.  *Id.*  Given the wide array of discovery topics sought by the Parties, as well as the potentially voluminous documentation responsive to the requests, the Parties held numerous meet and confers by letter and phone to resolve disagreements regarding the discovery served.  *Id.* ¶ 21.  Lead Plaintiff also engaged with counsel for the third parties served with subpoenas, receiving initial productions for some and engaging in meet and confers in other instances to potentially resolve outstanding disputes without court intervention.  *Id.*  Lead Plaintiff ultimately received over 10,000 pages of documents from Defendants and third parties and produced various records and several written responses to the discovery requests served on him by Defendants.  *Id.* ¶ 29.  Lead Plaintiff also scheduled a date to be deposed by Defendants' counsel and commenced work with its economic expert ahead of his forthcoming motion for class certification.  *Id.* ¶¶ 30-31.

### 3.    Settlement Negotiations and Finalization

As required by Fed. R. Civ. P. 26(f), the Parties discussed the potential for an early resolution following the MTD Order but agreed that it was too early to meaningfully engage, and that discovery could potentially facilitate discussions.  D'Aloia Decl. ¶ 15.

The Court set an early neutral evaluation conference ("**ENE**") before Magistrate

Judge Valerie E. Torres for October 28, 2024.  (ECF No. 72.)  Ahead of the ENE, both sides prepared a confidential ENE statement, which required them to thoroughly consider and outline the operative facts, respective positions on liability and damages, and their settlement positions.  D'Aloia Decl. ¶¶19, 23, 25.  At the ENE, the Parties engaged in good faith but were unable to reach a resolution at that time.  *Id.* ¶ 26.

Following the ENE, the Parties pressed forward with discovery but remained in contact and continued to discuss the possibility of a mediation.  *Id.* ¶ 29.  The Parties recognized that a window opened for settlement discussions before incurring the substantial costs associated with depositions and litigating class certification, and agreed to mediate before Jed Melnick, Esq. of JAMS.  *Id.* ¶ 33.  In anticipation of the mediation, the Parties exchanged mediation statements and other supporting information.  *Id.* ¶ 34.

On December 4, 2024, the Parties attended an all-day in-person mediation.  *Id.* ¶ 34.  The Parties engaged in intensive negotiations, which included multiple counteroffers and presentations by the Parties, but ultimately did not end with resolution.  *Id.*  In the days that followed, negotiations continued with the assistance of Mr. Melnick, who continued to engage the Parties regarding a prospective settlement.  *Id.* ¶ 35.  On December 13, 2024, Mr. Melnick made a mediator's proposal to fully and finally resolve the Action for $10,500,000, which was accepted by all Parties that same day.  *Id.*

After accepting the mediator's proposal, the Parties negotiated the Confidential Term Sheet to outline the principal terms of their Settlement, which was executed on December 19, 2024.  *Id.* ¶ 36.  In accordance with the Confidential Term Sheet, the Parties then engaged in further telephonic and written negotiations to finalize the Stipulation.  *Id.* ¶ 37.  During this time, Co-Lead Counsel and Defendants' counsel engaged in frequent correspondence, exchanging detailed revisions, to finalize the Stipulation and its accompanying Exhibits on January 28, 2025.  *Id.*

In short, settlement negotiations were conducted at arm's-length over the course of several months through multiple channels, including emails, the ENE, phone calls, and an in-person mediation with an experienced and disinterested neutral, during which each side

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

pressed for the most favorable outcome possible.

### 4.     Preliminary Approval of the Settlement

On January 28, 2025, Lead Plaintiff filed an unopposed motion for preliminary approval of the proposed Settlement, together with supporting papers, including a fully executed copy of the Stipulation and all exhibits thereto.  (ECF No. 80.)

The Court held an in-person hearing on the motion on March 7, 2025, during which it, among other things, raised questions about the composition of the Settlement Class and anticipated fees for the proposed Claims Administrator.  (ECF No. 87.)

On March 17, 2025, the Court entered an order granting preliminary approval of the Settlement, provisionally certifying the Settlement Class for purposes of the Settlement and authorizing the form and manner of providing notice of the Settlement to potential Settlement Class members.  (ECF No. 89.)  The Court also directed Lead Plaintiff to revise the proposed Notices to specify the maximum potential fees the Claims Administrator anticipates incurring in connection with the Settlement.  (*Id.* at 28.)

### B. The Settlement

#### 1.     Key Terms of the Settlement

The key terms of the Settlement are set forth in the Court's Preliminary Approval Order.  (ECF No. 89 at 6-8.)  None have changed since then.  As directed by the Court, Lead Plaintiff revised the Notices to specify the maximum potential fees the Claims Administrator anticipates incurring in connection with the Settlement.  D'Aloia Decl. ¶¶ 39, 42.

#### 2.     Notice and Response of the Settlement Class to Date

In the Preliminary Approval Order, the Court ordered the Claims Administrator, Epiq, to: (i) establish a website dedicated to the Settlement, where potential Settlement Class members can submit Claims electronically and download copies of all Settlement documents, including the Stipulation, the Notice, and the Proof of Claim form; and (ii) mail or email an abridged version of the Notice to all Settlement Class members who can be identified through reasonable effort and release the Publication Notice on a national

newswire, both of which directed potential Class Members to the Settlement website for additional information about the Settlement. (ECF No. 89 at 34-35, 37-39.) The Court found that these notice procedures "[s]atisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the [PSLRA], and all other applicable laws and rules," and "[c]onstitute the best notice practicable to Settlement Class Members under the circumstances." (*Id.* at 39.)

The Notice program approved by the Court has been carried out. On March 24, 2025, Lead Plaintiff received a list from Defendants containing the names of 310 stockholders of record during the Settlement Class Period, including a number of nominee purchasers. D'Aloia Declaration ¶ 41. On April 7, 2025, Epiq (i) established a settlement website at [www.immunitybiosecuritiessettlement.com](www.immunitybiosecuritiessettlement.com), which includes, among other things, a copy of the Stipulation, the Preliminary Approval Order, the Notice, the Proof of Claim form, and an online Claim submission page and commenced its distribution of the short-form Notice and Publication Notice (ii) commenced its distribution of the short-form Notice and Publication Notice. *See* Mahan Decl. ¶¶ 3-12,. Epiq has since received the contact information for many additional potential Settlement Class members by numerous nominee holders. *Id.* ¶ 7. In total, 39,925 potential Settlement Class Members were sent a Notice regarding the Settlement as of May 13, 2025, only 6 of which have been returned as undeliverable. *Id.* ¶¶ 6-9. To date, there have been no objections to the Settlement, nor have any potential Settlement Class members requested exclusion from the Settlement Class. D'Aloia Declaration ¶ 44; Mahan Declaration ¶¶ 16, 18.

## III.  LEGAL STANDARD

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Mandalevy v. BofI Holdings, Inc.*, 2022 WL 4474263, at *6 (S.D. Cal. Sept. 26, 2022) (Curiel, J.) (same). When parties settle a putative class action before a class is formally certified, the Court must assess if (1) the proposed settlement class meets all requirements for class certification; and (2) the settlement

satisfies all requirements of Rule 23(e).  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  As explained below, there is ample support for both here.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED AS A CLASS

As provided in the Stipulation, to implement the terms of the Settlement, Lead Plaintiff seeks certification of a Settlement Class consists of "[a]ll Persons who purchased or acquired ImmunityBio, Inc. securities from March 10, 2021, to May 10, 2023, inclusive . . . and were damaged thereby."  Stip. ¶ 1.35.  Excluded from the Settlement Class are:

> (i) all Defendants; (ii) members of the immediate families of the Defendants; (iii) the subsidiaries and affiliates of any Defendants; (iv) any person or entity who is a partner, executive officer, director or controlling person of any of the Defendants; (v) any entity in which any Defendant has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any such excluded party.  Also excluded from the Settlement Class are any Settlement Class members who or which submit a valid request for exclusion from the Settlement Class in accordance with the requirements established by the Court.

*Id.*  As explained below, all requirements are satisfied to maintain the Settlement Class for purposes of the Settlement.

### A.    The Requirements of Rule 23 Are Satisfied

Class certification is governed by Rule 23.  In the Preliminary Approval Order, the Court provisionally found that the requirements of Rules 23(a) and 23(b)(3) were satisfied and stated that the Court "will likely be able to certify the Settlement Class for purposes of Settlement" at the final approval stage based on that showing.  (ECF No. 89 at 9-16.) While Lead Plaintiff did not yet have definitive proof regarding the size of the class, the Court held that it could infer that the number of class members would be "far too numerous to join" based on the fact that there were over 400 million shares of ImmunityBio common stock outstanding during the Class Period, with average daily trading volume of 1.9 million shares.  (*Id.* at 11.)  It also found the remaining requirements satisfied based on the nature of the claims and defenses asserted.  (*Id.* at 11-16.)

Certification of the Settlement Class remains warranted.  As provided more fully in

the Mahan Declaration, the notice program carried out by the Claims Administrator has identified almost **40,000** potential Settlement Class members, thus confirming the Co-Lead Counsel's preliminary expectations. In addition, no circumstances have changed regarding the remaining requirements of Rule 23(a) and Rule 23(b)(3)—which, as noted above, were based primarily on the nature of the claims and defenses asserted—since the entry of the Preliminary Approval Order. *See Mandalevy II*, 2022 WL 4474263, at *3 (granting final certification of settlement class when "no material changes have occurred since this Court's preliminary approval" order). Because the Settlement Class meets the requirements of Rules 23(a) and (b)(3), there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes. *See*, *e.g.*, *Gittin v. KCI USA, Inc.*, 2011 WL 1467360, at *1 (N.D. Cal. Apr. 12, 2011).

**B.    The Court Should Appoint Co-Lead Counsel as Class Counsel**

Rule 23(g) requires the Court to appoint class counsel whenever it certifies a class. The Rule directs the Court to consider four factors, including (1) work counsel has done in identifying or investigating potentials claims; (2) counsel's experience in handling the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1). Pomerantz and Holzer were previously appointed as Co-Lead Counsel for the proposed class in September 2023 because of their "substantial experience in securities class action litigation." (ECF No. 31 at 3.) In the Preliminary Approval Order, the Court found that Pomerantz and Holzer have "devoted substantial time, effort, and resources to identifying, investigating, litigating, and negotiating a settlement" since then. (ECF No. 89 at 16.) Following the entry of the Preliminary Approval Order, Co-Lead Counsel have continued to do so by overseeing the notice program, working cooperatively with opposing counsel, and fulfilling all deadlines and requirements associated with the Settlement. The outcomes they have achieved in the Action to date, and the quality of their submissions, are a testament to their legal prowess in cases of this nature. Therefore, Lead Plaintiff respectfully requests that the Court appoint Pomerantz and Holzer to serve

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

as Class Counsel.

## V.  THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) requires judicial approval of any compromise to settle claims in a class action.  The Court may do so only upon a finding, after holding a hearing, that the compromise is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The decision to approve a proposed class action settlement rests in the sound discretion of the district court, *Hanlon*, 150 F.3d at 1025, and must be "made in the context of a 'strong judicial policy'" that favors the settlement of class actions.  *In re BofI Holdings, Inc. Sec. Litig.*, 2022 WL 9497235, at *4 (S.D. Cal. Oct. 14, 2022) (Curiel, J.) (quoting *Syncor ERISA Litig.*, 516 F.3d at 1101); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement . . . in class action lawsuits.").

Rule 23(e)(2) was amended in 2018 to create uniformity among federal courts on the primary considerations they must weigh to determine if a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendments).  As amended, Rule 23(e)(2) directs courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The first two factors focus on "procedural" concerns, whereas the final two focus on the "substantive" terms of the settlement.  Fed. R. Civ. P. 23(e)(2),

10                                                                 23cv01216

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

advisory committee notes (2018 amendments).  These points of inquiry overlap with the *Hanlon* factors that traditionally guided the fairness analysis:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.  The 2018 amendments to Rule 23(e) make clear that the considerations identified therein were not designed to "displace" any factor previously used by courts to evaluate settlements, but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).  Thus, courts may still consider additional *Hanlon* factors in the exercise of discretion.  *See, e.g.*, *Fitzgerald v. Pollard*, 2024 WL 4596401, at *5-8 (S.D. Cal. Oct. 28, 2024).  Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable."  *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same).

Given the above, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the factors set forth in Rule 23(e)(2) but will also discuss the application of relevant, non-duplicative *Hanlon* factors as well.  As detailed below, each of these factors strongly supports final approval of the Settlement.

## A.    The Settlement Satisfies the Standard for Judicial Approval

### 1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class

The first Rule 23(e)(2) consideration is whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  As this Court has recognized, this analysis is "redundant of the requirements of Rule 23(a)(4)," *Mandalevy*, 2022 WL 4474263, at * 6 (quoting 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020)), which asks "(1) do the named plaintiffs and their

1    counsel have any conflicts of interest with other class members, and (2) will the named

2    plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*,

3    150 F.3d at 1020; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.

4    2011) (same).

5        Rule 23(e)(2)(A) is satisfied for the same reasons that Rule 23(a)(4) is satisfied.

6    Indeed, Dipak Patel was previously appointed by the Court as Lead Plaintiff because he

7    had the largest financial losses of those who sought appointment as lead plaintiff.  (ECF

8    No. 31.)  As a party with claims that are typical of those of the Settlement Class (Point

9    IV.A, *supra*), his interests are fully aligned with theirs to maximize the potential recovery.

10   *See Davis v. Yelp, Inc.*, 2022 WL 21748777, at *2 (N.D. Cal. Aug. 1, 2022) (party with

11   claims that are "typical" with absent class members shares "interest in obtaining the largest

12   possible recovery in this Action").   Similarly, by working on a contingency basis,

13   "Plaintiff's counsel has incentive to litigate for the best possible recovery for the entire

14   proposed Settlement Class."  *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607,

15   612 (S.D. Cal. 2008).  As such, Lead Plaintiff and Co-Lead Counsel have aggressively and

16   skillfully prosecuted the claims asserted and engaged in extensive settlement negotiations,

17   zealously pushing for the greatest recovery possible.  Co-Lead Counsel have expended

18   considerable time, effort, and resources pursuing a favorable recovery, which efforts have

19   included the filing of the initial complaint and a subsequent amended complaint after a

20   thorough investigation of the claims, interviews with numerous former employees, the

21   review of public as well as non-public information obtained through government

22   information requests, consultation with numerous experts, successfully defeating

23   Defendants' MTD, propounding numerous discovery requests on Defendants and third-

24   parties, extensively negotiating the scope of the potential responses thereto, engaging in

25   prospective settlement talks over several months, and meticulously negotiating the

26   Settlement's terms.  *See* D'Aloia Decl. ¶¶ 9-39. At all times Lead Plaintiff oversaw and

27   assisted with the prosecution of the claim, and answered extensive discovery propounded

28   upon him by Defendants.  *Id.* ¶¶ 40.  These facts strongly indicate that they will continue

1    to vigorously prosecute the Action for the benefit of the Settlement Class.

2         **2.    The Settlement Is the Product of Arm's-Length Negotiations**

3         Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was

4    negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts in the Ninth Circuit "put

5    a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."

6    *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). As a result, settlements

7    that result from non-collusive, procedurally fair negotiations are presumed fair. *See*

8    *Wireless Facilities*, 253 F.R.D. at 610.

9         Here, the proposed Settlement is the product of intense arm's length negotiations

10   between Lead Plaintiff and the Defendants, through their respective counsel, over several

11   months with the benefit of initial discovery. *See* D'Aloia Decl. ¶ 47. That the Settlement

12   was reached with the assistance of a neutral mediator only after several days of intensive

13   negotiations, including a full day in-person mediation session, further confirms the non-

14   collusive nature of the negotiations between the Parties. *See Morgan v. Rohr, Inc.*, 2025

15   WL 1285830, at *9 (S.D. Cal. May 1, 2025) (Curiel, J.) ("The use of an experienced

16   mediator suggests that settlement negotiations were informed and non-collusive."); *see*

17   *also In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *3 (S.D. Cal. Mar. 17, 2021)

18   (settlement reached after a "full day" mediation "with the mediator's assistance"

19   supporting finding the settlement was the product of "arm's-length negotiations" for

20   purposes of final approval); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *6 (S.D.

21   Cal. July 24, 2020) (same when settlement reached through "intensive, good-faith

22   bargaining in several mediation session" with Jed Melnick).

23        To be sure, the Settlement does not display any of the "usual hallmarks" of a

24   collusive agreement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th

25   Cir. 2011). Here, the total cash recovery of $10.5 million was put into an interest-bearing

26   escrow account, from which Co-Lead Counsel is seeking an award of fees and expenses.

27   The Settlement does not include a clear sailing provision, and any remaining funds in the

28   Settlement fund are to be distributed to Settlement Class Members without revision to

**LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

Defendants.  *See BofI Holding*, 2022 WL 9497235, at *5 (no hallmarks of collusion when settlement was "non-reversionary"); *Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 3960481, at *3 (S.D. Cal. July 13, 2020) (Curiel, J.) (same when "no money will revert back to Defendant").  In addition, as explained more fully in Point V.A.4, *infra*, treats all Settlement Class members the same based on their proportionate losses.

Notably, the Settlement was the result of *counseled* negotiation.  The endorsement of experienced counsel is yet another factor that "weigh[s] in favor of approval."  *BofI Holding*, 2022 WL 9497235, at *5; *see also Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *8 (S.D. Cal. Dec. 19, 2024) (entry into settlement by parties represented by "experienced counsel" is accorded "a great deal of weight").  This makes sense; counsel—especially counsel with relevant subject matter experience—is "most closely acquainted with the facts of the underlying litigation." *Mandalevy*, 2022 WL 4474263, at *7; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  Counsel for the Parties here are experienced and sophisticated litigators who specialize in securities class actions of this type, and forcefully advocated on their clients' behalf.  Their independent judgement that the Settlement is a fair and advantageous result provides further evidence of its bona fides.

### 3.    The Relief Afforded by the Settlement Is Substantial

The determination of what constitutes a "reasonable" settlement is not susceptible to a mathematical formula.  Because "[s]ettlement is the offspring of compromise[,] the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate," taking into account four factors enumerated

therein.  Fed. R. Civ. P. 23(e)(2)(C).  As discussed below, each of these factors supports a finding that this recovery provides an excellent outcome for the Settlement Class under the circumstances.

**The Relief Afforded by the Settlement**.    The amount of a settlement "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class."  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016).  Courts generally consider the "expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Importantly, a settlement need not compensate class members for the maximum potential value of their claims and there is no fixed percentage of the potential recovery that renders a settlement reasonable.  Indeed, it has long been the law that "a cash settlement amounting to only a fraction of the potential recovery" may be fair under the circumstances.  *See Mego*, 213 F.3d at 459.  As explained below, the relief afforded by the Settlement is substantial.

The Settlement here provides the Settlement Class with the certainty of $10.5 million in cash.  Lead Plaintiff's expert estimates that maximum recoverable damages, assuming Lead Plaintiff prevailed on the merits, total approximately $130.6 million.  This Settlement Amount therefore represents ***over 8%*** of estimated damages and, thus, is well above the median recovery level in securities class action settlements.  *See Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) (settlement of approximately 2% of total damages is "in line with percentage recoveries" in other securities class actions); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that average recovery in securities class actions is between 2% to 3% of maximum damages); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (settlement of 3.49% of maximum damages is "higher than the 2021 median recovery in securities class actions of 1.8%").

**Cost, Risks, and Delay of Continued Litigation**.  Rule 23(e)(2)(C)(i) requires the Court to weigh the recovery provided by the Settlement against "the costs, risks, and delay

of trial and appeal."  In doing so, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).  Thus, the relief "must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case'" if it continued.  *In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23, 2024) (quoting *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014)).  All else being equal, an immediate cash recovery is "preferable to lengthy and expensive litigation with uncertain results," unless the settlement amount is "clearly inadequate."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

While the case has real strengths, there were myriad risks that continued litigation would yield limited or no relief at all.  For example, Defendants previously urged Magistrate Judge Torres adopt a schedule that provided additional time for a response to a class certification motion so they could marshal sufficient evidence to mount a robust opposition.  *See Espinosa v. Cal. College of San Diego, Inc.*, 2018 WL 1705955, at *6 (S.D. Cal. Apr. 9, 2018) (the "risk that the Class would . . . not be certified" favors approval of settlement when defendants planned to "vigorously oppose" class certification if the case continued).  Further, even if Lead Plaintiff prevailed and secured class certification, there is "no guarantee the certification would survive through trial," as Defendants retain the right to decertify or modify the class.  *Omnivision*, 559 F. Supp. 2d at 1041.  That Defendants could adduce new evidence during the course of discovery to seek such relief further weighs in favor of approving the settlement.  *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) (risk that "subsequent facts adduced through discovery might have led to decertification . . . favors approval of the settlement" and collecting cases); *see also Wireless Facilities*, 2008 WL 11338455, at *5 ("The avoidance of risk of maintaining class action certification through[] trial favors settlement of this action"); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D.

1    Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is

2    one that weighs in favor of settlement.")

3          Similarly, Lead Plaintiff faced significant uncertainty establishing liability on the

4    merits. Courts regularly recognize that "securities litigation presents complex legal issues

5    and problems of proof." *Baron*, 2024 WL 3504234, at *8 (collecting cases). This is

6    especially true with respect to "scienter," which is typically proven without direct

7    evidence, and "causation," which usually requires expert analysis. *In re Immune Response

8    Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007). This case is no exception. While

9    Lead Plaintiff's claims survived the MTD, Defendants repeatedly claimed they had valid

10   defenses to the allegation that their statements were false or misleading, they acted with

11   scienter, and other elements of Lead Plaintiff's claim, virtually ensuring that these issues

12   would be hotly contested at each stage of litigation. Notably, a significant amount of key

13   evidence is in the possession of third parties, including ImmunityBio's CMOs, which may

14   limit Lead Plaintiff's ability to secure evidence needed to defeat summary judgment

15   motion or prevail at trial. *See Hester v. Vision Airlines, Inc.*, 2014 WL 3547643, at *12

16   (D. Nev. July 17, 2014) (identifying the "difficulty in obtaining documents from third-

17   parties" as a "significant challenge[]"). Further complicating matters, most if not all

18   merits evidence secured by Lead Plaintiff would need to be reviewed by subject-matter

19   experts given the highly technical nature of biopharmaceutical manufacturing, requiring

20   even more expert involvement than in a standard securities case. Because of this, Lead

21   Plaintiff's ability to prevail at summary judgment or trial would rest on an inherently

22   "unpredictable battle of the experts." *Baker*, 2020 WL 4260712, at *7; *see also In re Lyft

23   Inc. Sec. Litig.*, 2023 WL 5068504, at *6 (N.D. Cal. Aug. 7, 2023) ("[I]t is unpredictable

24   who the jury would believe in a 'battle of the experts.'"). At trial, Defendants would likely

25   appeal to a jury's sympathy by highlighting that they develop life-saving treatments, and

26   jurors could be easily confused by the highly technical nature of the facts at issue, even

27   absent any efforts by Defendants' counsel to complicate them.

28         Of course, even if he prevailed at trial, Lead Plaintiff would need to survive

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants' inevitable appeals.  This case would generate its fair share of appellate issues because it relies so heavily on complex expert matters.  Reversal of the Court's decision on any expert matter could therefore upset any judgment.

Regardless of the ultimate outcome, there is no question that further litigation would be exceptionally expensive and time-consuming.  It is widely accepted that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker*, 2020 WL 4260712, at *7.  Here, discovery costs would only escalate due to additional document productions, disputes concerning the scope of discovery, the need for testimony from an array of experts, and taking and defending numerous fact and expert depositions. *See Farrar*, 2023 WL 5505981, at *7 (costs associated with "[n]umerous depositions and document and other written discovery . . . if the case continued" favors approval). Defendants disputed nearly every aspect of Lead Plaintiff's claim, and there is no question they would raise every available argument to avoid an adverse judgment if litigation had continued.  Thus, there would also be "significant costs and risks associated with class certification, summary judgment, and trial." *Baron*, 2024 WL 3504234, at *8.  And even if Lead Plaintiff prevailed at trial, Defendants would undoubtedly engage in "vigorous post-trial motion practice . . . and likely appeals to the Ninth Circuit—delaying any recovery for years." *Baker*, 2020 WL 4260712, at *7; *see also Baron*, 2024 WL 3504234, at *8 (difficulties of proof and costs of litigating securities fraud class action through trial "weigh heavily in favor of approving the Proposed Settlement Agreement").  The Settlement spares the Settlement Class from the substantial cost and delay associated with further litigation.  *See Farrar*, 2023 WL 5505981, at *7 (elimination of "costs, risks, and delay strongly suggests the Settlement's adequacy").

It is exceedingly difficult to compare the Settlement to any theoretical amount that the Settlement Class could have potentially obtained from Defendants given the uncertainties outlined above.  "Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).  Thus, the immediate

18

23cv01216

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

and substantial recovery offered by the Settlement appropriately accounts for the not insubstantial risk that Lead Plaintiff could receive much less, or nothing at all, if the case continued on. Indeed, because of the inherent risk, cost, and delay of successfully litigating securities class action lawsuits through trial and appeal, courts regularly approve securities settlements that provide a similar, or even lower, recovery. *See, e.g.*, *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6 (N.D. Cal. May 6, 2024) (settlement for 5.2% of total damages supported final approval); *Hardy v. Embark Tech., Inc.*, 2024 WL 1354416, at *5 (N.D. Cal. Sept. 26, 2023) (same for 1% of damages); *Lyft*, 2023 WL 5068504, at *6 (same for 3.2% of damages); *Kendall*, 2022 WL 1997530, at *5 (same for 3.49% of damages). As such, the Settlement provides a fair and reasonable recovery at any stage of the litigation, but particularly here because costs remained relatively low and significant uncertainty remained on a multitude of issues yet to be litigated.

**<u>Effectiveness of Proposed Method for Distributing Relief</u>**. Rule 23(e)(2)(C)(ii) calls for the court to weigh to potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." This analysis requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).

Here, the method for processing claims and distributing relief to eligible Claimants is well-established and effective. As noted above, Lead Plaintiff has ascertained potential Settlement Class members from transfer records maintained by Defendants and has worked with nominee holders to provide the Notice to clients of theirs who may be part of the Settlement Class. In an abundance of caution, Lead Plaintiff has also published notice in a national newswire about the Settlement that directs potential claimants to Settlement website with additional information about the Settlement. Claimants are required to submit records establishing all relevant transactions in ImmunityBio securities and have an opportunity to cure any deficiencies or request that the Court review a denied claim. These procedures are necessary insofar as neither Lead Plaintiff nor Defendants

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

possess the trading data necessary for a claims-free process and are regularly held to be "effective" in securities class actions. *See, e.g.*, *Baron*, 2024 WL 3504234, at *9 (finding nearly identical procedures "effective" for preliminary approval in securities class action); *accord Farrar*, 2023 WL 5505981, at *7; *Hessefort v. Super Micro Computer, Inc.*, 2023 WL 7185778, at *5 (N.D. Cal. May 5, 2023); *Schneider v. Champignon Brands Inc.*, 2023 WL 11944374, at *8 (C.D. Cal. Feb. 28, 2023).

**Proposed Award of Attorneys' Fees**. Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Co-Lead Counsel is applying for a fee award of 30% of the Settlement Amount. As explained more fully in the accompanying motion for award of attorneys' fees, the requested award is reasonable considering the work performed and results obtained. Moreover, the Settlement is not contingent on any ruling with respect to attorneys' fees (Stipulation ¶¶ 7.0, 8.3), which further supports preliminary approval. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at *8 (N.D. Cal. Feb. 10, 2022) (settlement raises no "red flags" for purposes of Rule 23(e)(2)(C)(iii) when it is "not conditioned upon any award of attorneys' fees").

**Rule 23(e) Agreements**. Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties here have entered into a confidential Supplemental Agreement that establishes conditions under which ImmunityBio may terminate the Settlement if those totaling a certain amount ImmunityBio stock "opt out" of the Settlement. "[T]his type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *Baron*, 2024 WL 3504234; *see also Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *9 (S.D. Cal. Dec. 18, 2019) (similar). Its terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts" for themselves at the expense of other Settlement Class members. *Farrar*, 2023 WL 5505981, at *10; *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("[O]pt-out deals are not uncommon as they are designed to

ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### 4.    The Settlement Treats All Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Such is the case here.  As explained more fully below in Point V.B, the proposed Plan of Allocation is designed to distribute to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its "Recognized Losses" divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Thus, while each Authorized Claimant will receive a different amount, "it is reasonable to allocate the settlement funds to class members based on the extent of their injuries."  *Illumina*, 2019 WL 6894075, at *8.

The Notice advises Settlement Class members that Lead Plaintiff plans to request a service award in an amount not to exceed $15,000—which, at most, represents 0.14% of the Settlement Amount—to compensate him for time spent pursuing the matter on behalf of the Class, including meeting with counsel, overseeing the developments in the matter, and participating in discovery and settlement.  Such awards are "fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958.  The PSLRA also permits the award of "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party."  15 U.S.C. § 78u-4(a)(4).  It is not uncommon for courts to approve a service award of $10,000 or more for similar work by a lead plaintiff. *See Fleming v. Impax Labs. Inc.*, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) (award of $15,000 in securities case "not per se unreasonable" for preliminary approval); *Raffin v. Medicredit, Inc.*, 2018 WL 8621204, at *7 (C.D. Cal. Nov. 30, 2018) (granting $15,000 award to representative who produced documents, sat for deposition, and participated in various motion and settlement discussions); *see also Mandalevy*, 2022 WL 4474263, at *11 (award comprising .27% of settlement amount was reasonable).

1

2

3

       **5.**     **Application of the Remaining *Hanlon* Factors Supports Approval**

    Many of the *Hanlon* factors are already addressed above. Consideration of the remaining *Hanlon* factors further confirms that final approval is warranted.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

    <u>**Reaction of the Settlement Class**</u>. The reaction of the class to the proposed settlement is a "significant factor" weighing on its adequacy. *Delacruz v. CytoSport, Inc.*, 2014 WL 12648451, at *7 (N.D. Cal. Jul. 1, 2014). Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043. Pursuant to the Preliminary Approval Order, Epiq has sent more than 40,000 copies of the Notice to potential Settlement Class members or nominees. *See* Mahan Decl. ¶¶ 6-8. While the deadline set by the Court for Settlement Class members to lodge objections (May 23, 2025) has not yet passed, the fact that there have been no objections to the Settlement or requests to be excluded from the Settlement to date, is strong evidence that it is fair, reasonable, and adequate, if not highly favorable. *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 ("[t]he complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support" and "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate"); *see also, e.g.*, *Ali*, 2024 WL 5179910, at *8 (lack of objections or exclusions in securities settlement "weighs in favor of settlement"); *Derr v. Ra Medical Sys., Inc.*, 2022 WL 21306534, at *6 (S.D. Cal. Sept. 23, 2022) (same); *Kendall*, 2022 WL 1997530, at *6 (same). To the extent there are any objections to the Settlement lodged after this filing, they will be addressed in Lead Plaintiff's reply, due May 30, 2025.

23

24

25

26

27

28

    <u>**Discovery Conducted to Date and Stage of Proceedings**</u>. The focus of this inquiry is whether the parties "carefully investigated the claims before reaching a resolution." *Hardy*, 2024 WL 1354416, at *5. As the Ninth Circuit has held, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Thus, "[t]he fact that formal discovery was

in its early stages does not weigh against final approval." *Stable Road*, 2024 WL 3643393, at *9. On the contrary, the exchange of initial information can further support a finding that counsel's assessment of the claims was "well-informed." *Id.*

Here, Lead Counsel conducted an extensive pre-suit investigation that included, among other things, a review of government records documenting the conditions at the facility where Anktiva was manufactured as well as other historic records maintained at that facility, interviews with former employees of ImmunityBio and its relevant business partners, and consultation with experts in the field of classwide damages and the FDA regulatory approval process. *See* D'Aloia Decl. ¶¶ 10-12. Following the filing of the FAC, the Parties thoroughly briefed the sufficiency of the FAC, where Lead Plaintiff vigorously and successfully opposed Defendants' MTD. *See* D'Aloia Decl. ¶¶13-14 After failing to reach a resolution at the ENE, the Parties pressed forward with discovery requests, conducted multiple meet-and-confers, and exchanged many thousands of pages of documents that assisted Lead Counsel in assessing the merits of the case. *Id.* ¶¶ 19-25, 28-30. The Parties also exchanged detailed mediation statements addressing liability and damages before mediation with Mr. Melnick along with supporting documentary evidence, further allowing the Parties to assess the merits of their positions. *Id.* ¶¶ 34. The Parties continued to earnestly negotiate post-mediation, further illuminating core issues and positions, and providing ample opportunity to assess the strengths and weaknesses of the claims. *Id.* ¶¶ 35-37.

A nearly identical set of circumstances supported a finding that the plaintiff in a recent securities class action settlement "conducted sufficient discovery to make an informed decision about the adequacy of the settlement." *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *7 (N.D. Cal. Mar. 4, 2024). Many other securities cases throughout the Ninth Circuit have reached the same result on similar facts. *See, e.g.*, *Stable Road*, 2024 WL 3643393, at *9 (pre-suit investigation involved interviews with former employees and plaintiff received initial document production); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *7 (C.D. Cal. Dec. 13, 2022) (parties engaged in "preliminary

discovery" and participated in a full day mediation); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *6 (S.D. Cal. Nov. 30, 2021) (plaintiff extensively investigated claims and parties exchanged informal discovery ahead of mediation). Indeed, Lead Plaintiff secured the Settlement at a uniquely advantageous stage of the proceedings, by which time he had accumulated sufficient public and non-public information to make an informed decision but before bearing the substantial costs associated with class certification and/or completing merits discovery.

## B.    The Plan of Allocation Should Be Approved

As set forth in the long-form Notice, the Net Settlement Fund will be divided among Settlement Class members who submit timely and valid Claims in accordance with the Plan of Allocation described therein. ECF No. 80-2 at E79. A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. A plan of allocation "need not be perfect." *Brown v. Brewer*, 2012 WL 12882380, at *1 (C.D. Cal. Jan. 18, 2012). Rather, an allocation formula that has a "reasonable, rational basis" satisfies the requirement, "particularly if recommended by competent class counsel." *Id.* Generally, a plan of allocation that reimburses class members based on the extent of their injuries is reasonable. *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018).

As described in the Notice, the Plan of Allocation was developed with the assistance of Lead Plaintiff's damages expert and designed to equitably distribute the Net Settlement Fund to Authorized Claimants based on their respective economic losses as a result of the alleged fraud, as opposed to market-wide factors, industry-wide factors, or company-specific factors unrelated to the alleged fraud. *See* ECF No. 80-2 at E79-E80. Each Authorized Claimant's economic losses attributable to the fraud are calculated using the Recognized Loss formula. *Id.* at E79. The formula depends on several factors, including when the shares were purchased and in what amounts, whether the shares were ever sold, and, if so, when they were sold and for what amounts. *Id.* at E81. The Net Settlement Fund will then be distributed to each Authorized Claimant on *pro rata* basis based on the

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

1    amount of their Recognized Loss relative to the total Net Settlement Fund. *Id.* at E83. If

2    the Recognized Loss is less than $10.00, then no distribution will be made. *Id.*

3          Courts have found nearly identical allocation plans to be fair, reasonable, and

4    adequate in other securities class action settlements. *See, e.g.*, *Ali*, 2024 WL 5179910, at

5    *9 (collecting cases). Indeed, plans of this type are "customary" and "standard" in

6    securities class action settlements. *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024

7    WL 5112227, at *5 (N.D. Cal. Dec. 13, 2024). The fairness of the plan is not disturbed

8    by the provision not to pay *de minimis* claims less than $10. Such small checks are

9    frequently discarded by recipients and "cause a disproportionate administrative expense

10   to the fund," and, thus, other Settlement Class members. *In re MGM Mirage Sec. Litig.*,

11   708 F. App'x 894, 897 (9th Cir. 2017). For this reason, courts regularly approve plans

12   with similar minimum thresholds. *Id.*; *see also Baron*, 2024 WL 3504234, at *11 (same);

13   *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2023) (same),

14   *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

15         Moreover, the lack of any objections to the Plan of Allocation after distributing the

16   Notice provides further evidence that it is fair. *See Mauss*, 2018 WL 6421623, at *4.

17   **VI.    CONCLUSION**

18         The complexity of the facts, the substantial expenses if this litigation were to

19   continue, and the risks attendant to prevailing, weigh heavily in favor of accepting a

20   recovery of $10.5 million. The Settlement presents a sizable, immediate, and certain

21   benefit to the Settlement Class. Accordingly, Lead Plaintiff respectfully requests that this

22   Court approve the Settlement, and Plan of Allocation as fair, reasonable and adequate;

23   certify the Settlement Class for settlement purposes; and enter Final Judgment in the form

24   previously submitted to the Court as Exhibit E to the Stipulation. ECF No. 80-2 at E106.

25

26

27

28

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

1   Dated: May 14, 2025                    **POMERANTZ LLP**

2
                                           */s/ Justin D. D'Aloia*
3                                          Jeremy A. Lieberman (*pro hac vice*)
                                              (NY Bar # 4161352)
4                                          Justin D. D'Aloia (*pro hac vice*)
                                              (NY Bar # 4935979)
5                                          600 Third Avenue, 20th Floor
                                           New York, New York 10016
6                                          Telephone:  (212) 661-1100
                                           Facsimile:  (212) 661-8665
7                                          jalieberman@pomlaw.com
                                           jdaloia@pomlaw.com
8

9
                                           Jennifer Pafiti (SBN 282790)
10                                         1100 Glendon Avenue, 15th Floor
                                           Los Angeles, California  90024
11                                         Telephone:  (310) 405-7190
                                           Facsimile:  (917) 463-1044
12                                         jpafiti@pomlaw.com

13
                                           *Counsel for Lead Plaintiff and Co-Lead*
14                                         *Counsel for the Proposed Settlement Class*

15                                         **HOLZER & HOLZER, LLC**
                                           Corey D. Holzer (*pro hac vice*)
16                                         211 Perimeter Center Parkway
                                           Suite 1010
17                                         Atlanta, Georgia 30346
                                           Telephone:  (770) 392-0090
18                                         Facsimile:  (770) 392-0029
                                           cholzer@holzerlaw.com
19

20
                                           *Counsel for Lead Plaintiff and Co-Lead*
21                                         *Counsel for the Proposed Class*

22

23

24

25

26

27

28

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT