**POMERANTZ LLP**
Jennifer Pafiti (SBN 282890)
Justin D. D'Aloia (*pro hac vice*) (NY Bar # 4935979)
600 Third Avenue, 20th Floor
New York, New York   10016
Telephone:  (212) 661-1100
jpafiti@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Lead Plaintiff Dipak Patel and*
*Lead Counsel for the Proposed Settlement Class*

— additional counsel on signature page —

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SECURITIES LITIGATION | No. 3:23-cv-01216-GPC-VET <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge:  Hon. Gonzalo P. Curiel <br> Date: June 13, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 2D |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................3
  A.    Relevant Procedural History .................................................................3
  B.    Work by Co-Lead Counsel to Secure a Swift Resolution....................3

III.    LEGAL STANDARD ........................................................................................5

IV.    THE REQUESTED FEE AWARD IS FAIR AND REASONABLE......................6
  A.    Counsel Is Entitled to a Fee Award from the Common Fund.........................6
  B.    The Court Should Award a Reasonable Percentage of the Common Fund....6
  C.    The Fee Request Is Supported by All Relevant Factors ...............................8
    1.    The Results Achieved Are Highly Favorable .....................................9
    2.    The Risks and Complexity of the Litigation Were High ...................10
    3.    Co-Lead Counsel Skillfully Managed the Case................................12
    4.    Co-Lead Counsel Assumed Significant Financial Risk....................13
    5.    Fee Awards in Similar Cases Support the Fee Request....................15
    6.    The Settlement Class's Reaction Supports the Fee Award ...............16
    7.    The Fee Request Is Supported by a Lodestar Crosscheck.................17

V.    CO-LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED .................19

VI.    THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED....................20

VII.    CONCLUSION..................................................................................................22

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

# TABLE OF AUTHORITIES

**Cases**                                                                                             **Page(s)**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) .................................................................................. 11

*Ali v. Franklin Wireless Corp.*,
   2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) ..................................................*passim*

*Atlas v. Accredited Home Lenders Holding Co.*,
   2009 WL 3698393 (S.D. Cal. Nov. 4, 2009).............................................................. 9

*Baker v. SeaWorld Ent., Inc.*,
   2020 WL 4260712 (S.D. Cal. July 24, 2020) ........................................................... 18

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
   2024 WL 5112227 (N.D. Cal. Dec. 13, 2024).......................................................... 8

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)................................................................................................... 6

*Brown v. China Integrated Energy Inc.*,
   2016 WL 11757878 (C.D. Cal. July 22, 2016).................................................. 11, 20

*Davis v. Yelp, Inc.*,
   2023 WL 3063823 (N.D. Cal. Jan. 27, 2023).................................................... 16, 21

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................... 8, 13, 15, 18

*Farrar v. Workhorse Grp., Inc.*,
   2023 WL 5505981 (C.D. Cal. July 24, 2023)...................................................... 8, 19

*Ferreira v. Funko, Inc.*,
   2022 WL 22877154 (C.D. Cal. Dec. 13, 2022)................................................ 8, 9, 15

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) .................................................................................... 6

*Fleming v. Impax Labs., Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) .................................................. 8, 15, 16

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009) ........................................................................... 18

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ........................................................................... 10

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................................... 11

*Hessefort v. Super Micro Comp., Inc.*,
2023 WL 7185778 (N.D. Cal. May 5, 2023) ......................................... 8, 18

*In re Alphabet, Inc. Sec. Litig.*,
2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ............................... 8, 18, 19

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................*passim*

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ......................................... 11

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ..............................................................*passim*

*In re Banc of Cal. Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ......................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................... 7, 8

*In re Brooktree Sec. Litig.*,
915 F. Supp. 193 (S.D. Cal. 1996) ............................................................. 7

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................... 14, 16, 17

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................... 13

*In re Hyundai & Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) ..................................................................... 8

*In re Illumina, Inc. Sec. Litig.*,
2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ............................... 10, 13, 21

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................. 17, 20

23cv01216

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

*In re K12 Inc. Sec. Litig.*,
    2019 WL 3766420 (N.D. Cal. July 10, 2019) ....................................................... 16

*In re Nuvelo, Inc. Sec. Litig.*,
    2011 WL 2650592 (N.D. Cal. July 6, 2011) .......................................................... 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)..........................................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................... 7, 21

*In re Oracle Corp. Securities Litigation*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th
    Cir. 2010) ..................................................................................................... 14

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir 1995) .................................................................... 10, 16

*In re QuantumScape Sec. Class Action*,
    2025 WL 353556 (N.D. Cal. Jan. 22, 2025)...................................................... 15, 16

*In re Splunk Inc. Sec. Litig.*,
    2024 WL 923777 (N.D. Cal. Mar. 4, 2024) ............................................................ 8

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .................................................*passim*

*In re Tezos Sec. Litig.*,
    2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ..................................................... 16

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) .................................................................. 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................................ 6, 14

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................... 9, 16

*Johnson v. US Auto Parts Network, Inc.*,
    2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ....................................................... 10

*Katz v. China Century Dragon Media, Inc.*,
    2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ..................................................... 20

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

*Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 1997530 (S.D. Cal. June 6, 2022) ......................................................*passim*

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ....................................................*passim*

*McMorrow v. Mondelez Int'l, Inc.*,
  2022 WL 1056098 (S.D. Cal. Apr. 8, 2022) ............................................................ 7

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ................................................................................ 5, 7

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................................................... 10

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ................................................................................ 5, 6

*Sawant v. Ramsey*,
  No. 3:07-CV-980 VLB (D. Conn.) ........................................................................ 14

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ............................................................................ 6, 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................................ 6, 20

*Stemple v. QC Holdings, Inc.*,
  2016 WL 11783383 (S.D. Cal. Nov. 7, 2016) ........................................................... 9

*Todd v. STAAR Surgical Co.*,
  2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ........................................................ 21

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................*passim*

*Ziegler v. GW Pharms., PLC*,
  2024 WL 1470532 (S.D. Cal. Apr. 3, 2024) ......................................... 15, 16, 17, 19

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................ 7, 20

Private Securities Litigation Reform Act of 1995 ...............................................*passim*

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 5

**Other Authorities**

7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
    and Procedure § 1803 (3d ed. 2005) ......................................................... 5

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

## TABLE OF DEFINED TERMS

| Defined Term | Definition | Cross Reference |
|---|---|---|
| Action | *In re ImmunityBio, Inc. Securities Litigation*, Case No. 23-cv-01216 | Stip. ¶ 1.0 |
| Authorized Claimants | Settlement Class members who submit timely and valid Proof of Claims | Stip. ¶ 1.1 |
| Claimant | A Person who or which submits a Proof of Claim | Stip. ¶ 1.3 |
| Claims Administrator | Epiq Class Action & Claims Solutions, Inc. | Prelim. Approval Order ¶ 5 |
| Confidential Term Sheet | The memorialized agreement of settlement terms, dated December 19, 2024 | Stip. § 1.A |
| Co-Lead Counsel | Pomerantz LLP and Holzer & Holzer, LLC | Stip. § 1.A |
| Defendants | ImmunityBio, Inc., Richard Adcock, David C. Sachs, and Patrick Soon-Shiong | Stip. at 1 |
| Exchange Act | The Securities Exchange Act of 1934, as amended. | Stip. ¶ 1.10 |
| FAC | The First Amended Complaint | Stip. § 1.A |
| Fee and Expense Application | Any application or applications for payments to Co-Lead Counsel from the Settlement Fund for: (a) an award of attorneys' fees; and (b) reimbursement of actual expenses. | Stip. ¶ 1.11 |
| Fee and Expense Award | The award of fees and expenses defined in Section II.H. of the Stipulation. | Stip. ¶ 1.12 |
| Final | The conditions under which the Settlement are final. | Stip. ¶ 1.13 |
| Holzer | Holzer & Holzer LLC | Stip. at 2 |
| ImmunityBio | ImmuntiyBio, Inc. | Stip. at 1 |
| Lead Plaintiff | Dipak Patel | Stip. at 1 |
| Net Settlement Fund | The Settlement Fund less any Taxes and Tax Expenses, any Fee and Expense Award to Co-Lead Counsel, any compensatory award to Lead Plaintiff approved by the Court, and Notice and Claims Administration Expenses. | Stip. ¶ 1.16 |
| Notice | The Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing. | Stip. ¶ 1.17 |
| Notice and Claims Administration Expenses | An interestbearing escrow account that may be used only to pay Notice and Claim Administration Expenses. | Stip. ¶ 1.19 |

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

| Parties | Collectively: (1) Lead Plaintiff; and (2) Defendants. | Stip. ¶ 1.20 |
|---|---|---|
| Plan of Allocation | The plan or formula for allocating the Net Settlement Fund to Authorized Claimants. | Stip. ¶ 1.22 |
| Pomerantz | Pomerantz LLP | Stip. at 2 |
| Preliminary Approval Order | The order by the Court provisionally certifying the Settlement Class for settlement purposes only. | Stip. ¶ 1.23 |
| Proof of Claim | The Proof of Claim and Release Form to be submitted by Claimants. | Stip. ¶ 1.24 |
| Publication Notice | The Notice of Pendency and Proposed Settlement of Class Action to be published on a national business newswire. | Stip. ¶ 1.25 |
| PSLRA | The Private Securities Litigation Reform Act of 1995 | Stip. Ex. B-1 at 13 |
| Released Defendant Parties | (i) each Defendant, (ii) each of their respective immediate family members (for individuals) and any trust of which any individual defendant is the settler or which is for the benefit of any defendant and/or any member(s) of his family, and (iii) enumerated related persons | Stip. ¶ 1.27 |
| SEC | Securities and Exchange Commission | Stip. at 2 |
| Settlement | The settlement of the Action on the terms set forth in the Stipulation | Stip. ¶ 1.32 |
| Settlement Amount | Ten million five hundred thousand dollars ($10,500,000.00) in cash to be paid pursuant to ¶ 2.0 of the Stipulation | Stip. ¶ 1.34 |
| Settlement Class | All persons who purchased or acquired ImmunityBio, Inc. securities during the Settlement Class Period and were damaged thereby | Stip. ¶ 1.35 |
| Settlement Class Member | Any person or entity that is a member of the Settlement Class that does not exclude himself, herself, or itself by filing a timely request for exclusion in accordance with the requirements set forth in the Notice | Stip. ¶ 1.36 |
| Settlement Class Period | March 10, 2021, to May 10, 2023, inclusive | Stip. ¶ 1.35 |
| Settlement Fund | The Settlement Amount before any authorized expenditures | Stip. ¶ 1.40 |
| Supplemental Agreement | The supplemental agreement between the Parties described in the Stipulation at ¶ 2.13 | Stip. ¶ 1.41 |

23cv01216

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

| Taxes and Tax Expenses | (a) All taxes of any kind on any income earned by the Settlement Fund, together with any interest, penalties, or additions to tax imposed with respect to them; and (b) the reasonable and necessary costs and expenses incurred in connection with the implementation of ¶ 2.10 of the Stipulation | Stip. ¶ 1.42 |
|---|---|---|

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

## NOTICE OF MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:  PLEASE TAKE NOTICE that, on June 13, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Dipak Patel ("**Lead Plaintiff**") will, and hereby does, move this Court, before the Honorable Gonzalo P. Curiel, United States District Judge of the United States District Court for the Southern District of California, in Courtroom 2D of the Edward J. Schwartz United States Courthouse, located at 221 West Broadway, San Diego, California 92101, upon the enclosed Memorandum of Points and Authorities, the accompanying Declarations of Declarations of Justin D. D'Aloia (the "**D'Aloia Declaration**"), Joseph Mahan (the "**Mahan Declaration**"), Corey D. Holzer (the "**Holzer Declaration**"), and Lead Plaintiff Dipak Patel (the "**Patel Declaration**" and together with the D'Aloia Declaration, the Holzer Declaration, and the Mahan Declaration, the "**Declarations**"), including all exhibits attached thereto, and all prior pleadings and proceedings herein, for the entry of an order: (1) awarding attorneys' fees of thirty percent (30%) of the gross Settlement Fund, plus interest at the same rate and for the same period as the Settlement Fund; (2) granting reimbursement of 180,049.92 in reasonable and necessary expenses incurred by Co-Lead Counsel in connection with the prosecution of this Action; and (3) approving a compensatory award to Lead Plaintiff in the amount of $10,000.[1]  A proposed judgment and order will be submitted with the reply papers on or before May 30, 2025, after the deadline for requesting exclusion or objecting to the Settlement has passed.

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set forth in the Stipulation of Settlement, dated January 28, 2025, attached to the Declaration of Justin D. D'Aloia filed on January 8, 2025 (ECF No.80-2) (the "**Stipulation**"), as reproduced in the Table of Defined Terms provided above.  Citations to Exhibits refer to the exhibits attached to the accompanying Declarations.  Unless otherwise noted, all internal citations and quotations are omitted in the Memorandum of Points and Authorities included herein.

23cv01216

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Lead Plaintiff, individually and on behalf of all others similarly situated, respectfully submits this memorandum in support of his Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff (the "**Motion**").

## I.   INTRODUCTION

Through their diligent and effective litigation of this Action, attorneys at Co-Lead Counsel, Pomerantz LLP and Holzer & Holzer, LLC, secured a Settlement for a gross recovery of $10,500,000 in cash for investors who purchased ImmunityBio securities during the Settlement Class Period.  Co-Lead Counsel respectfully submit that the Settlement represents an outstanding recovery under the circumstances, particularly given the procedural posture of the case.  Co-Lead Counsel have not received any compensation for this case since its inception and advanced their own attorney time and money to prosecute this matter.  They now ask the Court to award (i) attorneys' fees totaling 30% of Settlement Amount, totaling $3,150,000, together with interest; (ii) reimbursement of their out-of-pocket litigation expenses; and (iii) a $10,000 award to Lead Plaintiff.

The fee request is fully warranted under the circumstances.  Co-Lead Counsel prosecuted this Action on a wholly contingent basis without any guarantee of remuneration. Despite the risk, Co-Lead Counsel advanced over 2,000 hours of professional time to the prosecution of this matter, representing $1,925,827.75 in legal services.  As compensation for their efforts, Co-Lead Counsel request an award of attorneys' fees in the amount of 30% of the gross Settlement Fund, totaling $3,150,000.  The requested fee amount is justified by the significant expertise that Co-Lead Counsel brought to bear in this matter, as reflected in their preparation of an amended pleading that largely withstood Defendants' motion to dismiss and the entry into a highly favorable Settlement at this stage of litigation. The requested fee amount is also squarely within the typical range of attorneys' fees awarded in similar securities class actions in the Ninth Circuit and justified by a lodestar cross-check.  Indeed, a cross-check against the lodestar yields a ***1.64 lodestar multiplier***, thus confirming that the fee request is reasonable.

Co-Lead Counsel also seeks reimbursement for $180,049.92 in out-of-pocket expenses Co-Lead Counsel incurred in connection with the prosecution of the claims in this Action.  As detailed more fully herein, these expenses were reasonable and necessary for the successful prosecution of this Action and are of the kind regularly reimbursed by courts within this Circuit.

Lead Plaintiff similarly requests a compensatory award of $10,000 for his personal time and effort dedicated to the successful prosecution of this Action for the benefit of the Settlement Class.  Among other things, Plaintiff's efforts have included an in-person meeting with Co-Lead Counsel prior to seeking appointment as Lead Plaintiff, seeking appointment as Lead Plaintiff, representing the Settlement Class throughout the Action by reviewing and approving court filings, overseeing Co-Lead Counsel through periodic communications, responding to Defendants' discovery, and approving the Settlement. These types of efforts are regularly compensated by courts in this Circuit.

Notably, these requests appear to enjoy unanimous support from the Settlement Class.  Following the Court's preliminary approval of the Settlement on March 17, 2025, Notices were sent to almost 40,000 potential Settlement Class Members.  The Notices informed Settlement Class Members that Co-Lead Counsel intended to apply for an award of attorney fees in an amount not to exceed 33 and ⅓% of the Settlement Amount; reimbursement of litigation expenses up to $200,000; and a compensatory award to Lead Plaintiff in an amount not to exceed $15,000.  The Notices also explained that Settlement Class members had the right to object to any part of the proposed Settlement or exclude themselves from the Settlement.  To date, Settlement Class members have not filed *any* objections to these requests, or *any* requests to be excluded, providing strong evidence that the requests are reasonable under the circumstances.

Thus, Lead Plaintiff and Co-Lead Counsel respectfully request that the Court grant the Motion in full.

## II.    BACKGROUND

### A.    Relevant Procedural History

A detailed description of the procedural history, Settlement negotiations, and considerations leading to the Settlement are set forth in Point II of Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement filed concurrently herewith, which is incorporated by reference herein.

### B.    Work by Co-Lead Counsel to Secure a Swift Resolution

From the beginning of this Action, success was far from certain. The Action arises from the Food and Drug Administration ("**FDA**")'s rejection of Anktiva, a cell fusion protein designed by ImmunityBio to treat bladder cancer, due to manufacturing issues observed by the FDA during its pre-license inspection at third-party facilities used by ImmunityBio to manufacture the drug. Thus, to survive dismissal under the heightened pleading requirements imposed by the PSLRA, Lead Plaintiff needed to allege with particularity that: (i) Defendants made false or misleading statements concerning ImmunityBio's compliance with the FDA's minimum standards for drug manufacturing known as current good manufacturing practices ("**cGMP**") at the facilities where Anktiva was made and the prospects for FDA approval of Anktiva; (ii) Defendants made these statement with knowledge that they were materially false or misleading, or in reckless disregard of the fact that they were materially false or misleading; and (iii) investors suffered injury as a result thereof.

As detailed in the FAC, biologics like Anktiva are complex living organisms, and the process used to manufacture them requires an array of highly technical steps, each of which must be carefully controlled to ensure a consistent finished product free from impurities. FAC ¶ 5. For this reason, the manufacture of such products is heavily regulated by the FDA. *Id.* ¶ 44. In addition, the process used by the FDA to review new drugs like Anktiva is subject to an equally byzantine thicket of regulations and associated guidance. *Id.* ¶¶ 40-49. Accordingly, Co-Lead Counsel relied on attorneys deeply familiar with these matters with extensive experience litigating similar claims. D'Aloia

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

Decl. ¶¶ 10. To bolster the chances of defeating a motion to dismiss, Co-Lead Counsel engaged an FDA regulatory expert to assist with their review, interpretation, and presentation of that information. *Id.* ¶¶ 11. In addition, Co-Lead Counsel hired (i) an economic consultant to review the movement of ImmunityBio's stock and assess damages; and (ii) a private investigator to conduct interviews with former employees of ImmunityBio and its business partners potentially knowledgeable about the subject of the Action. *Id.*

Working together in lockstep with these professionals, Co-Lead Counsel engaged in extensive work to prosecute the Action and achieve the Settlement at this stage of the proceedings, which has included, among other things: (i) reviewing and analyzing ImmunityBio's Class and pre-Class period SEC filings, press releases, quarterly earnings calls and industry conference transcripts, analyst statements, or other sources of relevant public information; (ii) reviewing and analyzing stock trading data relating to the Company; (iii) consulting with economic experts on issues such as loss causation and market efficiency; (iv) consulting with a subject matter expert regarding technical issues, such as biopharmaceutical manufacturing and cGMP requirements; (v) retaining a private investigator to interview numerous former employees potentially knowledgeable about the subject matter of the Action; (vi) filing the initial complaint; (vii) successfully petitioning for appointment as Lead Plaintiff and Lead Counsel; (viii) obtaining relevant non-public FDA records through government information requests to bolster the allegations and locate additional witnesses; (ix) based on the results of further investigation, consultation with the subject matter expert, and review of government documents, amending the complaint further to amplify the allegations in an effort to meet the heightened standards under the PSLRA; (x) preparing a vigorous opposition to, and ultimately defeating, Defendants' motion to dismiss the amended complaint; (xi) negotiating an ESI protocol and a protective order, leading to orders governing both issues; (xii) briefing in preparation for, and attending, the early neutral evaluation conference ("ENE") and engaging in initial discussions to get an understanding of the Parties' positions; (xiii) propounding discovery

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

on Defendants and key third parties through written discovery requests and/or the issuance of subpoenas; (xiv) engaging in multiple, concurrent meet and confers to narrow discovery issues on a range of topics; (xv) receiving and providing discovery responses, including response to interrogatories and requests for production of documents; (xvi) drafting and exchanging mediation statements in anticipation of mediation with Jed Melnick, Esq.; (xvii) attending an all-day mediation; (xviii) engaging in further negotiations post-mediation culminating in an agreement in principle to settle for $10.5 million; (xix) negotiating and executing a Confidential Term Sheet; (xx) conducting further talks to finalize the terms of a Stipulation and its Exhibits thereafter; (xxi) successfully petitioning the Court for preliminary approval of the proposed Settlement; (xxii) complying with all terms set forth in the Court's Preliminary Approval Order to date; (xxiii) drafting the Final Approval Brief; and (xxiv) preparing for the Final Approval Hearing. *See* D'Aloia Decl. ¶¶11-46.

Lead Counsel's efforts to obtain the Settlement have been without compensation to date and were wholly contingent upon the result achieved. *Id.* ¶68.

## III.    LEGAL STANDARD

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In this regard, the Ninth Circuit has long recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022). The authority to award such costs is rooted in the Court's equity power. *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *see also* 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1803, at 325 (3d ed. 2005) (explaining equitable basis of common fund doctrine). Indeed, the fundamental purpose of this rule is to prevent absent class members from being unjustly enriched at the expense of those who created the fund. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

271 (9th Cir. 1989) (inequity is avoided when the court "assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited"). The proper amount of fees and costs to award from the fund rests within the sound discretion of the Court. *See Apple*, 50 F.4th at 778.

## IV.    THE REQUESTED FEE AWARD IS FAIR AND REASONABLE

Co-Lead Counsel request attorneys' fees in the amount of thirty percent (30%) of the $10.5 million Settlement Amount, totaling $3,150,000, plus interest earned on that amount at the same rate and for the same period as that earned by the Settlement Fund. As explained more fully below, this fee request is fair and reasonable, and well within the range of fees typically awarded in similar class action settlements.

### A.    Counsel Is Entitled to a Fee Award from the Common Fund

It is black letter law that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (similar). The policy rationale of this rule—known as the common fund doctrine—is to avoid inequity. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (*WPPSS*); *see also Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (assessing costs for legal services against the fund "spread[s] fees proportionately among those benefited by the suit"). Ultimately, the fee award must be "reasonable under the circumstances." *Rodriguez*, 688 F.3d at 653.

The Settlement here establishes an interest-bearing common fund consisting of $10.5 million in cash for the benefit of the Settlement Class. Accordingly, Co-Lead Counsel are entitled a reasonable share of those proceeds for their services.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

Attorneys' fees in common fund cases may be awarded using either the "percentage-of-fund" or the "lodestar" method. *Stanger v. China Elec. Motor, Inc.*, 812

F.3d 734, 738 (9th Cir. 2016).  The percentage-of-fund approach, as the name suggests, simply means a portion of the common fund, whereas the lodestar approach multiplies the hours expended on the case by a reasonable hourly rate, subject to further adjustment based on less objective factors.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (discussing factors relevant to "risk multiplier" for lodestar).

The Ninth Circuit first approved the percent-of-fund approach for common fund cases in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).  Since then, it has become the "prevailing" method for calculating attorneys' fees in common fund cases.  *McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *5 (S.D. Cal. Apr. 8, 2022); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (observing that percentage-of-fund is the "dominant" approach).  This is because the percentage-of-fund approach rewards class counsel for the results obtained rather than hours billed, thus aligning the interests of counsel with those of the class.  *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *8 (S.D. Cal. Nov. 30, 2021); *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996).  In addition, the percentage-of-fund method conserves judicial resources by obviating the need for the "time-consuming task of calculating the lodestar."  *Bluetooth*, 654 F.3d at 942.  In contrast, the lodestar method "creates incentives for counsel to expend more hours than may be necessary" because it "does not reward early settlement."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002); *see also* Manual for Complex Litigation § 14.121, at 188 (4th ed. 2004) ("In practice, the lodestar method is difficult to apply, time consuming to administer, inconsistent in result, and capable of manipulation.").

In addition, the PSLRA itself provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable *percentage* of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 78u-4(a)(6) (emphasis added).  "By using this language, Congress plainly contemplated that percentage-of-recovery would be the primary measure of

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

attorneys' fees awards in federal securities class actions." *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014); *see also Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *10 (S.D. Cal. Dec. 19, 2024) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.") (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012)).

As a result, courts consistently apply the percentage approach in securities class actions settled through the formation of a common fund. *See, e.g.*, *Ali*, 2024 WL 5179910, at *10; *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024 WL 5112227, at *6 (N.D. Cal. Dec. 13, 2024); *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *5-6 (N.D. Cal. Sept. 30, 2024); *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024); *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *8 (C.D. Cal. July 24, 2023); *Hessefort v. Super Micro Comp., Inc.*, 2023 WL 7185778, at *8 (N.D. Cal. May 5, 2023); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *8 (C.D. Cal. Dec. 13, 2022); *Fleming v. Impax Labs., Inc.*, 2022 WL 2789496, at *8 (N.D. Cal. July 15, 2022); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022); *Khoja*, 2021 WL 5632673, at *8; *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016).

For all these reasons, the Court should award attorneys' fees based on the percentage-of-recovery method.

## C.    The Fee Request Is Supported by All Relevant Factors

The Ninth Circuit has established 25% as the "benchmark" for percentage-of-fund awards in *all* common fund settlements. *Bluetooth*, F.3d at 942. However, the benchmark can be "adjusted upward or downward, depending on the circumstances." *Apple*, 50 F.4th 769; *accord In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). As a practical matter, the award in complex securities class actions often exceeds the benchmark. *See Omnivision*, 559 F. Supp. 2d at 1047-49 (collecting authority).

Relevant factors in assessing whether the requested fee percentage is appropriate include: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the associated financial burden; (5) awards made in similar cases; (6) the reaction of the class to the fee request; and (7) the outcome of a lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (summarizing Ninth Circuit precedent); *see also Vizcaino*, 290 F.3d at 1048-50. Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). As explained below, all factors support a fee award of 30% of the common fund.

### 1. The Results Achieved Are Highly Favorable

The first and "most important factor" in evaluating a request for attorneys' fees is the "overall result and benefit to the class from the litigation." *Stemple v. QC Holdings, Inc.*, 2016 WL 11783383, at *3 (S.D. Cal. Nov. 7, 2016). The $10.5 million Settlement Fund, which was paid within 30 business days of the Court's Preliminary Approval Order, without the possibility of any reversion to Defendants, represents over 8% of the Lead Plaintiff's best-case estimate for recoverable damages, assuming success at trial, of $130.6 million. *See* D'Aloia Decl. ¶48. As other cases have recognized, a recovery in this range is well above average for such matters. *See Omnivision*, 559 F. Supp. 2d at 1046 (9% recovery is "more than triple the average recovery in securities class action settlements" and a "substantial achievement on behalf of the class"); *see also Stable Rd.*, 2024 WL 3643393, at *12 (recovery of 10.5% in securities fraud case is "two and a half times the typical recovery for cases of a similar magnitude"); *Ferreira*, 2022 WL 22877154, at *8 (similar for 8.7% recovery in securities case); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (10% recovery is a "favorable outcome"). Such a recovery justifies a fee award on the upper end of those typically awarded and warrants an upward adjustment from the 25% benchmark. *See Ali*, 2024

WL 5179910, at *11 (settlement for 12.9% of damages "weigh[s] in favor of an upward adjustment from the 25% benchmark"); *Kendall*, 2022 WL 1997530, at *6 (same for settlement for 3.49% of maximum damages because it is "above" median recovery in securities class actions). The favorable result, which has been overwhelmingly supported by the Class Members, given the considerable risks faced by Lead Plaintiff and Co-Lead Counsel in pursuing a securities case, supports the requested fee.

### 2. The Risks and Complexity of the Litigation Were High

The requested fee is also justified because Co-Lead Counsel secured the above-average recovery in the face of substantial risks and uncertainties, heightened by the fact that the claims could be defeated at summary judgment or trial, or as a result of an appeal. *See Vizcaino*, 290 F.3d at 1048 (that the case is "fraught with risk and recovery [is] far from certain" is "a relevant circumstance" that courts must take into account); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir 1995) (33% fee justified by "complexity of the issues and the risks"). Such risks must be measured as they appeared at the outset of the matter. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("[L]itigation risk must be measured as of when the case is filed.").

Securities class actions are notoriously "complex and risky for plaintiffs counsel." *Ali*, 2024 WL 5179910, at *11; *see also Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."); *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (observing that "a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action" and collecting cases).

This case was no exception. Although Lead Plaintiff largely defeated Defendants' motion to dismiss (ECF No. 63), that result was far from guaranteed. There is a "strong possibility" of dismissal in securities fraud cases due to the "heightened pleading requirements of the [PSLRA]." *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *7

(S.D. Cal. Mar. 17, 2021); *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("[T]he risks of litigation were real and substantial, given the strict requirements imposed by the PSLRA"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PSLRA"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. Ap'x 285 (9th Cir. 2020). As one court put it, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009); *see also Stable Rd.*, 2024 WL 3643393, at *12 ("post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly" in securities cases since 1995).

As detailed more fully in Lead Plaintiff's accompanying Motion for Final Approval of Class Action Settlement, there were also a number of substantial risks to securing a recovery if Lead Plaintiff continued to litigate through discovery, summary judgment, and trial, including problems of proof, the difficulty of establishing scienter with indirect evidence, and the need for multiple expert witnesses on complex topics, such as causation and damages. *See Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) (there were "high risks" to recovery from continued litigation in securities case because "scienter . . . can be particularly difficult to establish" and "much of [Plaintiffs'] evidence would have been expert witness testimony"). Because of these difficult issues of law and fact, favorable jury verdicts are exceedingly rare in securities fraud class actions. *See Omnivision*, 559 F. Supp. at 1047 (highlighting statistic that plaintiffs prevailed in only three jury trials on securities claims between 1996 and 2008). These already high hurdles to recovery are compounded by the fact that manufacturing biologic compounds at commercial scale in accordance with FDA regulations is a highly technical subject matter that many—including the Court or a jury— may find confusing at each stage of the proceedings. *See Amgen*, 2016 WL 10571773, at

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

*9 (risk of continued litigation heightened by "highly technical and complex claims involved"). While Lead Plaintiff believes that his case has real strength, there was simply no guarantee that the case would reach trial or, if it did, that the factfinder would ultimately adopt his views. These substantial risks strongly support the requested fee.

### 3. Co-Lead Counsel Skillfully Managed the Case

The skill required to litigate this Action and the quality of work performed to date further support the fee request. "The prosecution and management of a complex national class action requires unique legal skills and abilities," and this is "particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Stable Rd.*, 2024 WL 3643393, at *13 (same). Indeed, "[t]he difficulty of securities litigation generally—particularly the challenges presented by the PSLRA's pleading requirements—requires skilled counsel familiar with the relevant statutes and case law." *Am. Apparel*, 2014 WL 10212865, at *22.

Here, Co-Lead Counsel are among the most experienced and skilled practitioners in the field of securities litigation, with a long and successful track record in such cases throughout the country, including in this Court. *See* D'Aloia Decl. Exs. D-4, F (firm resumes). But this Action demanded even deeper knowledge and experience than a garden-variety case. Due to the highly technical subject matter of the Action, Co-Lead Counsel relied on attorneys with specialized knowledge of the drug manufacturing process, including applicable FDA regulations, experienced in litigating such claims. *Id.* ¶ 10. They also decided to engage a regulatory expert to assist with their review, interpretation, and presentation of that information throughout the Action. *Id.* ¶ 11.

The skill and expertise that Co-Lead Counsel brought to the table is evident in the quality of their work and the results they achieved. To successfully navigate the challenging terrain imposed by the PSLRA, Co-Lead Counsel conducted an exhaustive investigation into the underlying facts, holding interviews with former employees and procuring a voluminous amount of relevant non-public FDA records through government

information requests. *Id.* Co-Lead Counsel worked with their regulatory expert to synthesize the extensive amount of technical information in these records, procure additional records as necessary, and ensure that relevant information was cogently and persuasively presented in lay terms, with appropriate background information, in the amended pleading. *Id.* That the pleading "withstood" a motion to dismiss without further amendment is a "testament" to their skillful work. *Omnivision*, 559 F. Supp. 2d at 1047; *see also Illumina*, 2021 WL 1017295, at *7 (similar). After defeating the motion to dismiss, Co-Lead Counsel diligently and effectively managed discovery from numerous parties on a highly technical topic while deftly negotiating a potential resolution. D'Aloia Decl. ¶¶ 15-17, 20-22, 24-25, 28-30. Their achievement of an "excellent result" at such an early stage of proceedings is further evidence of their "skill and experience." *Stable Rd.*, 2024 WL 3643393; *see also Vizcaino*, 290 F.3d at 1050 n.5 ("[C]lass counsel should [not] necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief.").

The "quality of opposing counsel" is also relevant in evaluating the quality of the services rendered by counsel. *Destefano*, 2016 WL 537946, at *17; *see also Am. Apparel*, 2014 WL 10212865, at *22 (same); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) (*Heritage Bond I*) (same). Here, Defendants are represented by Wilson Sonsini Goodrich & Rosati, P.C., which staffed the case with prominent and highly skilled attorneys who specialize in defending securities class actions arising from drug manufacturing and forcefully advocated for their clients. D'Aloia Decl. ¶¶ 67. That Co-Lead Counsel swiftly achieved a favorable Settlement in the face of such formidable opponents weighs in favor of the requested fee.

Given the complexity of the issues presented in this Action, only skilled counsel who applied themselves diligently could have obtained such a favorable result.

### 4.    Co-Lead Counsel Assumed Significant Financial Risk

The risk of receiving no payment for legal services extended on a contingency basis

is a significant factor that also weighs in favor of the fee request. *WPPSS*, 19 F.3d at 1299; *see also Vizcaino*, 290 F.3d at 1050 (representation of class on contingency basis is a "relevant circumstance[]" to consider for fee award); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) (*Heritage Bond II*) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Contingency arrangements carry significant consequences, especially in securities cases. As noted above, the PSLRA has increased the difficulty of surviving a motion to dismiss. In addition, many securities cases have been lost on the merits after years of contingent services. For example, in *In re Oracle Corp. Securities Litigation*, the court granted summary judgment to defendants after eight years of litigation, during which plaintiff's counsel incurred over $7 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $40 million. *See* 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010). In addition, securities cases are so lengthy that even seemingly secure victories—achieved after thousands of hours of work—may become unrecoverable due to a sudden shift in law or change in financial circumstances. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 525-34 (S.D.N.Y. 2011) (Supreme Court decision after entry of verdict in plaintiffs' favor reduced $9 billion verdict to approximately $78 million recovery), *aff'd*, 838 F.3d 223 (2d Cir. 2016); *Sawant v. Ramsey*, No. 3:07-CV-980 VLB (D. Conn.) (law firm spent thousands of hours securing trial verdict only to find it impossible to collect on judgment).

Accordingly, it is "an established practice in the private legal market" to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, Economic Analysis of Law, §21.9, at 534-35 (3d ed. 1986)). Fees for contingency cases that exceed the market value of the services provided help ensure competent representation for plaintiffs who could otherwise not afford to pay on an hourly basis. *Id.* Indeed, "[t]his incentive is especially important in securities cases." *Stanger*, 812 F.3d at

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

741; *see also Ferreira*, 2022 WL 22877154, at *9 (fee in excess of hourly rates proper in securities case to encourage counsel to take cases on contingency for plaintiffs that cannot afford to pay hourly rates); *Destefano*, 2016 WL 537946, at *18 (similar); *Am. Apparel*, 2014 WL 10212865, at *22; *Omnivision*, 559 F. Supp. 2d at 1036 (similar).

Here, Co-Lead Counsel litigated this Action on a wholly contingent basis. D'Aloia Decl. ¶ 68, Holzer Decl. ¶ 5. Despite the many challenges posed by the claims, and the potential of not receiving any remuneration for their efforts, Co-Lead Counsel advanced over 2,000 hours in uncompensated time, representing approximately $1,925,827.75 in legal services, and incurred $180,049.92 in out-of-pocket expenses, successfully securing a highly favorable Settlement for the benefit of the Settlement Class. *See* D'Aloia Decl. ¶¶ 60-62, Holzer Decl. ¶¶ 6, 9. This is time and money that could have been devoted to other matters, for which Co-Lead Counsel have received no compensation or payment since the inception of the Action almost two years ago. Thus, Co-Lead Counsel's devotion of substantial resources, without any guarantee of recovery, "strongly favors approval of the requested fee." *Stable Rd.*, 2024 WL 3643393, at *13; *see also In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5-6 (N.D. Cal. Jan. 22, 2025) (30% fee request supported by fact that "Plaintiffs' Counsel pursued this action on a contingent basis, having received no compensation during the Actions"); *Ali*, 2024 WL 5179910, at *11 (same for 33% fee request); *Ziegler v. GW Pharms., PLC*, 2024 WL 1470532, at *10 (S.D. Cal. Apr. 3, 2024) (same for 33% fee request); *Fleming*, 2022 WL 2789496, at *8-9 (same for 30% fee request); *Kendall*, 2022 WL 1997530, at *6 (same for 33% fee request); *Khoja*, 2021 WL 5632673, at *9 (same for 33% fee request).

### 5.    Fee Awards in Similar Cases Support the Fee Request

The 30% fee request is also firmly in line with awards made in cases with "common funds of comparable size." *Vizcaino*, 290 F.3d at 1050 & n.4. As noted above, it is not uncommon for the fee award in securities class actions to exceed the 25% benchmark set by the Ninth Circuit. In this regard, courts regularly grant awards of 30% or more in comparably sized securities class action settlements, particularly when counsel's efforts

are substantial or the results are superior.  *See QuantumScape*, 2025 WL 353556, at *5 (30% of $47.5 million settlement); *Ali*, 2024 WL 5179910, at *11 (33% award of $2.4 million settlement representing 12.9% of damages); *Ziegler*, 2024 WL 1470532, at *10 (33% of $7.75 million settlement representing 1% of damages ); *Davis v. Yelp, Inc.,* 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (33% of $22.25 million settlement); *Fleming*, 2022 WL 2789496, at *8-9 (30% of $33 million settlement representing 12.5% of damages); *Kendall*, 2022 WL 1997530, at *6 (33% of $12.75 million settlement representing 3.49% of damages); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (33% of $25 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (33% of $19.75 million settlement); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (33% of $3.5 million settlement); *Jiangchen*, 2019 WL 5173771, at *9 (33% of $2.05 million settlement representing 10% of damages); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *1 (N.D. Cal. July 6, 2011) (30% of $8.9 million settlement); *see also Vizcaino*, 290 F.3d at 1050 (affirming 28% award of $97 million settlement); *Pac. Enters.*, 47 F.3d at 379 (affirming 33% award of $12 million settlement).  Co-Lead Counsel's fee request is therefore consistent with, if not lower than, fee awards in comparable securities settlements.

### 6.    The Settlement Class's Reaction Supports the Fee Award

"The presence or absence of objections from the class is also a factor in determining the proper fee award."  *Heritage Bond II*, 2005 WL 1594389, at *15.  In total, 40,852 short-form Notices were sent to potential Settlement Class members.  Mahan Decl. ¶¶ 6-8.  The short-form Notice informed potential Settlement Class members that Co-Lead Counsel planned to apply for an award of attorneys' fees "in an amount not to exceed one third (33 and 1/3%) of the gross Settlement Amount."  ECF No. 80-2 at E87-E90.  The short-form Notice also advised Settlement Class members of their right to object to any aspect of the Settlement, including the fee request, or request exclusion.  *Id.*  The deadline to file an objection or request exclusion is May 23, 2025.  ECF No. 89 ¶¶ 13-14.  To date,

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

there has not been *any* objection to the potential fee award or request to be excluded from the Settlement.  D'Aloia Decl. ¶ 73; Mahan Decl. ¶¶ 16, 18.

While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043; *see also Heritage Bond Litig.*, 2005 WL 1594389, at *15-16 ("small" number of objections and opt-outs "justifies an award of one-third of the Settlement Fund").  The 30% fee award sought here is "bolstered" by the fact that "not a single Class Member has objected" after receiving notice of an even higher potential fee.  *Khoja*, 2021 WL 5632673, at *9; *see also Ziegler*, 2024 WL 1470532, at *10 ("[T]he lack of any class member objections also supports the fee award"); *Kendall*, 2022 WL 1997530, at *6 (that no objections to the fee request were filed supports the requested fee award); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("the lack of objection from any Class Member" supports the requested fee award).  The overwhelmingly positive response of the Settlement Class is strong evidence of that the fee request is reasonable under the circumstances.

**7.    The Fee Request Is Supported by a Lodestar Crosscheck**

As a final "cross-check," courts have discretion to compare the percentage-of-fund fee request against counsel's lodestar.  *See Vizcaino*, 290 F.3d at 1050 (the "lodestar may provide a useful perspective on the reasonableness of a given percentage award"); *see also Apple*, 50 F.4th at 784 (a "cross-check is discretionary, but we encourage one when utilizing the percentage-of-recovery method" to confirm reasonableness of fee request).  When used as a "cross-check," the Court need not engage in an "exhaustive" review of counsel's hours, as it would when it is used as the primary method for deciding the fee.  *Am. Apparel*, 2014 WL 10212865, at *23; *see also Immune Response*, 497 F. Supp. 2d at 1176 (the "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting") (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)).  Because it is only used as a "point of comparison . . . the lodestar can be

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

approximate and still serve its purpose." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *10 (S.D. Cal. July 24, 2020); *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("[T]he district court properly performed an informal lodestar cross-check"). Here, the lodestar cross-check confirms the reasonableness of Co-Lead Counsel's fee request.

The lodestar is calculated by multiplying reasonable hourly rates by the number of hours billed by each timekeeper. Excluding work on the fee application, Co-Lead Counsel (including attorneys and professional staff) have devoted a total of 2,092.56 hours to this Action. *See* D'Aloia Decl. ¶¶ 60-62; Holzer Decl. ¶ 6. The hourly rates for these timekeepers range from $375 for paralegals to $1,375 for the senior-most partner. *Id.* Such rates are consistent with those used for the lodestar cross-check in other complex securities class actions. *See, e.g.*, *Ali*, 2024 WL 5179910, at *12 (performing cross-check in securities case using rates ranging from $365 to $1,325); *Alphabet*, 2024 WL 4354988, at *7 (same for rates ranging from $110 to $1,400); *Hessefort*, 2023 WL 7185778, at *9 (same for rates ranging from $275 to $1,350). The resulting lodestar, representing the total value of the services performed on this case by Co-Lead Counsel, is $1,925,827.75. D'Aloia Decl. ¶¶ 60-62; Holzer Decl. ¶ 6. Notably, Lead Counsel's lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Settlement Class by, for example, directing the claims administration process and final distribution, nor does it include the time spent preparing this motion. *Id.*

Compared to the 30% fee request, which totals $3,150,000, the lodestar yields a multiplier of 1.64. This is well within the range of lodestar multipliers found to be reasonable for complex securities class actions, which typically range "between 1 and 4." *Omnivision*, 559 F. Supp. 2d at 1048; *see also, e.g.*, *Stable Rd.*, 2024 WL 3643393, at *15 (multiplier of 1.76 is "well within the range of multipliers commonly awarded in securities class actions and other complex litigation"); *Destefano*, 2016 WL 537946, at *21 (multiplier of 1.7 is "towards the lower end of the Ninth Circuit's scale" and supports fee); *Kendall*, 2022 WL 1997530, at *7 (multiplier of 2.36 is "within the 1 to 4 multiplier

range commonly found to be appropriate"). As noted above (Point IV.C.4), counsel are typically awarded fees above the market value of their services in contingency cases to account for the risk they take on in doing so. Indeed, fees have been approved in other securities class action settlements with multipliers far in excess of that here. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (3.65 multiplier); *Alphabet*, 2024 WL 4354988, at *7 (4.58 multiplier); *Farrar*, 2023 WL 5505981, at *9 (3.14 multiplier); *Ziegler*, 2024 WL 1470532, at *10 (2.87 multiplier is "within the acceptable range of multipliers").

## V.    CO-LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ziegler*, 2024 WL 1470532, at *10; *see also Apple*, 50 F.4th at 785 (confirming that attorneys who create a common fund for the benefit of others "is entitled to recover from the fund the costs of his litigation"). Co-Lead Counsel now seek reimbursement for $180,049.92 in out-of-pocket litigation expenses that were reasonable and necessary to the prosecution of the claims asserted in this Action. D'Aloia Decl. ¶¶ 72, 74-75.

The bulk of Co-Lead Counsel's expenses consist of fees for a damages expert, discovery vendor fees, mediator fees, and investigator fees. *Id*. Exs. D, F. The damages expert was needed to prepare a report for Lead Plaintiff's forthcoming motion for class certification. *Id*. ¶ 76. The remainder of Co-Lead Counsel's expenses consisted primarily of court filing fees, online legal research fees, document hosting fees, travel costs, and other miscellaneous expenses. *Id*. Exs. D, F. Because these expenses were incurred with no guarantee of recovery, Co-Lead Counsel had a strong incentive to avoid, and did incur, unnecessary expenses. *Id*. ¶ 73.

These are precisely "the types of expenses . . . typically incurred by counsel in complex litigation and are routinely charged to clients billed by the hour." *Khoja*, 2021 WL 5632673, at *10 (expert and consultant fees, legal research costs, travel, printing, mediation fees, court filing fees). Accordingly, courts routinely find that nearly identical expenses are properly charged to the Settlement Class in class actions, including securities

cases. *See Immune Response*, 497 F. Supp. at 1177-78 (granting reimbursement of $261,971.79 for travel expenses, photocopies, filing fees, online legal research, class action notices, experts, consultants, and investigators, and mediation fees); *see also, e.g.*, *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) (same for filing fees, mediation fees, private investigation fees, notice fees, expert consulting costs, photocopying, online legal research, and travel).

The lack of any objections to Co-Lead Counsel's anticipated expenses further supports approval. In the Notice, Settlement Class members were advised that Co-Lead Counsel planned to request reimbursement of litigation expenses in an amount not to exceed $200,000. D'Aloia Decl. ¶ 41. The lack of any objections to that amount—which is even more than that sought by Co-Lead Counsel—provides further support for the expense request. *See Brown*, 2016 WL 11757878, at *13 (the "lack of any objectors to the proposed reimbursement of costs" supported the request for reimbursement).

Co-Lead Counsel do not yet know the Claims and Administration costs that will be incurred by the Claims Administrator, as the bulk of those expenses are typically incurred in connection with the claims administration process. A detailed breakdown of Epiq's fees will be included in the motion to approve distribution of the Net Settlement Fund to the Settlement Class.

## VI. THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED

Lead Plaintiff also requests that the Court award him $10,000 in connection with his representation of the Settlement Class. The PSLRA specifically authorizes the Court to award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to any "representative party serving on behalf of a class" in a securities fraud action. 15 U.S.C. § 78u-4(a)(4). In common fund cases, named plaintiffs are also "eligible for reasonable incentive payments" in addition to reimbursement for their "litigation expenses, and identifiable services rendered to the class directly under the supervision of class counsel." *Staton*, 327 F.3d at 977; *see also Apple*, 50 4.th at 786 (confirming that "incentive" awards from common fund are common and proper).

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

Lead Plaintiff dedicated between 10 and 20 hours of his personal time and effort to prosecuting the Action. Patel Decl. ¶ 8. He met personally with his counsel prior to seeking appointment as Lead Plaintiff, received copies of complaints and motion papers for review, assisted with responding to Defendants' discovery requests, regularly communicated with Co-Lead Counsel and was apprised of developments in the case so that he could fulfill his role in overseeing the litigation. *Id.* ¶ 4. In addition, Lead Plaintiff communicated with Lead Counsel in advance of and during the settlement negotiations and his efforts have played an instrumental part in securing the Settlement. As such, his request for modest compensatory awards are reasonable. *Id.* Without Patel's participation, the Settlement would not have been achieved. *See* D'Aloia Decl. ¶ 78.

The requested compensatory award of $10,000 is fair and reasonable. Courts in this district have regularly approved of awards of $10,000 or more to those who perform similar activities for the benefit of absent class members. *See, e.g., In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 in incentive award to one plaintiff and $27,000 total); *see also Stable Rd.*, 2024 WL 3643393, at *16 (granting $10,000 award to lead plaintiff or similar work); *Davis*, 2023 WL 3063823, at *2 (awarding $15,000 for sole lead plaintiff); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) (awarding $10,000 to lead plaintiff collecting cases).

The Ninth Circuit has stated that when deciding whether an incentive award is reasonable and fair, it takes into consideration the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (rejecting arguments that incentive awards were unreasonably large where nine class representatives each received awards of $5,000 (or $45,000 in total), which made up only .17% of the total settlement fund of $27,250,000). The proposed compensatory award makes up less than a tenth of a single percent (.10%) of the total Settlement Fund.

In addition, the lack of any objections to the proposed award to Lead Plaintiff—which the Notice stated would not exceed $15,000—reinforces the conclusion that it is

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

reasonable under the circumstances.  *See Khoja*, 2021 WL 5632673, at *11 (granting $9,230 award to lead plaintiff when "no Class Member has objected" after receiving notice).

## VII.   CONCLUSION

For the foregoing reasons, the Court should (1) award attorneys' fees to Co-Lead Counsel is the amount of thirty percent (30%) of the Settlement Fund, together with interest thereon; (2) grant reimbursement of $180,049.92 in litigation expenses incurred by Co-Lead Counsel in connection with the prosecution of this Action; and (3) approve an award to Lead Plaintiff in the amount of $10,000.

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

Dated: May 14, 2025                          Respectfully submitted,


                                             **POMERANTZ LLP**

                                              */s/ Justin D. D'Aloia*
                                             Jeremy A. Lieberman (*pro hac vice*)
                                                (NY Bar # 4161352)
                                             Justin D. D'Aloia (*pro hac vice*)
                                                (NY Bar # 4935979)
                                             600 Third Avenue, 20th Floor
                                             New York, New York 10016
                                             Telephone:  (212) 661-1100
                                             Facsimile:  (212) 661-8665
                                             jalieberman@pomlaw.com
                                             jdaloia@pomlaw.com

                                             Jennifer Pafiti (SBN 282790)
                                             1100 Glendon Avenue, 15th Floor
                                             Los Angeles, California  90024
                                             Telephone:  (310) 405-7190
                                             Facsimile:  (917) 463-1044
                                             jpafiti@pomlaw.com


                                             *Counsel for Lead Plaintiff and Co-Lead*
                                             *Counsel for the Proposed Settlement Class*

                                             **HOLZER & HOLZER, LLC**
                                             Corey D. Holzer (*pro hac vice*)
                                             211 Perimeter Center Parkway
                                             Suite 1010
                                             Atlanta, Georgia 30346
                                             Telephone:  (770) 392-0090
                                             Facsimile:  (770) 392-0029
                                             cholzer@holzerlaw.com


                                             *Counsel for Lead Plaintiff and Co-Lead*
                                             *Counsel for the Proposed Settlement Class*

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF