1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SECURITIES LITIGATION.<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No.:  3:23-CV-01216-GPC-VET<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT;**<br><br>**(2) GRANTING MOTION FOR AWARD OF ATTORNEY FEES, REIMBURSEMENT OF EXPENSES AND AWARD TO LEAD PLAINTIFF;**<br><br>**[ECF Nos. 91, 92]** |

Before the Court are two Motions: Plaintiff's unopposed Motion for Final Approval of Class Action Settlement ("Final Approval Mot.") and Plaintiff's unopposed Motion for Attorneys' fees and expenses, notice and administration costs, and award to Plaintiff ("Attys. Fees Mot."). ECF Nos. 91, 92. On June 13, 2025, the Court held a hearing on this matter. ECF No. 95. For the reasons set forth below, the Court **GRANTS**

the Motion for final approval of class action settlement and **GRANTS** the Plaintiffs' Motion for Award of Attorneys' fees and other costs and awards.

## I.     BACKGROUND

### A. Procedural History

On June 30, 2023, Zachary Salzman initiated this Action by filing a securities class action complaint against Defendants in this Court. ECF. No. 1. On August 29, 2023, Patel filed a motion for appointment as Lead Plaintiff. ECF No. 18. On September 27, 2023, the Court appointed Patel as Lead Plaintiff and appointed Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer") as Co-Lead Counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA"). ECF No. 31.

On November 17, 2023, Lead Plaintiff filed the operative First Amended Complaint ("FAC") asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), and claims against Defendants Richard Adcock, David C. Sachs, and Patrick Soon-Shiong under Section 20(a) of the Exchange Act. ECF No. 37 at 1.  The FAC alleged that Defendants unlawfully inflated ImmunityBio's stock price during March 10, 2021 and May 10, 2023, both dates inclusive (the "Settlement Class Period"), by misleading investors about ImmunityBio's manufacturing capabilities, compliance with required current good manufacturing practices, and the approval prospects of ImmunityBio's lead product candidate, Anktiva. *Id* at 1-2. The FAC alleged that the misleading nature of Defendants' statements was revealed on May 11, 2023, when the U.S. Food and Drug Administration (the "FDA") rejected ImmunityBio's license application for Anktiva because of deficient manufacturing practices, which precipitated a drop in the company's stock price and in turn caused injury to investors. *See id.* at 57-58.

On January 8, 2024, Defendants filed a motion to dismiss ("MTD") the FAC for failure to state a claim under the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. ECF No. 50. On June 20, 2024, the Court entered an Order granting in

part and denying in part Defendants' MTD, ECF No. 63. In the Order, the Court rejected Defendants' challenge as to 51 of the 62 misstatements pled in the FAC and granted Lead Plaintiff leave to amend. ECF No. 63. On July 16, 2024, Lead Plaintiff filed a notice of his decision to proceed on the FAC. ECF No. 64. On August 29, 2024, Defendants answered the FAC, in which they denied, in whole or part, a significant amount of the FAC's allegations and raised a variety of affirmative defenses. ECF No. 68.

**B. Discovery Process**

To facilitate discovery, the Parties negotiated and filed a Joint Motion for entry of a stipulated protective order to govern the exchange of confidential information, ECF No. 71, and a Joint Motion for the entry of a stipulated order to govern the collection, processing, and production of electronically stored information (ESI), ECF No. 78. The Court entered both. ECF Nos. 73 ("Protective Order"), 79.

Since the entry of the Protective Order, the Parties have engaged in extensive discovery. Motion for Preliminary Approval at 3. Lead Plaintiff interposed requests for production covering a number of areas, including the manufacturing process for Anktiva, compliance with good manufacturing practices, and interactions with the FDA during the Settlement Class Period. *Id.* Lead Plaintiff also served several subpoenas on third-parties. *Id.* Meanwhile, Defendants served requests for production and written interrogatories on Lead Plaintiff. *Id.* Given the wide array of discovery topics sought by the Parties, as well as the potentially voluminous documentation responsive to the requests, the Parties held numerous meet-and-confers by letter and phone to resolve disagreements. *Id.* Lead Plaintiff ultimately obtained over 10,000 pages of documents from Defendants and third-parties, and produced various records and several written responses to the discovery requests served on him. *Id.*

The Parties attended an Early Neutral Evaluation ("ENE") conference with the oversight of Magistrate Judge Valerie E. Torres on October 28, 2024, but were unable to reach an agreement. ECF No. 76. Following the ENE, the Parties continued with discovery but expressed interest in the possibility of a mediation. Mot. at 5.

### C. Negotiation

On December 4, 2024, Co-Lead Counsel and counsel for Defendants participated in a full-day mediation before Jed Melnick, Esq. of JAMS. According to the Motion for Preliminary Approval, the Parties engaged in "intensive negotiations, which included multiple counter-offers, narrowing the difference in the Parties' respective settlement positions, but ultimately did not end the mediation with an agreement in place." ECF No. 80, Motion for Prelim. Approval at 4.

In the days following the meditation, negotiations continued with the aid of Mr. Melnick. On December 13, 2024, Mr. Melnick made a mediator's proposal to fully and finally resolve the Action for $10.5 million, which each Party accepted that same day. After subsequent negotiations, the Parties memorialized the agreement in a Confidential Term Sheet ("Term Sheet") the following week. Co-Lead Counsel and defense counsel continued to correspond and exchange edits until the finalization of the Stipulation and its accompanying Exhibits on January 28, 2025.

These negotiations were therefore conducted "at arm's-length over the course of several months through multiple channels, including emails, the ENE, phone calls, and an in-person mediation with an experienced and disinterested neutral, during which each side pressed for the most favorable outcome possible." ECF No. 80, Motion for Prelim. Approval at 4-5.

### D. Settlement Terms

Defendants and Lead Plaintiff, individually and on behalf of all Settlement Class Members, agreed to settle and release the asserted claims.  ECF No. 80, Ex. 1 ("Stipulation of Settlement" or "Stipulation") at 1. On January 28, 2025, Lead Plaintiff filed an unopposed motion for preliminary approval of the proposed Settlement, ECF No. 80, and the Court held a hearing on the motion on March 7, 2025, during which it raised questions about the composition of the Settlement Class and including notice of the anticipated administrative fees, ECF No. 87. On March 17, 2025, the Court entered an order granting preliminary approval of the Settlement, provisionally certifying the

4

Settlement Class for purposes of the Settlement and authorizing the form and manner of providing notice of the Settlement to potential Settlement Class members. ECF No. 89. The Court also directed Lead Plaintiff to revise the proposed Notices to specify the maximum potential fees the Claims Administrator anticipates incurring in connection with the Settlement. *Id*. at 28.

The key terms of the Settlement have not changed since then. The Settlement Agreement requires $10.5 million in cash to be paid into an escrow account for the benefit of the Settlement Class. Stipulation ¶ 1.34, 2.0. This amount, plus accrued interest, constitute the Settlement Fund. After Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses, any awards to the Lead Plaintiff, and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount (the Net Settlement Fund) shall be distributed pursuant to the Plan of Allocation to claimants who are entitled to a distribution. *Id.* ¶ 6.2. Co-Lead Counsel estimate a gross recovery of $0.09 per damaged share for each Settlement Class Member (accounting for the deduction of fees, expenses, and costs). ECF No. 80, Exhibit B-1 (long-form Notice), at 2.

In the Preliminary Approval Order, the Court ordered the Claims Administrator, Epiq, to: (i) establish a website dedicated to the Settlement, where potential Settlement Class members can submit Claims electronically and download copies of all Settlement documents, including the Stipulation, the Notice, and the Proof of Claim form; and (ii) mail or email an abridged version of the Notice to all Settlement Class members who can be identified through reasonable effort and release the Publication Notice on a national newswire, both of which directed potential Class Members to the Settlement website for additional information about the Settlement. ECF No. 89 at 34-35, 37-39.

The Notice program approved by the Court has been carried out. On March 24, 2025, Lead Plaintiff received a list from Defendants containing the names of 310 stockholders of record during the Settlement Class Period, including a number of nominee purchasers. D'Aloia Declaration ("D'Aloia Decl.") ¶ 41. On April 7, 2025, Epiq

3:23-CV-1216-GPC-VET

(i) established a settlement website at www.immunitybiosecuritiessettlement.com, which includes, among other things, a copy of the Stipulation, the Preliminary Approval Order, the Notice, the Proof of Claim form, and an online Claim submission page and commenced its distribution of the short-form Notice and Publication Notice. *See* Mahan Declaration ("Mahan Decl.") ¶¶ 3-12. Epiq has since received the contact information for many additional potential Settlement Class members by numerous nominee holders. *Id*. ¶ 7. In total, 39,925 potential Settlement Class Members were sent a Notice regarding the Settlement as of May 13, 2025, and only six have been returned as undeliverable. *Id*. ¶¶ 6-9. To date, there have not been any objections to the Settlement or any requests for exclusion received from potential Settlement Class members. D'Aloia Decl. ¶ 44; Mahan Decl. ¶¶ 16, 18.

The Parties have the right to terminate the Settlement in the event that it does not become final. Stipulation ¶ 2.11-2.12. ImmunityBio also has the right to terminate the Settlement if requests for exclusion exceed an agreed-upon threshold set forth in a confidential Supplemental Agreement between the Parties. *Id*. ¶ 2.13. If the Settlement is terminated, Parties will revert to their respective positions in the litigation before the agreement to enter into a Settlement. *Id.* ¶ 2.14.

## II.    DISCUSSION

### A. Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To that end, a reviewing court must engage in two-step process. First, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on

the proposal." Fed. R. Civ. P. 23(e)(1)(B). Second, after providing the class with notice of the proposed settlement, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate." Fed. R. Civ. 23(e)(2).

### B. Final Certification of the Proposed Settlement Class under Rule 23

The Court granted preliminary certification to the Settlement Class for settlement purposes in the Preliminary Order. ECF No. 89. It appears no material changes have occurred since this Court's preliminary approval and there is no opposition to final certification. Therefore, analysis for final certification will resemble the prior analysis for preliminary certification.

Federal Rule of Civil Procedure ("Rule") 23 establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), common questions must predominate over individual questions, Fed. R. Civ. P. 23(b)(3), and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

In the context of securities litigation, class actions are "particularly well-suited" because "geographically dispersed shareholders with relatively small holdings" may not otherwise pursue their claims. *In re VeriSign, Inc. Sec. Litig*., 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005). As such, it is "well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re NetSol Techs., Inc. Sec. Litig*., 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) (citation omitted).

Lead Plaintiff seeks certification of a Settlement Class consisting of all persons who purchased or acquired ImmunityBio securities from March 10, 2021, to May 10, 2023, inclusive, and were damaged thereby, except those specifically excluded in ¶ 1.35 of the Stipulation. Mot. at 8.

For the following reasons, the Court agrees with the Plaintiff that the Court will likely be able to certify the class for purposes of settlement under the requirements of Rule 23.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  The exact size of the class does not need to be known as long as general knowledge and common-sense support that the class is sufficiently large.  *See Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 56, 569 (C.D. Cal 2012). Indeed, "[w]here several million shares of stock were purchased during the class period, courts regularly find that class members are sufficiently numerous to render joinder impracticable." *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 20139171, at *6 (C.D. Cal. May 11, 2017).  Here, there were over 400 million shares of ImmunityBio common stock outstanding during the Class Period, and those shares actively traded on the NASDAQ, with average daily trading volume of 1.9 million shares. Mot. at 8. The notice program carried out by the Claims Administrator has identified almost 40,000 potential Settlement Class members. Mahan Decl. ¶¶ 6-10. Joinder of this number of plaintiffs is clearly impractical. The numerosity requirement is therefore satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Not every question of law or fact must be

common to the class. *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (Ninth Cir. 2013).

Here, Settlement Class Members are those individuals who purchased or otherwise acquired ImmunityBio securities during the relevant period of time. There are clear questions that are common to all class members, including: (1) whether statements Defendants made to the investing public during the Class Period were false or misleading; (2) whether Defendants made such statements with scienter; (3) whether such statements artificially inflated the price of ImmunityBio securities during the Class Period; (4) whether the price of ImmunityBio securities declined in response to disclosures that revealed the truth; and (5) the extent of damages suffered by the Settlement Class and the appropriate measure. ECF No. 89 at 12. It is plain that the proposed class meets Rule 23(a)(2)'s commonality requirement. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation, no matter their number.") (internal quotation marks and citation omitted).  The Court therefore finds that the proposed class meets the commonality requirement.

### 3. Typicality

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Dipak Patel was appointed as Lead Plaintiff. ECF No. 31. As described in his motion for appointment as Lead Plaintiff, Mr. Patel alleged he lost more than

1  $280,000 as a result of the alleged fraud during the Class Period. ECF No. 18 at 1. Mr.

2  Patel's claims are typical of the putative class because he, "like other members of the

3  Class, purchased ImmunityBio securities during the Class Period at prices artificially

4  inflated by Defendants' misrepresentations or omissions and was damaged upon the

5  disclosures of those misrepresentations and/or omissions." *Id*. at 9. Thus, Mr. Patel's

6  claims for damages are based upon the same legal theory, events, and course of conduct

7  as the Class's claims. *See* FAC ¶¶ 198, 212, 215.

8                            **4. Adequacy**

9        Under Rule 23(a)(4), representative parties must be able to "fairly and adequately

10  protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule

11  23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and

12  their counsel have any conflicts of interest with other class members and (2) will the

13  named plaintiffs and their counsel prosecute the action vigorously on behalf of the

14  class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)

15  (citation omitted). The adequacy of representation requirement is designed to deny

16  certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth

17  Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

18        It does not appear that Plaintiff has any interests in conflict with the Settlement

19  Class.  Dipak Patel was previously appointed as Lead Plaintiff because he had the largest

20  financial losses. ECF No. 31. His interests are aligned with those of the other class

21  members. *See Mild v. PPG Indus., Inc*., 2019 WL 3345714, at *3 (C.D. Cal. July 25,

22  2019). Lead Plaintiff has demonstrated his commitment to this Action through his active

23  involvement in retention of counsel, discovery, and mediation. In addition, Plaintiff's Co-

24  Lead Counsel, attorneys Pomerantz LLP and attorneys Holzer & Holzer, are experienced

25  securities litigators who have litigated numerous securities class actions on behalf of

26  stakeholders in district courts throughout the country. *See* ECF No. 80, Firm Resumes

27  (Exs. 2, 4). There is no indication that Plaintiff or his counsel will not continue to

28

3:23-CV-1216-GPC-VET

prosecute this lawsuit vigorously. The Court therefore concludes the adequacy requirement is met for the purposes of conditional certification.

### 5. Predominance and superiority

Finally, to certify a class under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Superiority asks if class adjudication is "the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Whether the questions addressable with common proof predominate over those that require individual proof depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As a fraud-on-the-market case, "the elements of falsity, materiality, scienter, and loss causation present questions common to the class because they all depend on Defendants' actions, and not those of any individual class member." *Ali v. Franklin Wireless Corp.*, 2023 WL 25718, at *5 (S.D. Cal. Jan. 3, 2023). Indeed, proof of these elements "can be made on a class-wide basis" as they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 685, 687 (7th Cir. 2010). Similarly, there are no individualized issues of reliance because Lead Plaintiff relies on the class-wide presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), based on the contention that the market for ImmunityBio securities was efficient at all relevant times, *see* FAC ¶¶ 196-97, which Defendants do not oppose for purposes of Settlement. Finally, while damages may differ among class members, the proper amount of class-wide damages has been negotiated for purposes of Settlement.

1    Certification of a settlement class would provide significant efficiencies compared

2    to any alternative method of adjudication. In a class action settlement, the Court need not

3    address whether the case, if tried, would present issues of manageability under Rule

4    23(b)(3)(D). *Amchem*, 521 U.S. at 620.

5    Based on the foregoing reasons, the requirements under Rule 23 are satisfied, and

6    the Court CERTIFIES the Settlement Class for purposes of the Settlement.

7    ### C. Appointment of Class Counsel

8    When a court certifies a class, it must also appoint class counsel. *See* Fed. R. Civ.

9    P. 23(g)(1). The Rule directs the Court to consider: (i) the work counsel has done in

10    identifying or investigating potential claims in the action; (ii) counsel's experience in

11    handling class actions, other complex litigation, and the types of claims asserted in the

12    action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel

13    will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

14    Since they were appointed Co-Lead Counsel in September 2023, ECF No. 31,

15    Pomerantz and Holzer have devoted substantial time, effort, and resources to identifying,

16    investigating, litigating, and negotiating a settlement. Pomerantz and Holzer have

17    extensive experience prosecuting class actions under the federal securities laws. *See* ECF

18    No. 80, Ex. 2 (Pomerantz firm résumé), Ex. 4 (Holzer firm résumé). Both firms regularly

19    serve as class counsel or co-counsel in like matters. *See, e.g.*, *Kendall v. Odonate*

20    *Therapeutics, Inc*., 2022 WL 188364, at *5 (S.D. Cal. Jan. 18, 2022) (Pomerantz and

21    Holzer "have significant experience in litigating securities fraud cases, including class

22    actions," and appointing both as class counsel under Rule 23(g)); *Jiangchen v. Rentech,*

23    *Inc*., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding that Holzer "has

24    significant experience in securities class action lawsuits" and "vigorously pursued

25    Plaintiff's claims"). Following the Preliminary Approval Order, Co-Lead Counsel have

26    also continued to work together and devote their time, energy, and resources in

27    overseeing the notice program, working with opposing counsel, and fulfilling all

28    deadlines and requirements as set forth in the Settlement and Preliminary Approval

Order. Mot. at 9. Accordingly, the Court appoints Pomerantz and Holzer as Class Counsel.

### D. Final Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement. Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

1    (D) the proposal treats class members equitably relative to each other.

2  Fed. R. Civ. P. 23(e)(2).

3        For the reasons that follow, the Court finds that the Settlement Agreement reached

4  by the Parties is likely fair, reasonable, and adequate, and GRANTS final approval of the

5  Class Action Settlement.

6        **1.  Adequacy of Representation**

7        Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives

8  and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).

9  This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g),

10  respectively."  4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed.

11  2020); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019)

12  (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

13        The Court found above that Lead Plaintiff and his counsel adequately represent the

14  class for the purposes of class certification.  For the same reasons, the Court finds that the

15  adequacy of representation requirement under Rule 23(e)(2)(A) is met.

16        **2.  Arm's Length Negotiation**

17        Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was

18  negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit "put[s] a good

19  deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in

20  approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965

21  (9th Cir. 2009).  "Settlements that follow sufficient discovery and genuine arms-length

22  negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D.

23  607, 610 (S.D. Cal. 2008).

24        Here, the proposed Settlement arises out of an arm's-length negotiation process

25  that occurred between Lead Plaintiff and the Defendants following initial discovery.

26  These negotiations took place over several months on numerous occasions, including at

27  the ENE in the presence of Magistrate Judge Torres, telephonically, in writing, and in-

28  person at mediation before the presence of an experienced mediator, Jed Melnick, Esq.

The Settlement was ultimately reached after mediation as a result of his proposal, evincing that the settlement was reached via non-collusive means. *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (quoting *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)). After accepting the mediator's proposal, the Parties negotiated once more to finalize the Confidential Term Sheet, and thereafter, negotiated for another month to arrive at the terms of the Stipulation and its Exhibits. These lengthy arms-length negotiations support the conclusion that the Settlement was achieved in the absence of collusion. *See Scott v. ZST Digital Networks, Inc.*, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations… were conducted at arm's-length by counsel over the span of several months, were serious, informed and noncollusive" especially when "[t]he parties were represented by experienced counsel who bargained in an adversarial manner").

### 3. Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

Here, the Parties have agreed to settle this case for an amount of $10,500,000. Stipulation ¶ 1.34. Because Lead Plaintiff's expert estimates that maximum recoverable damages would amount to approximately $130.6 million, the Settlement Amount

represents over 8% of estimated damages. Mot. at 15. Any deductions for attorney's fees, and costs of notice are to be deducted from the Settlement Amount, only by the Court's approval upon motion by Lead Plaintiff. As a percentage of estimated damages, the Settlement Amount is well above the median percentage of the recovery level for investor losses in securities class action settlements. *See Farrar v. Workhorse Grp., Inc*., 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that 3% is within the range of average recovery percentages approved in securities class action settlement); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement for 2% of damages is "consistent with the typical recovery in securities class action[s]").

### a. Costs, risks, and delay of trial and appeal

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). While a settlement need not compensate class members for the maximum value of their claims, there is no fixed percentage of the potential recovery that renders a settlement amount reasonable. *See In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998)). The Court therefore must examine whether the Settlement Agreement adequately compensates the class given the costs, risks, and delay of trial and appeal based on the facts of this case. The relief must therefore "be judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23, 2024) (citation and quotations omitted).

Based on the risks of litigation, Plaintiff contends that the settlement provides adequate relief to the class, especially considering the fact that Lead Plaintiff would need to secure certification of a liability class and prove – and, thus, defeat Defendants' defenses as to – falsity, scienter, loss causation, and damages. Defendants repeatedly

claimed that they had valid defenses as to multiple elements of Lead Plaintiff's claims, "virtually ensuring that these issues would be hotly contested at each stage of litigation." Mot. at 17.

Additionally, "a significant amount of key evidence is in the possession of third parties," like ImmunityBio's contract manufacturing organizations, which could limit Lead Plaintiff's ability to secure evidence needed at summary judgment or to prevail at trial. *See Hester v. Vision Airlines, Inc.*, 2014 WL 3547643, at *12 (D. Nev. July 17, 2014) (identifying the "difficulty in obtaining documents from third-parties as a "significant challenge[]"). Relatedly, because of the "highly technical nature of biopharmaceutical manufacturing, requiring even more expert involvement than in a standard securities case," Mot. at 17, the elements of loss causation and damages would certainly invite expert testimony. Since Lead Plaintiff bears the burden of proof, Defendants could win at summary judgment or trial through a Daubert motion and there would be an "unpredictable battle of the experts." *Baker v. Seaworld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. Jul. 24, 2020) (citation omitted).

In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays, especially since "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker*, 2020 WL 4260712, at *7 (citation omitted). Discovery costs would accumulate due to more document productions, disputes, the need for expert testimony, and taking numerous fact and expert depositions. Mot. at 18. And even if Plaintiff prevailed at trial, Defendants are likely to engage in extensive post-trial motion practice, including appeals. Mot. at 18.

As such, the Settlement Amount presents a substantial relief to the Settlement Class. Although the Settlement is only a portion of Defendant's maximum potential exposure according to Plaintiff's calculations, the relief appropriately accounts for the not-insubstantial risk that Plaintiff and the class would recover nothing on some or all claims. Courts must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the

1  future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v.*

2  *DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). The Court here

3  concludes that the costs and risks of proceeding with litigation likely renders the agreed-

4  upon settlement amount to be adequate relief for the class as a whole. *See, e.g., Baron v.*

5  *HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) (settlement for 2% of

6  total damages supports preliminary approval); *Hunt v. Bloom Energy Corp*., 2023 WL

7  7167118, at *7 (N.D. Cal. Oct. 31, 2023) (same for 5.2% of damages); *Hardy v. Embark*

8  *Tech., Inc*., 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023) (same for 1.1% of

9  damages); *In re Lyft, Inc. Sec. Litig*., 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16,

10  2022) (same for 3.2% of damages); *Kendall*, 2022 WL 188364, at *6 (same for 3.49% to

11  3.84% of damages).

### b.  Effectiveness of proposed method of distributing relief

12  

13          Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the

14  effectiveness of any proposed method of distributing relief to the class, including the

15  method of processing class-member claims." This analysis requires the court to

16  "scrutinize the method of claims processing to ensure that it facilitates filing legitimate

17  claims" without being "unduly demanding." Fed. R. Civ. P. 23(e), advisory committee

18  notes (2018 amendment).

19          Here, the method for processing claims and distributing relief to eligible Claimants

20  is clear, well-established, and effective. As noted, Lead Plaintiff has ascertained potential

21  Settlement Class Members from transfer records maintained by Defendants and has

22  communicated with nominee holders to provide the Notice to clients of theirs who may

23  be part of the Settlement Class. Mot. at 19. In addition, Lead Plaintiff has published

24  notice in a national newswire about the Settlement, directing potential claimants to a

25  website with more complete documentation on the Settlement. Claimants are required to

26  submit records establishing all relevant transactions in ImmunityBio securities. Mot. at

27  19. Claimants also have an opportunity to cure any deficiencies or request that the Court

28  review a denied claim. *Id*. The Net Settlement Fund will then be distributed to Authorized

Claimants on a pro rata basis in accordance with the Plan of Allocation based on the amount of each claimant's Recognized Losses. ECF No. 80, Exhibit B-1, at 12. The Class Administrator will distribute each Authorized Claimant's allocation via check. Stipulation ¶ 6.0.

These procedures are regularly held to be "effective" in securities class actions. *See Baron*, 2024 WL 3504234, at *9 (finding nearly identical procedures effective for preliminary approval in securities class action); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *2, 7 (N.D. Cal. Dec. 18, 2018) (same).

### c. Attorneys' fees and administration fees

Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Co-Lead Counsel seek a fee award of 30% of the Settlement Amount and reimbursement of costs plus interest. The Settlement is not contingent on any ruling with respect to attorneys' fees. Stipulation ¶¶ 7.0, 8.3. The Settlement also calls for up to $350,000 in administration fees. Based on the reasoning below, *see infra*, the Court finds that an award of 30% of the Settlement Amount after deducting litigation expenses, administration fees, and the Lead Plaintiff's incentive award is reasonable.

### d. Agreements made in connection with the proposal

Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties here have entered into a confidential Supplemental Agreement that establishes conditions under which ImmunityBio may terminate the Settlement if those totaling a certain amount ImmunityBio stock "opt out" of the Settlement. Stipulation ¶ 2.13. "[T]his type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *Baron*, 2024 WL 3504234, at *10 (citation omitted); *see Illumina*, 2019 WL 6894075, at *9 (similar). Its terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts"

1   for themselves at the expense of other Settlement Class members. *Farrar*, 2023 WL
2   5505981, at *10 (citation omitted).

3                    **4.  Equitable Treatment of Class Members**

4           Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement
5   "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In
6   doing so, the Court determines whether the settlement "improperly grant[s] preferential
7   treatment to class representatives or segments of the class." *In re Tableware Antitrust*
8   *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  "Matters of concern could include
9   whether the apportionment of relief among class members takes appropriate account of
10  differences among their claims, and whether the scope of the release may affect class
11  members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P.
12  23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B.
13  Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's
14  goal is to ensure that similarly situated class members are treated similarly and that
15  dissimilarly situated class members are not arbitrarily treated as if they were similarly
16  situated.").

17          Here, under the proposed Plan of Allocation, each Authorized Claimant will
18  receive a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized
19  Losses divided by the total Recognized Losses of all Authorized Claimants, multiplied by
20  the total amount of the Net Settlement Fund. Mot. at 21.

21          The court finds that the proposed distribution method treats Class Members equally
22  by taking into account the amount of shares held by class members, the time class
23  members held these shares, and how price declines based on "corrective information"
24  affected the price of shares. *See Vinh Ngueyn v. Radient Pharms. Corp.*, 2014 WL
25  1802293, at *5 (C.D. Cal. May 6, 2014) (finding a similar distribution method equitable).
26  And while the proposed Plan of Allocation excludes any claimant whose distribution
27  amounts calculates to less than $10.00, courts in this Circuit "regularly approve" of
28  settlement agreements that include such provisions because this is "no significant

indication of preferential treatment." *Baron*, 2024 WL 3504234, at *11 (citation omitted). Accordingly, the court finds that the method of distribution treats class members equitably relative to each other.

Lead Plaintiff also requests an incentive award to compensate him for the time that he spent pursuing this matter on behalf of the class. Based on the reasoning below, *see infra*, the Court finds that this incentive award is reasonable and does not diminish the equitable nature of the Settlement.

### 5. *Hanlon* factors

The Court traditionally examined the *Hanlon* factors for its fairness analysis. The 2018 amendments to Rule 23(e) make clear that the considerations identified therein were not designed to "displace" any factor previously used by courts to evaluate settlements, but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). Thus, courts may still consider additional Hanlon factors in the exercise of discretion. *See, e.g., Fitzgerald v. Pollard*, 2024 WL 4596401, at *5-8 (S.D. Cal. Oct. 28, 2024).

The *Hanlon* factors mostly overlap with the Rule 23(e) factors. The Court will examine two non-duplicative *Hanlon* factors.

**Reaction of the Settlement Class**. An overwhelmingly positive reaction of class members to a proposed settlement significantly weighs in favor of the settlement's adequacy. *Delacruz v. CytoSport, Inc.*, 2014 WL 12648451, at *7 (N.D. Cal. Jul. 1, 2014). Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043 (finding only three objections out of 57,630 potential class members weighing in favor of the settlement's adequacy). Among the almost 40,000 copies of the Notice sent to potential class members, no objection nor request for exclusion to the Settlement has been received till May 30, 2025. *See* ECF No. 94 at 5. It shows that the Settlement terms are considered fair, reasonable, and adequate

from class members' perspective. *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529
(noting no objection nor request for exclusion from the Settlement as "compelling
evidence that the Proposed Settlement is fair, just, reasonable, and adequate"); *see also,
e.g.*, *Ali*, 2024 WL 5179910, at *8; *Derr v. Ra Medical Sys., Inc.*, 2022 WL 21306534, at
*6 (S.D. Cal. Sept. 23, 2022); *Kendall*, 2022 WL 1997530, at *6.

**Discovery Conducted to Date and Stage of Proceedings**. Although formal
discovery is not required to reach the Settlement stage, the Court considers whether the
parties have "carefully investigated the claims" before reaching to the resolution. *Hardy
v. Embark Tech., Inc.*, No. 3:22-CV-02090-JSC, 2024 WL 1354416, at *5 (N.D. Cal.
Mar. 29, 2024) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.
1998)). "The fact that formal discovery was in its early stages does not weigh against
final approval." *Stable Road*, 2024 WL 3643393, at *9.

Here, Co-Lead Counsel conducted an extensive pre-suit investigation that included
(1) a review of government records, (2) interviews with former employees of
ImmunityBio and its relevant business partners, and (3) consultation with experts in the
field of class wide damages and the FDA regulatory approval process. *See* D'Aloia Decl.
¶¶ 10-12. The parties then thoroughly briefed the sufficiency of the FAC, where Lead
Plaintiff opposed Defendants' MTD. *See* D'Aloia Decl. ¶¶13-14. The Parties then
pressed forward with discovery requests, conducted multiple meet-and-confers, and
exchanged documents that assisted Lead Counsel in assessing the merits of the case. *Id.*
¶¶ 19-25, 28-30. The Parties also exchanged detailed mediation statements before
mediation with supporting documentary evidence. *Id.* ¶¶ 34. The Parties continued to
negotiate post-mediation allowing them to assess the strengths and weaknesses of the
claims. *Id.* ¶¶ 35-37.

Other securities cases throughout the Ninth Circuit have reached the same result on
similar facts. *See, e.g.*, *Stable Road*, 2024 WL 3643393, at *9 (finding parities were well-
informed as the investigation involved interviews and consultation with experts). Thus,
although the Co- Lead Plaintiff secured the Settlement at an early stage of the

proceedings, he was well-informed of the relevant information to make informed decisions regarding the Settlement.

### E. Plan of allocation

As set forth in the long-form Notice, the Net Settlement Fund will be divided among Settlement Class members who submit timely and valid Claims in accordance with the Plan of Allocation described therein. ECF No. 80-2 at 79. A plan for allocation should be "fair, reasonable and adequate," *see Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992), although it "need not be perfect," *Brown v. Brewer*, 2012 WL 12882380, at *1 (C.D. Cal. Jan. 18, 2012). Rather, an allocation formula that has a "reasonable, rational basis" satisfies the requirement, "particularly if recommended by competent class counsel." *Id*. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Mauss v. NuVasive, Inc*., 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (citation omitted).

As described in the Notice, the Plan of Allocation was developed with the assistance of Lead Plaintiff's damages expert and designed to equitably distribute the Net Settlement Fund to Authorized Claimants based on their respective economic losses as a result of the alleged fraud, without considering market-wide factors, industry-wide factors, or company-specific factors unrelated to the alleged fraud. *See* ECF No. 80-2 at 79-80. Each Authorized Claimant's economic losses attributable to the fraud are calculated using the Recognized Loss formula. *Id*. at 79. The formula depends on several factors, including when the shares were purchased and in what amounts, whether the shares were ever sold, and, if so, when they were sold and for what amounts. *Id*. at 81. The Net Settlement Fund will then be distributed to each Authorized Claimant on pro rata basis based on the amount of their Recognized Loss relative to the total Net Settlement Fund. *Id*. at 83. If the Recognized Loss is less than $10.00, then no distribution will be made. *Id*. Not paying these *de minimis* claims does not disturb the fairness of the allocation plan. Such small checks are frequently discarded by recipients and "cause a disproportionate administrative expense to the fund," and, thus, other Settlement Class

members. *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017). For this reason, courts regularly approve plans with similar minimum thresholds. *Id.*; *see also Baron*, 2024 WL 3504234, at *11 ("courts within the Ninth Circuit regularly approve settlement agreements including such provisions"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2023) (same), aff'd sub nom. *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Moreover, the lack of any objections to the Plan of Allocation after distributing the Notice further evinces that it is fair. *See Mauss*, 2018 WL 6421623, at *4.

Courts have found nearly identical allocation plans to be fair, reasonable, and adequate in other securities class action settlements. *See, e.g.*, *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *9 (S.D. Cal. Dec. 19, 2024) (collecting cases). Indeed, plans of this type are "customary" and "standard" in securities class action settlements. *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024 WL 5112227, at *5 (N.D. Cal. Dec. 13, 2024).

### F. Attorneys' fees and costs, administration fees, and incentive award

Together with its Motion for final approval, Plaintiff has also filed an unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff.

#### 1. Attorneys' Fees

Co-Lead Counsel seek attorneys' fees in the amount of $3,150,000, plus interest. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

Fees can be calculated by either the lodestar method or the percentage-of-the-fund method. *Id.* at 942. Courts may exercise discretion to choose which calculation method they use to achieve a reasonable result. *See Bluetooth*, 654 F.3d at 942. Use of the percentage method in common fund cases is the most dominant because of its various

advantages, including increased incentive for counsel to litigate and promotion of efficiency. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Further, the PSLRA itself provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). Thus, the Court agrees with Plaintiff and elects to use the percentage-of-recovery method to award the attorneys' fees.

The Court notes that the Ninth Circuit recognizes 25% as the benchmark percentage for the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *Bluetooth*, 654 F.3d at 942). Courts should analyze the following factors to determine if a percentage is reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of counsel's work; (4) the contingent nature of the fee and financial burden; (5) awards made in similar cases; (6) the reaction of the class; and (7) the lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). As noted by other courts, these factors intentionally track the factors used to evaluate the adequacy of a settlement. *Omnivision*, 559 F. Supp. at 1046.

Analysis of these factors support a finding that 30% of the $10.5 million Settlement Amount minus the administration fees, litigation expenses and the award to Lead Plaintiff, totaling $2,987,985, plus interest is a reasonable fee in this case.

### a. The results achieved

"The most important factor [in determining the reasonableness of attorneys' fees] is the 'overall result and benefit to the class from the litigation.'" *Stemple v. QC Holdings, Inc.*, 2016 WL 11783383, at *3 (S.D. Cal. Nov. 7, 2016) (citing *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046; *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005) (noting that "courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The $10.5 million

3:23-CV-1216-GPC-VET

Settlement Fund represents over 8% of the Lead Plaintiff's best-case estimate for recoverable damages, assuming success at trial, of $130.6 million. *See* D'Aloia Decl. ¶48. This percentage is well above the median percentage of the recovery level for investor losses in securities class action settlements. *See Farrar v. Workhorse Grp., Inc*., 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that 3% is within the range of average recovery percentages approved in securities class action settlement); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement for 2% of damages is "consistent with the typical recovery in securities class action[s]"). ECF No. 89 at 21-22. This factor supports the 30% fee.

### b. The risk of litigation

The risks associated with the litigation have been considered. Courts have consistently recognized that the securities class actions are complex and risky. *Ali*, 2024 WL 5179910, at *11 (S.D. Cal. Dec. 19, 2024); *see also Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013); *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008).

In the present case, Lead Plaintiff faced substantial risks in pursuing this litigation given the uncertainty created by the heightened pleading standard established under the PSLRA for trying securities fraud cases. *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018); *aff'd sub nom. Hefler v. Pekoc*, 802 F. Ap'x 285 (9th Cir. 2020). The substantial risks of no recovery remains if Lead Plaintiff continued to litigate, including the difficulty of establishing scienter and the involvement of expert witnesses on highly technical subject matters. *See Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016). Jury verdicts in favor of plaintiffs are exceedingly uncommon in securities fraud class actions. *See Omnivision*, 559 F. Supp. at 1047 (plaintiffs prevailed in only three out of eleven jury trials on securities claims from 1996 to 2008). These obstacles to recovery are further heightened by the complexity of manufacturing biologic compounds under FDA regulations—a highly technical topic that may be difficult for the Court or a jury to fully understand

throughout the proceedings. *See Amgen*, 2016 WL 10571773, at \*9. Hence, this factor weighs in favor of the fee.

### c. The skill required and quality of counsel's work

Prosecuting complex class actions takes skill and experience, and this is particularly true in securities class actions because the PSLRA makes it difficult to get past the motion to dismiss stage. *Omnivision*, 559 F. Supp. 2d at 1047; *see also Stable Rd.*, 2024 WL 3643393, at \*13; *Am. Apparel*, 2014 WL 10212865, at \*22. Here, the complexity of the case is further corroborated by the technicality of the subject matter, requiring specialized knowledge with drug manufacturing and familiarity with applicable FDA regulations.

Despite some weaknesses, a pleading that has withstood two motions to dismiss shows some skillful work. *Omnivision*, 559 F. Supp. 2d at 1047; *see also Illumina*, 2021 WL 1017295, at \*7. Co-Lead Counsel also managed discovery from numerous parties on a highly technical topic and finally negotiated a resolution, D'Aloia Decl. ¶¶ 15-17, 20-22, 24-25, 28-30, at an early stage of the proceeding, *Vizcaino*, 290 F.3d at 1050 n.5. In sum, this factor supports the 30% fee.

### d. The contingent nature of the fee and financial burden

This factor also weighs in favor of the requested fee. Co-Lead Counsel's fees were entirely contingent on a successful outcome, and they risked non-payment of 2,092.56 billable hours, ECF No. 93-2 at 2; ECF No. 93-4 at 7, and $180,049.92 of litigation expenses, ECF No. 93-6 at 2; ECF No. 93-4 at 9. As discussed, Co-Lead Counsel assumed considerable risk of non-reimbursement for the time and costs they spent on this litigation "demonstrated by the fact that settlements were not easily achieved." *In re Heritage Bond Litig.*, 2005 WL 1594389, at \*14. Thus, this factor supports the requested fee.

### e. Awards made in similar cases

The Ninth Circuit has recognized that 25% is the benchmark in securities class actions. Some courts in the Ninth Circuit have even awarded up to 33% of the common

fund. *See e.g.*, *Singer v. Becton Dickinson & Co.*, No.08-cv-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33%); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (same). Thus, 30% is within the usual range compared to other cases.

### f.  The reaction of the class

Notices were sent to almost 40,000 potential class members. Mahan Decl. ¶¶ 6-10. There was also a Settlement website. *Id.* ¶¶ 13-14. The Notice informed the class members that Co-Lead Counsel would seek up to "one third (33 and ⅓%) of the gross Settlement Amount" and "reimbursement of expenses and a compensatory award in an amount not to exceed fifteen thousand dollars ($15,000.00)." ECF No. 93-1 at 10. Although class members were notified of their right to object to these terms, no class member has objected to the requested fees or expenses. Mahan Decl. ¶¶ 16,18.

### g.  The lodestar cross-check

Lastly, the seventh factor encourages the Court to do a lodestar cross-check on the requested percentage. Courts calculate lodestar by multiplying reasonable hourly rates by the number of hours spent. Here, Co-Lead Counsel state that 2,092.56 hours were spent prosecuting this case. ECF No. 93-2 at 2; ECF No. 93-4 at 7. The hourly rate for Pomerantz LLP ranged from $525 to $1,050 and calculates the total value at $1,099,114.00, ECF No. 93-2 at 2, and the hourly rate for HOLZER & HOLZER, LLC ranged from $645 to $985 and calculates the total value at $826,713.75. ECF No. 93-4 at 6. This is a lodestar multiplier of 1.64, well within the multiplier range of one to four often used to cross-check reasonableness. *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. Sept. 30, 2016) (citing *Vizcaino*, 290 F.3d at 1052-54 (surveying multipliers in over 20 class actions and finding multipliers from one to four in over 80% of cases)).

Thus, the Court concludes that the requested attorneys' fees are reasonable as modified above.

### 2.  Reimbursement of Attorneys' Expenses

As to the requested expenses, "Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting [the] case." *Couser*, 125 F. Supp. 3d at 1049 (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). "[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. Oct. 8, 2014) (quoting *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23). Co-Lead Counsel has provided a breakdown of all costs incurred pursuing this action, totaling $180,049.92. ECF No. 93-6 at 2; ECF No. 93-4 at 9. The Court agrees with Co-Lead Counsel that, because of the contingent nature of this action, Counsel had no incentive to accrue unnecessary or unreasonable expenses. As such, the Court finds expenses in the amount of $180,049.92 plus interest is reasonable.

### 3. Award to Lead Plaintiff

Lead Plaintiff Dipak Patel and seeks an award of $10,000 for litigating on behalf of the Settlement Class. Patel Decl. ¶ 8-9.

The PSLRA authorizes the Court to award class representatives "reasonable costs and expenses (including lost wages) that were directly related to their role in representing the class. 15 U.S.C. § 78u-4(a)(4). In common fund cases, named plaintiffs may also be granted "reasonable incentive payments" in addition to reimbursement for their "litigation expenses, and identifiable services rendered to the class directly under the supervision of class counsel." *Staton*, 327 F.3d at 977 (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)).

Courts have granted incentive awards of $10,000 or more to individuals who carry out litigation efforts on behalf of absent class members. *See, e.g., In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 in incentive award to one plaintiff and $27,000 total); *see also Stable Rd.*, 2024 WL 3643393, at *16 (granting $10,000 to Lead Plaintiff); *Davis v. Yelp, Inc.*, No. 18-CV-00400-EMC, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (granting $15,000 to Lead Plaintiff).

When deciding whether an incentive award is reasonable and fair, the Ninth Circuit considers the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015). Here, the compensatory award makes up less than a tenth of a single percent (.10%) of the total Settlement Fund. Lead Plaintiff spent 10 to 20 hours litigating this action, meeting with counsel and responding to discovery requests. Patel Decl. ¶¶ 4, 8. He also participated in settlement negotiations and helped to secure the settlement. *Id.*; Attys. Fees Mot. at 21. Additionally, the lack of any objections to the proposed award to Lead Plaintiff also supports the reasonableness of the award. *See Khoja*, 2021 WL 5632673, at *11. As such, the Court finds the $10,000 incentive award reasonable.

### 4. Administrator's Fees

The Preliminary Approval required Co-Lead Counsel to clarify the maximum amount of Claim Administration fees in the Notices. Co-Lead Counsel revised the Notice to specify that "Claim Administration fees are not expected to exceed $350,000." D'Aloia Decl. ¶¶ 42. Although this amount is $50,000 higher than the initial amount indicated to the Court, no class member objects to this payment. Thus, the Court approves payment to the Claims Administrator for all costs incurred to date up to $350,000.

## III. CONCLUSION

Based on the above, it is hereby ORDERED:

1. **Incorporation of Settlement Documents**.  This Order and Judgment incorporates and makes a part hereof: (a) the Stipulation; and (b) the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing, filed with the Court on January 28, 2025 (the "Notice").  Unless otherwise defined, capitalized terms used herein have the same meaning as set forth in the Stipulation.

2.      **Jurisdiction**.  The Court has jurisdiction over the subject matter of the Action, Lead Plaintiff, all Settlement Class members, and the Defendants.

3.      **Final Certification of a Settlement Class**.  The Court hereby affirms its determinations in the Preliminary Approval Order to certify, for purposes of the Settlement only, the Action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the Settlement Class consisting of all persons who purchased or acquired, ImmunityBio, Inc. securities from March 10, 2021 to May 10, 2023, inclusive (the "Settlement Class Period"), and were damaged thereby, except those expressly excluded therefrom. Excluded from the Settlement Class are Defendants; members of the immediate families of the Defendants; the subsidiaries and affiliates of any Defendants; any Person or entity who is a partner, executive officer, director or controlling person of any of the Defendants; any entity in which any Defendant has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person.

4.      **Appointment of Settlement Class Representatives**.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order appointing Lead Plaintiff as Class Representative for the Settlement Class and Co-Lead Counsel as Class Counsel for the Settlement Class.  Lead Plaintiff and Co-Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Rules 23(a)(4) and 23(g) of the Federal Rules of Civil Procedure.

5.      **Notice**.  The Court finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions (a) were carried out in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class members of (i) the pendency of the Action, (ii) the proposed Settlement, including the Releases to be provided thereunder and the Plan of Allocation, (iii) Co-Lead Counsel's Fee and Expense Application, (iv) the right to object

3:23-CV-1216-GPC-VET

to any aspect of the Settlement, (v) the right to be excluded from the Settlement Class, and (vi) the right to appear at the Settlement Fairness Hearing; and (d) met the requirements of due process and Fed. R. Civ. P. 23 and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995.

6.   **Final Settlement Approval**.  Pursuant to, and in accordance with, Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby fully and finally approves the Settlement as set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement Consideration and the Releases provided for therein), and finds that the Settlement, as a whole, is fair, reasonable, and adequate, and in the best interests of the Settlement Class.  The Court further finds that there was no collusion in connection with the Stipulation; the Stipulation was the product of informed, arm's length negotiations among competent, able counsel representing the Parties' interests; and the record is sufficiently developed and complete to have enabled the Lead Plaintiff, Co-Lead Counsel, Defendants, and their counsel to have adequately evaluated and considered their positions before deciding to settle.   The Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

7.   **Dismissal of Claims**.  The Action and all claims asserted against Defendants in the Action by Lead Plaintiff and the other Settlement Class members are hereby DISMISSED WITH PREJUDICE.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8.   **Binding Effect**.  The terms of the Stipulation and this Order and Final Judgment shall be forever binding on the Parties and all Settlement Class members, regardless of whether or not any such Settlement Class member received a copy of the Notice, submitted a Proof of Claim, or obtains a distribution from the Net Settlement Fund.

9.   **Releases**.  The Releases set forth in paragraphs 5.1 and 5.2 of the Stipulation, together with the definitions contained therein, are expressly adopted and approved in all respects.  Accordingly, the Court hereby ORDERS that:

(a)    Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Lead Plaintiff and all Settlement Class members on behalf of themselves and their respective heirs, executors, administrators, predecessors successors, and assigns, shall be deemed to, and by operation of law and of the judgment shall, fully and unconditionally release, resolve, relinquish, waive, and discharge any and all of Lead Plaintiff's Claims as against Defendants and other Released Defendant Parties.  Lead Plaintiff and the Settlement Class members shall be, and hereby are, permanently and forever enjoined from prosecuting any and all of Lead Plaintiff's Claims against the Released Defendant Parties .

(b)    Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns,  shall be deemed to, and by operation of law and of the judgment shall, fully and unconditionally release, resolve, relinquish, waive, and discharge any and all of Defendants' Claims as against Lead Plaintiff and the other Released Lead Plaintiff Parties.  Defendants and other Released Defendant Parties shall be, and hereby are, permanently and forever enjoined from prosecuting any and all of Defendants' Claims as against the Released Lead Plaintiff Parties.

10.    Notwithstanding paragraph 9 above, nothing in this Order and Final Judgment shall var any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Order and Final Judgment.

11.    **Approval of Plan of Allocation**.  The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class members.

12.    **Award of Attorney Fees and Expenses**.  Co-Lead Counsel are awarded attorneys' fees in the amount of $2,987,985 and expenses in the amount of $180,049.92, plus interest earned thereon, for the same time period and at the same rate as that earned

3:23-CV-1216-GPC-VET

on the Settlement Fund until paid, such amounts to be paid from the Settlement Fund upon entry of this Order and Final Judgment.  The Court finds that the amount of fees awarded is fair and reasonable in light of the time and labor required, the difficulty of the case, the skill required to prosecute the claims asserted, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Settlement Class.  In the event that this Order does not become Final, and any portion of the Fee and Expense Award has already been paid from the Settlement Fund, Co-Lead Counsel shall within thirty (30) calendar days of entry of the order rendering the Settlement and Judgment non-Final or notice of the Settlement being terminated, refund the Settlement Fund the Fee and Expense Award paid to Co-Lead Counsel.

13.  **Compensatory Award to Lead Plaintiff**.  Lead Plaintiff is awarded the sum of \$10,000, as reasonable costs and expenses directly relating to the representation of the Settlement Class as provided in 15 U.S.C. § 78u-4(a)(4), plus interest earned thereon, for the same time period and at the same rate as that earned on the Settlement Fund until paid, such amounts to be paid from the Settlement Fund upon the Effective Date of the Settlement.

14.  **Rule 11 Findings**.  The Court finds that all Parties and their counsel have complied in all respects with each requirement of Fed. R. Civ. P. 11 as to all proceedings herein.

15.  **No Admission**.  Neither this Order and Final Judgment, the Preliminary Approval Order, the Stipulation (including the Exhibits thereto), the Term Sheet, nor any of the negotiations, documents, or proceedings connected with them shall be deemed to be, or offered or received:

(a)     Against any of the Defendants or other Released Defendant Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Defendants or other Released Defendant Parties with respect to the truth of any fact alleged by the Lead Plaintiff in this Action or the validity of any claim that has been or could have been asserted against any of the Defendants or the

Released Defendant Parties in this Action, or the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing or liability by any of the Defendants or other Released Defendant Parties in connection with the Action;

(b)     Against any of the Defendants, the Lead Plaintiff, any Settlement Class member, or the other Released Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them with respect to any liability, negligence, fault, or wrongdoing as against any of them in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation, provided, however, that if the Stipulation is approved by the Court, the Defendants, the Lead Plaintiff, any Settlement Class member, and the other Released Parties may refer to it to effectuate the liability protection granted to them hereunder;

(c)     Against any of the Defendants or other Released Defendant Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that the Settlement Amount represents the amount which could or would have been received after trial of the Action against them;

(d)     Against the Lead Plaintiff, Released Lead Plaintiff Parties, including any Settlement Class member, as evidence of, or construed as evidence of, any presumption, concession, or admission by Lead Plaintiff or any Settlement Class member that any of their claims are without merit, or that any defenses asserted by the Defendants in the Action have any merit, or that damages recoverable in the Action would not have exceeded the Settlement Amount; or

(e)     Against the Lead Plaintiff or any Released Lead Plaintiff Parties, including any Settlement Class member or Co-Lead Counsel, as evidence of, or construed as evidence of, any infirmity of the claims alleged by the Lead Plaintiff in the FAC or the Action or of any lack of merit to the claims or the Action or of any bad faith, dilatory motive, or inadequate prosecution of the claims or the Action or

any non-compliance with Fed. R. Civ. P. 11 or any similar rule or ethical obligation.

16.     Notwithstanding the foregoing Paragraph 15, the Parties and other Released Parties may file or refer to this Order and Final Judgment, the Stipulation, Preliminary Approval Order, and/or any Proof of Claim Form: (a) to effectuate the liability protections granted hereunder or thereunder, including without limitation, to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim; (b) to obtain a judgment reduction under applicable law; (c) to enforce any applicable insurance policies and any agreements relating thereto; or (d) to enforce the terms of the Stipulation and/or this Order and Final Judgment.

17.     **Retention of Jurisdiction**.  Exclusive jurisdiction is hereby retained over the Parties for all matters relating to the Action, including the administration, interpretation, effectuation or enforcement of the Stipulation or Settlement and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to the Settlement Class members.

18.     **Reasonable Modifications**.  Without further order of the Court, the Parties may agree to such amendments or modifications of the Stipulation or the Settlement that are not materially inconsistent with this Order and Final Judgment and do not materially limit the rights of Settlement Class members in connection with the Settlement, including reasonable extensions of time to carry out any of the provisions of the Settlement.

19.     **Entry of Final Judgment**.  There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is directed pursuant to Fed. R. Civ. P. 54(b).

20.     **Termination of Settlement**.  In the event that the Settlement is terminated in accordance with the terms and conditions set forth in the Stipulation, then this Order and Final Judgment, shall be rendered null and void of no further force or effect, except as otherwise provided in the Stipulation, and all Parties shall revert *nunc pro tunc* to their respective status prior to the execution of the Term Sheet, and all Parties shall proceed in

3:23-CV-1216-GPC-VET

all respects as if the Term Sheet and the Stipulation had not been executed and the Preliminary Approval Order and this Order and Final Judgment had not been entered. In such circumstances, all Parties shall thereafter work together to arrive at a mutually agreeable schedule for resuming litigation of the Action.

**IT IS SO ORDERED.**

Dated: June 13, 2025

Hon. Gonzalo P. Curiel
United States District Judge