**POMERANTZ LLP**
Jennifer Pafiti (SBN 282890)
Justin D. D'Aloia (*pro hac vice*) (NY Bar # 4935979)
600 Third Avenue, 20th Floor
New York, New York   10016
Telephone:   (212) 661-1100
jpafiti@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Lead Plaintiff Dipak Patel and*
*Lead Counsel for the Proposed Settlement Class*

— additional counsel on signature page —

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | No. 3:23-cv-01216-GPC-VET<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND**<br><br>Judge:  Hon. Gonzalo P. Curiel<br>Date: January 9, 2026<br>Time: 1:30 p.m.<br>Courtroom: 12A |

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. The Claims Administrator's Recommendations Should Be Approved ..........2

    B. The Sole Request for Judicial Review Should Be Rejected ...........................2

    C. The Court Should Decide the Motion on the Papers Expeditiously ...............5

III. CONCLUSION...................................................................................................................5

LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND

Lead Plaintiff, individually and on behalf the Settlement Class, respectfully submits this reply memorandum in further support of his Motion to Authorize Distribution of the Net Settlement Fund (ECF No. 98), filed October 29, 2025 (the "**Motion**").[1]

## I.    INTRODUCTION

On June 16, 2025, the Court entered the Final Approval Order, which (i) granted final approval of the $10,500,000 all-cash Settlement between Lead Plaintiff and Defendants, on the terms and conditions set forth in the Stipulation; and (ii) dismissed the Action with prejudice. (ECF No. 96.)  On the same day, the Court entered a judgment and closed the Action.  (ECF No. 97.)

As detailed more fully in the Schmidt Declaration accompanying the Motion, since the Final Approval Order, the Claims Administrator has processed all timely-filed Proof of Claim forms, calculated the Recognized Loss amount for each, and performed related work consistent with the Stipulation and the Final Approval Order, including follow up with Claimants as necessary to cure any defects.  The Motion sought the entry of an order to (i) approve Epiq's administrative recommendations accepting and rejecting claims submitted in connection with the Settlement; (ii) authorize distribution of the Net Settlement Fund to Authorized Claimants whose claims have been accepted, in accordance with the Court-approved Plan of Allocation; and (iii) approve Epiq's costs and fees for doing so.  The Court subsequently set a hearing on the Motion for January 9, 2026. (ECF No. 99.)

Since the Motion was filed, the Claims Administrator has determined that there was a timely defect response not included in its previous determinations that cured the defects associated with 10 claims.  In addition, a Claimant filed a letter with the Court to dispute the Claims Administrator's determination that the Proof of Claim submitted by the Claimant did not result in a Recognized Loss because all shares bought during the Class Period were sold before the first, and only, corrective disclosure.  As explained more fully below, Lead Plaintiff respectfully requests that the Court approve the Claims

---

[1] Unless otherwise specified herein, all defined terms have the meaning set forth in the Motion, which incorporated the defined terms from the Stipulation.

Administrator's determination that the 10 additional claims should be accepted and reject the challenges raised by the Claimant requesting judicial review.  Because the issues are simple and straightforward, Lead Plaintiff also respectfully submits that the Motion may be decided on the papers without the need for a hearing.

## II.    ARGUMENT

### A.    The Claims Administrator's Recommendations Should Be Approved

As detailed more fully in the Schmidt Declaration accompanying the Motion, as of the date of the Motion, the Claims Administrator had determined that 5,566 claims should be accepted in whole or part and 14,781 should be rejected, the vast majority of which were recommended for rejection because they resulted in no Recognized Loss.  As detailed more fully in the Supplemental Declaration of Susanna Webb accompanying this reply memorandum (the "**Webb Declaration**"), the Claims Administrator subsequently became aware of a timely defect response that cured the defects associated with 10 claims previously recommended for rejection.  Accordingly, the Claims Administrator now recommends that 5,576 claims should be accepted in whole or part and 14,771 should be rejected.  Lead Plaintiff respectfully requests that the Court approve these administrative determinations so the Net Settlement Fund may be distributed to eligible Claimants in accordance with the Court-approved Plan of Allocation.

### B.    The Sole Request for Judicial Review Should Be Rejected

On November 3, 2025, the Court received a letter from Stephen M. Gelber formally requesting judicial review of the Claims Administrator's determination that he was ineligible to receive a distribution from the Net Settlement Fund because his claim did not result in a Recognized Loss.  (ECF No. 100.)

Notably, Mr. Gelber does not maintain that his claim results in a Recognized Loss.  Under the Court-approved Plan of Allocation, any shares of ImmunityBio purchased during the Settlement Class Period that are sold before the only corrective disclosure on May 11, 2023, do not result in a recognized loss.  ECF No. 80-2 at E79.  The Proof of Claim submitted by Mr. Gelber, attached as Exhibit B to the letter, makes clear that all

shares he purchased during the Settlement Class Period were sold before May 11, 2023, and the letter filed by Mr. Gelber does not claim otherwise.  Dissatisfied with that result, Mr. Gelber raises a series of procedural objections, none of which have any merit.

First, Mr. Gelber suggests that institutional investors may have received a more comprehensive Notice than the one sent to retail investors.  (ECF No. 100 at 2.)  Not so. As the Court may recall, Lead Plaintiff gave the Court the option of approving distribution by mail of either (i) a more expensive long-form Notice (Stipulation Exhibit B-1) or; (ii) a shorter, more cost-effective version (Stipulation Exhibit B-2) instructing Settlement Class members how to access the long-form Notice, the Stipulation, and its other Exhibits electronically on the Settlement website.  (ECF No. 80 at 23-24.)  In the Preliminary Approval Order, the Court approved the latter method.  (ECF No. 89 at 34-35, 37-38.)  As detailed more fully in the Declaration of Joseph Mahan filed in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, the Claims Administrator mailed a copy of the short-form Notice to *all* 39,925 potential Settlement Class members or their nominees and established a Settlement-specific website where Settlement Class members could obtain a copy of all Settlement documents, including the Stipulation, the Preliminary Approval Order, and the long-form Notice.  (ECF No. 93-1.)

Next, Mr. Gelber objects that the short-form Notice only stated that to qualify for a payment, "you must have purchased or otherwise acquired ImmunityBio (NASDAQ: IBRX) securities between March 10, 2021, and May 10, 2023," without any indication that the shares must continue to be held through May 11, 2023.  (ECF No. 100 at 1-2.)  It said no such thing.  Rather, the Court-approved short-form Notice, stated that proposed Settlement Class consisted of all persons who "purchased or acquired ImmunityBio, Inc. (NASDAQ: IBRX) securities from March 10, 2021, to May 10, 2023 . . . *and were damaged thereby*" and specified in the very same paragraph that "[a]dditional details are listed within the long-form Notice, which can be obtained as described below."  (ECF No. 93-1 at 10.)  On the very next page, the Court-approved short-form Notice specified that the more detailed long-form Notice can be accessed and downloaded online on the

LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND

Settlement website at www.ImmunityBioSecuritiesSettlement.com, and urged all potential Settlement Class members to review the long-form Notice if they purchased or otherwise acquired ImmunityBio securities during the Settlement Class Period. (*Id.* at 11.)  The short-form Notice received by Mr. Gelber, who purports to be an attorney admitted in Hawaii and California, contained this exact same text.  (ECF No. 100 Ex. A.)  This is likely why none of the other 12,963 Claimants whose claims resulted in no Recognized Loss have raised objections similar to those lodged by Mr. Gelber.

Finally, Mr. Gelber suggests in passing that he should be entitled to a distribution from the Net Settlement Fund because he "took the time to complete Proof of Claim and Release Form[] . . . and furnish supporting information."  (ECF No. 100 at 2.)  That fails as a matter of law and logic.  The Proof of Claim submitted by Mr. Gelber itself stated that filing a Proof of Claim "is not a guarantee that you will share in the proceeds of the Settlement." (ECF No. 100 Ex. A.)  More fundamentally, a settlement is meant to provide recovery only for those who are ***harmed*** by the wrongful acts.  Under the fraud on the market theory, the market price of a publicly traded security "reflects all publicly available information, and, hence, any material misrepresentations."  *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988). In such cases, the fundamental theory of harm is that any material misrepresentations about a company will artificially inflate the price of its stock until the truth becomes known to market, at which point the inflation introduced by the misstatements is removed, harming those who purchased it at an inflated price. *See In re BofI Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020).  Thus, purchasers who sell before the first corrective disclosure do not suffer any harm and should not be permitted to join in any settlement.  *See In re Citigroup Inc. Sec. Litig.*, 2014 WL 2445714, at *3 (S.D.N.Y. May 30, 2014) (claimant who sold all shares before first corrective event "suffered no loss" and the "claims administrator was correct to deny [the] claim"); *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007) (approving similar limitation in plan of allocation because class members suffer economic loss "only if they bought shares during the Class Period and sold them after the [corrective

4                                                                                      23cv01216

LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR
AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND

disclosure]").  Indeed, without any such damages Mr. Gelber does not even qualify as a member of the Settlement Class.  *See Ramsey v. MRV Commc'ns Inc.*, 2010 WL 11596641, at *6 (C.D. Cal. Nov. 16, 2010) (overruling objection to plan of allocation that "allocates zero recognized loss to class members who sold their stock before . . . the [fraud] was revealed" because such class members "were not damaged and thus are not members of the Settlement Class").  To hold otherwise would provide Mr. Gelber with a windfall at the expense of other Settlement Class members who suffered real economic harm.

### C.    The Court Should Decide the Motion on the Papers Expeditiously

"[M]uch of the value of a settlement lies in the ability to make funds available promptly."  *Citigroup*, 2014 WL 2445714, at *2 (quotation omitted).  Thus, courts overseeing a class action settlement should maximize "expedient settlement distribution." *Id.* (quoting *Orthopedic Bone Screw Prods. Liability Litig.*, 246 F.3d 315, 321 (3d Cir. 2011)).  Here, the issues presented by the Motion are simple and straight forward.  Accordingly, Lead Plaintiff respectfully submits that the Motion may be decided on the papers without the need for a hearing.  At the very least, the Court should enter an order approving the distribution of the Net Settlement Fund to all Claimants other than Mr. Gelber as promptly as possible without further expense or delay.

### III.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve and enter the revised Proposed Distribution Order, submitted herewith, as promptly as possible.

Dated: December 2, 2025                    Respectfully submitted,


**POMERANTZ LLP**

 */s/ Justin D. D'Aloia*
Jeremy A. Lieberman (*pro hac vice*)
   (NY Bar # 4161352)
Justin D. D'Aloia (*pro hac vice*)
   (NY Bar # 4935979)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
jdaloia@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California  90024
Telephone:  (310) 405-7190
Facsimile:  (917) 463-1044
jpafiti@pomlaw.com


*Counsel for Lead Plaintiff and Co-Lead*
*Counsel for the Proposed Settlement Class*

**HOLZER & HOLZER, LLC**
Corey D. Holzer (*pro hac vice*)
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone:  (770) 392-0090
Facsimile:  (770) 392-0029
cholzer@holzerlaw.com


*Counsel for Lead Plaintiff and Co-Lead*
*Counsel for the Proposed Settlement Class*

LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR
AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND